JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
JAMES A. SCHARF (CSBN 152171)
Assistant United States Attorney

   150 Almaden Boulevard, Suite 900
   San Jose, CA 95113
   Telephone: (408) 535-5082
   FAX: (408) 535-5081
   James.Scharf@usdoj.gov

Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MARILYN LEE,<br><br>           Plaintiff,<br><br>   v.<br><br>JOHN E. POTTER, UNITED STATES POSTMASTER GENERAL,<br><br>           Defendant. | CASE NO. C 07-2540 SBA<br><br>[PROPOSED] ORDER GRANTING MOTION FOR SUMMARY JUDGMENT<br><br>Date: September 16, 2008<br>Time: 1:00 PM<br>Courtroom: #3<br>Judge: Hon. Saundra Brown Armstrong |

    On September 16, 2008, defendant's motion for summary judgment came on for hearing. Daniel R. Bacon appeared for plaintiff. James A. Scharf appeared for defendant. Having considered the papers submitted by the parties and the oral argument of counsel, the Court finds that plaintiff has failed to produce sufficient evidence to support her claims of discrimination and retaliation and that defendant is entitled to summary judgment in his favor, for the reasons that follow:

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
CASE NO. C 07-2540 SBA

## I. INTRODUCTION

Title VII of the Civil Rights Act of 1964 ("Title VII") makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2. It is also unlawful for an employer to retaliate against an individual because he or she has made a charge of discrimination or opposed a discriminatory practice. 42 U.S.C. §2000e-3.

Plaintiff Marilyn Lee ("Plaintiff") was a secretary with the US Postal Inspection Service and laterally assigned to a supervisory position in June 2004. Plaintiff found her new job responsibilities stressful and repeatedly requested that she be reassigned back to her original secretarial job. Plaintiff's requests were denied because she was performing well in her new role and her former position had been filled. Unbeknownst to management, plaintiff became increasingly distraught, and ultimately made a statement about hurting herself and leaving behind a note blaming her boss, which caused to her to be placed on administrative leave pending a fitness for duty examination. Plaintiff is now on temporary total disability, having filed a workers' compensation stress claim.

Plaintiff was one of approximately fifty signatories to a petition in February 2003. Plaintiff also participated in an interview regarding that petition in June 2003. Plaintiff contends that defendant retaliated against her for participating in those activities when it failed to grant her requests for reassignment back to her secretarial position.

Plaintiff cannot maintain claims for fraud, negligent misrepresentation, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract, and breach of the covenant of good faith and fair dealing in this case because Title VII is plaintiff's exclusive remedy in the context of claims stemming from alleged employment discrimination by the government. Plaintiff cannot maintain claims for discrimination based on her race (Asian) or disability because she has no direct or circumstantial evidence to support these claims.

Plaintiff's retaliation claim fails for several reasons. First, plaintiff's participation in a petition regarding unfair management practices did not constitute protected activity under Title VII because the petition did not complain of any discriminatory employment practices. Second, the denial of plaintiff's requests for reassignment was not an adverse employment action because the terms and conditions of her

employment did not objectively change for the worse. More importantly, plaintiff has little in the way of direct or circumstantial evidence that defendant's decision to deny reassignment was motivated or caused by retaliatory intent. She concludes that it must have been due to retaliation because she can think of no other reason why her requests for reassignment were denied. Lastly, defendant offers legitimate non-retaliatory reasons for its denial of plaintiff's requests and plaintiff cannot show that these reasons are pretextual.

Separately or in the aggregate, the foregoing fatal defects in plaintiff's claims for relief entitle defendant to summary judgment.

## II. UNDISPUTED FACTS

Plaintiff commenced employment with the US Postal Service on February 9, 1980 as a Senior Stenographer in the office of the Regional Chief Inspector for the Western Region. (Pl. Dep. 148:13-19). In 1992, plaintiff was assigned to the San Francisco Division of the Postal Inspection Service and became the secretary to the Division's Inspector in Charge ("INC"). (Pl. Dep. 148:20-149:10). She remained in this position during the period relevant to the complaint. *Id.* In June 2004, plaintiff was laterally assigned as the Supervisor of the Administrative Center. (Pl. Dep. 52:2-3, 149:13-22). Shortly thereafter, she began making requests that she be allowed to return to secretarial duties. (Pl. Dep. 74:7-25).

On July 18, 2005, plaintiff was placed on administrative leave after making suicidal statements to management. (Pl. Dep. 149:24-150:1). Her claim of compensable industrial illness due to stress, filed on August 10, 2005, was accepted by the Department of Labor's Office of Workers' Compensation Program (OWCP) on February 4, 2006, and plaintiff is currently on temporary total disability. (Pl. Dep. 150:2-25).

In February 2003, a petition was distributed among employees of the San Francisco Division of the Postal Inspection Service, complaining of the general management style of INC Alan Kiel and his two Assistant Inspectors, Greg Gamache and Juliana Nedd. (Exh. G to Scharf Dec.). Plaintiff was one of approximately fifty signatories to the petition, which addressed the low morale in the Division. *Id.* The petition requested an independent investigation into working conditions, as well as confidentiality for those who stated in the petition their willingness to speak with someone regarding the concerns raised.

*Id.* Subsequently, in June 2003, Inspection Service management conducted an interview of plaintiff regarding issues raised in the petition. (Pl. Dep. 151:25-152:2; Ahern Dep. 37:25-39:11).

Subsequently, several members of management were reassigned. Both Assistants in Charge were given other duties: Nedd was sent to Inspection Service Headquarters in Washington D.C., where she is presently an INC and Gamache was reassigned as performance manager for Western Field Operations, retiring in 2005. (Pl. Dep. 152:7-14). The Inspector in Charge, Alan Kiel, retired on June 30, 2003. (Pl. Dep. 152:15-17). Filling in on an interim basis was John Wisniewski, INC from Philadelphia, who began a detail in San Francisco, initially as Assistant Inspector in Charge, starting in March, 2003 until July 1, 2003, at which time he became Acting INC upon Kiel's retirement. (Pl. Dep. 152:18-153:5). Inspector/Team Leader James Donnelly, Newark Division, was also on detail replacing the reassigned Nedd and Gamache as acting Assistant Inspector in Charge. *Id.*

Kiel's permanent successor was William Atkins, who arrived in San Francisco in September 2003 from the Seattle Division. (Atkins Dep. 13:4-14). Atkins did not have prior involvement with the management of the San Francisco Division and had limited knowledge of prior events. (Atkins Dep. 21:14-24:13, 26:22-29:3, 31:4-20). Atkins knew that there had been some morale and productivity issues within the division and that a group of employees had signed a petition detailing these issues. (Atkins Dep. 31:4-32:25). During Atkins' first week on the job, in a conversation with plaintiff, who was his secretary, plaintiff advised Atkins of her dissatisfaction working for the prior INC and mentioned that she had signed the petition. (Atkins Dep. 74:24-77:22, 205:8-12). Atkins had no knowledge of plaintiff's subsequent participation in an interview with management regarding the petition until August 2005, when plaintiff disclosed this fact incident to her workers' compensation stress claim. (Atkins Dep. 80:13-81:2; Exh. I to Scharf Dec., pg. 8).

Nine months into Atkins' tenure, during which entire period she was Atkins' secretary, plaintiff accepted a detail into a supervisory position. (Pl. Dep. 45:3-7, 46:6-10). Plaintiff accepted the detail because she wanted supervisory experience in order to build her resume and develop her qualifications for a future promotion. (Pl. Dep. 77:8-78:2). Atkins granted the request, assigning plaintiff to an equal level position in June 2004 as Administrative Support Center supervisor, supervising the Administrative Center's staff of clerical employees. (Exh. I to Scharf Dec., pg. 7-8).

Shortly thereafter, plaintiff requested that she be relieved of her supervisory responsibilities and returned to the secretary position with her immediate supervisor, Sheilah Castor, the division's Executive and Administrative Support ("EAS") Level 21 Administrative Specialist. (Pl. Dep. 74:7-25; Castor Dep. 24:12-25:6). Unaware of plaintiff's deteriorating health due to the stress, Castor informed plaintiff that management needed her to supervise the administrative center and denied the request. (Castor Dep. 25:10-13). Castor, as the division's Administrative Specialist, was aware of a petition but did not know that plaintiff had signed it. (Castor Dep. 54:2-55:2, 71:11-16, 91:9-11). At this time, Castor was unaware of plaintiff's participation in the June 2003 meeting with management. (Castor Dep. 91:12-21).

Atkins, subsequently consulted by Castor, confirmed that plaintiff was an effective supervisor and credited plaintiff's interpersonal skills for the existence of a more harmonious working atmosphere in the Administrative Center. (Castor Dep. 83:6-10; Exh. H to Scharf Dec.). In his 2004 year-end evaluation of plaintiff, dated November 5, 2004, Atkins complimented her accomplishments as supervisor. (Exh. H to Scharf Dec.). Although the Administrative Center had been plagued with prior morale problems, conflicts and other personnel issues, Atkins noted that plaintiff's interpersonal and supervisory skills had improved the productivity of the center and greatly reduced dissension among the staff. *Id*. He recommended plaintiff for various course work in order to further develop her management and leadership skills. (Pl. Dep. 163:1-4; Exh. H to Scharf Dec.). Atkins sent her to Investigative Analyst training in St. Louis during July 2004, the only San Francisco Division support employee allowed to attend. (Pl. Dep. 163:5-10; Atkins Dep. 125:7-22, 205:19-21; Castor Dep. 84:2-9). In May 2005, as a developmental opportunity, she was sent to Diversity Liaison training. (Atkins Dep. 134:25-135:2, 205:22-24; Castor Dep. 84:14-20). In December 2004, Atkins gave plaintiff a special achievement award and a cash award only given to a few support employees. (Atkins Dep. 137:12-21, 205:25-206:3; Exh. H to Scharf Dec., pg. 8).

Despite her success in a supervisory role, plaintiff was disenchanted and sought to return as secretary. (Pl. Dep. 139:24-140:3). Atkins was reluctant to allow the return because he believed that her secretarial duties were easily absorbed by other employees and plaintiff had clearly been more effective as a supervisor. (Pl. Dep: 166:21-167:1; Atkins Dep. 46:11-47:2, 49:2-12, 147:15-19). In fact, Atkins

explained that while plaintiff had performed well in her position as his secretary, her replacements also performed as well, if not better, than her. (Atkins Dep. 118:4-119:1, 123:11-20). At the same time, she was doing an excellent job in the supervisory position, outperforming her predecessor,[1/] and Atkins felt that there was no viable replacement at the time. (Atkins Dep. 46:25-47:2, 49:2-12). Atkins stated that he was unaware of plaintiff's deteriorating mental state. (Atkins Dep. 51:25-52:17). Plaintiff admitted during her deposition that she purposely did not disclose to management her stress because she was trying to remain professional. (Pl. Dep. 68:11-19, 69:9-14, 169:13-15).

Atkins further stated that there were no bid positions among the Inspection Service's clerical staff; thus, plaintiff's previous secretarial assignment was not a bid position to which she was entitled to return. (Atkins Dep. 104:25-105:14, 108:7-17). The Inspection Service support positions are filled by EAS non-bargaining unit employees. *Id.* As a result, reassignments within the Inspection Service are routine, as EAS employees are subject to periodic reassignments as necessitated by the changing needs of the Division. *Id.* Under the Postal Employee and Labor Relations Manual (ELM), Section 353.21, "Authorized management officials may reassign non-bargaining employees without following regular competitive procedures." (Pl. Dep. 171:1-12). Plaintiff was an EAS Level 14 employee who had been laterally reassigned to the supervisory position. (Atkins Dep. 206:22-207:12).

On July 13, 2005, plaintiff had a conversation with Acting Assistant Inspector in Charge, Sally Diaz, at which time plaintiff expressed her unhappiness with her current assignment and management's decision not to allow her to return to her secretarial duties. (Pl. Dep. 174:4-15). Plaintiff herself recalls stating: "What do I have to do, do I have to hurt myself to make it clear that I have to be removed from the supervisory position?" (Pl. Dep. 174:21-24). Plaintiff attributes this outburst to her frustration with management. (Pl. Dep. 175:23-176:4). Although Diaz initially offered to withhold reporting these comments to management, because of plaintiff's distraught behavior, Diaz advised INC Atkins of the comments the following day. (Exh. K to Scharf Dec., pg. 3-6). Diaz visited plaintiff at her home on July 16, 2005, concerned for plaintiff's welfare. *Id.* In a phone conversation on the same date, Diaz advised

---

[1/]    Plaintiff testified during her deposition that she outperformed her predecessor. (Pl. Dep. 84:2-7, 169:7-11).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
CASE NO. C 07-2540 SBA                                                                                                          6

plaintiff that she had notified management about plaintiff's statement. *Id.*

As a result of plaintiff's statements, on July 18, 2005, plaintiff was placed on paid administrative leave by management. (Pl. Dep. 183:7-10). Management gave plaintiff a letter that referred to recent precipitating events and stated that plaintiff's allegations regarding a stressful work environment would be reviewed. (Pl. Dep. 183:14-21). At the time, plaintiff was also provided information on the Employee Assistance Program, in which plaintiff failed to participate. (Pl. Dep:183:22-184:1). Management then informed plaintiff that she would be scheduled for a fitness for duty examination. (Pl. Dep. 184:7-16). On August 10, 2005, plaintiff filed a workers' compensation claim for "work related stress & hostile work environment." (Pl. Dep. 184:17-19). On August 16, 2005, INC Atkins sent plaintiff a letter informing her that based on recent events, management had become concerned about her psychological distress; as a result, she would be given a fitness for duty exam to determine whether she would be able to continue in her current assignment. (Atkins Dep. 90:23-91:6).

On September 8, 2005, Dr. Carroll Brodsky conducted the fitness for duty exam. (Exh. L to Scharf Dec.). Brodsky diagnosed Lee with Adjustment Disorder with Depression. *Id.* at pg. 22. He reported that plaintiff was almost ready to return to secretarial duties at work, and restricted her from supervising others, as well as recommending that she not report to a supervisor she believed treated her unfairly. *Id.* at pg. 22-23. In October 2005, plaintiff requested to return to work and to be reassigned out of her supervisory position. (Pl. Dep. 188:2-189:5). Plaintiff requested a detail (non-permanent assignment to another agency) to the Office of Inspector General ("OIG"); however, the detail was eventually cancelled due to the OIG's unwillingness to assume plaintiff's salary during the detail. (Pl. Dep. 59:24-60:1, 189:13-190:1; Atkins Dep. 63:11-16).

Plaintiff's Office of Workers' Compensation Program (OWCP) claim, which had been filed in August 2005, was approved by the Department of Labor in February 2006. (Pl. Dep. 150:2-9). As a result of that claim, plaintiff went on temporary total disability and currently remains in that status, earning more in monthly pay from her workers' compensation payments than her previous salary while working. (Pl. Dep. 98:1-99:1; 150:14-16).

### III.  LEGAL STANDARD

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex v. Catrett,* 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-249 (1986). An issue is "material" if the fact may affect the outcome of the case. *Id*. at 249. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir. 1997). The party moving for summary judgment has no burden to produce any evidence on elements of a claim on which the non-moving party will bear the burden of trial, but can merely point out an absence of evidence to support any such element. *Celotex,* 477 U.S. at 322-23; *Maffei v. Northern Ins. Co. of New York*, 12 F.3d 892, 899 (9th Cir. 1993). Once the moving party points out the absence of evidence, then the non-moving party must come forward with specific evidence to show there is a genuine issue for trial. *Celotex,* 477 U.S. at 322-23; *Maffei*, 12 F.3d at 899. The moving party is entitled to judgment as a matter of law if the non-moving party fails to make this showing. *Celotex,* 477 U.S. at 323.

Summary judgment is not only proper if plaintiff fails to produce *any* evidence on an element of her case, but summary judgment is also proper if plaintiff fails to produce *sufficient* evidence on an element of her case. The Supreme Court has specifically held that summary judgment is proper against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The mere existence of a "scintilla" of evidence in support of the non-moving party's position is not sufficient. The non-moving party has the burden of establishing sufficient evidence on each element of his case so that the finder of fact could return a verdict for her. *Anderson*, 477 U.S. at 249.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
CASE NO. C 07-2540 SBA                                                                                                                       8

## IV. ANALYSIS

### A. Title VII is Plaintiff's Exclusive Remedy

In the context of claims stemming from alleged employment discrimination by the federal government, Title VII expressly limits plaintiff's remedies to those enumerated in the statute. *Brown v. General Services Administration,* 425 U.S. 820, 835 (1976). Where a federal employee asserts a claim under Title VII, that statute is exclusive of any other remedy against not only the federal government, but also against individual federal employees alleged to have participated in the discrimination. *White v. General Services Administration*, 652 F.2d 913, 916-17 (9th Cir. 1981). Because the purpose of Title VII was to create "an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination," plaintiff may not "bootstrap" additional causes of action onto her Title VII complaint. *Brown v. General Services Administration,* 425 U.S. at 829.

As Ms. Lee's complaint is based upon alleged employment actions taken against her by employees of the Postal Inspection Service, actions Ms. Lee alleges were taken in retaliation for her alleged participation in protected activity, Title VII is the exclusive remedy available to her. Accordingly, she cannot bring her claims of fraud, negligent misrepresentation, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract, and breach of the covenant of good faith and fair dealing in this context.

### B. Plaintiff Lacks Evidence to Support Claims of Race and Disability Discrimination

Plaintiff has the burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish a *prima facie* case of race discrimination, Plaintiff must plead and prove that: (1) she belongs to a protected class; (2) she performed his job satisfactorily; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated non-protected class employees. *McDonnell Douglas Corp.*, 411 U.S. at 802-03 (summary judgment upheld where plaintiff introduced no admissible evidence that other employees were treated differently than he); *Fong v. American Airlines, Inc.*, 626 F.2d 759, 762 (9th Cir. 1980) (same). Plaintiff must prove all of these essential elements.

During her deposition, plaintiff admitted that the gravamen of her claim was for retaliation

stemming from her signing the petition and participating in a subsequent interview with management regarding the petition. (Pl. Dep. 18:22-25, 95:19-96:12). She admitted that she has no evidence that she was discriminated against for any other reasons, such as her race or disability. (Pl. Dep. 95:19-96:12). In fact, plaintiff's attorney stipulated that the disability portion of her complaint should be dismissed. (Pl. Dep. 95:14-16). Accordingly, plaintiff has no evidence to support her claims of race and disability discrimination; therefore, defendant is entitled to summary judgment on these claims.

**C.     Plaintiff Cannot Establish a *Prima Facie* Case of Retaliation**

Title VII prohibits retaliation against an individual for opposing any practice made unlawful by Title VII of the Civil Rights Act, the Equal Pay Act, the Age Discrimination in Employment Act, the Rehabilitation Act, or for participating in any stage of administrative or judicial proceedings under these statutes. 29 C.F.R. § 1614.101(b). To establish a *prima facie* claim of retaliation, plaintiff must show that: (1) plaintiff engaged in protected activity; (2) the employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).

    **1.     Plaintiff Did Not Engage in Protected Activity**

To establish the first element of a *prima facie* case – participation in a protected activity, plaintiff must establish a reasonable belief that the employment practice she protested was prohibited under Title VII. *See Trent v. Valley Electric Association, Inc.,* 41 F.3d 524, 526 (9th Cir. 1994). An employee must show one of two types of protected activity to support a retaliation claim. The protected activity can be the "employee's opposition to conduct made an unlawful employment practice" under Title VII, or it can be the "employee's participation in the machinery set up by Title VII to enforce its provisions." *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997), quoting *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1981). Accordingly, activities such as contacting an EEO counselor or being a witness in another employee's EEO case are protected.

In this case, plaintiff did not establish a reasonable belief that she opposed any unlawful employment practices protected by Title VII. The facts demonstrate that plaintiff engaged in activity to protest *unfair* employment practices, not *discriminatory* employment practices. The petition that Lee

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
CASE NO. C 07-2540 SBA                                                                                                              10

signed did not specifically allege discrimination prohibited under Title VII; instead, its primary concern was the negative morale within the division because of poor management policies and decisions. *See* (Exh. G to Scharf Dec.). The signatories of the petition were concerned about "management decisions based on personal agendas and biases, rather than the best interests of the Division and its employees"; however, the petition does not mention any concerns related to discriminatory employment practices or treatment. Moreover, plaintiff did not state anywhere in her deposition that she signed the petition to oppose *discriminatory* employment practices. Consequently, plaintiff cannot show a reasonable belief that she was protesting behavior prohibited under Title VII.

Other signatories to the petition also signed the petition because they wanted to protest *unfair* employment practices, not *discriminatory* employment practices. Kathleen O'Leary, one of plaintiff's co-workers, stated that she signed the petition because she felt that employees should not be treated differently because they had a better relationship with the boss. (O'Leary Dep. 85:4-12). She signed the petition because she felt there was unjust favoritism in the workplace, not because of concerns about discrimination. (O'Leary Dep. 40:5-41:1, 85:4-12). Furthermore, management did not view the petition as complaining about discrimination; rather, they felt that employees were complaining about favoritism and poor management practices. (Ahern Dep. 80:13-20, 82:3-22). More importantly, the evidence demonstrates that plaintiff believed that the petition was not related to discriminatory employment practices. (Pl. Dep. 151:2-24). For example, in plaintiff's June 2003 statement to management regarding the petition, there is no mention of any form of discrimination. *See* (Exh. M. to Scharf Dec.). In fact, plaintiff states that she signed the petition *strictly* because of her concerns about favoritism by management. *Id*. (emphasis added). *See Jurado v. Eleven-Fifty Corp.,* 813 F.2d 1406, 1411 (9th Cir. 1987) (complaining about company policies for personal reasons is not protected activity under Title VII). Thus, as the facts demonstrate, the petition was created to protest unfair and poor decisions by management – not *discriminatory* employment practices. Plaintiff cannot reasonably demonstrate that complaining about mismanagement and waste is the same as opposing *discriminatory* employment practices prohibited under Title VII; accordingly, plaintiff's participation in the petition is not a protected activity under Title VII.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
CASE NO. C 07-2540 SBA                                                                                                              11

Plaintiff's participation in the petition and subsequent interview is also not a protected activity because she did not participate in the machinery set up by Title VII to enforce its provisions. Plaintiff never filed an official EEO complaint and plaintiff's June 2003 interview with management regarding the petition did not involve any EEO counselors. Because plaintiff can show no protected activity prior to her termination, her retaliation claim fails, and summary judgment is granted on that claim.

### 2. The Denial of Plaintiff's Requests For Reassignment Was Not an Adverse Employment Action

Even if plaintiff's decision to sign the petition and participate in an interview could be viewed as protected activity, which it was not, the denial of plaintiff's requests for reassignment was not an adverse employment action. The United States Supreme Court has held that the anti-retaliation provision of Title VII only covers "employer actions that would have been materially adverse to a reasonable employee." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 57 (2006). The action "must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* "Among those employment decisions that constitute an adverse employment action are termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider a promotion." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). "By contrast . . . declining to hold a job open for an employee and badmouthing an employee outside the job reference context do not constitute adverse employment actions." *Id.*

In this case, the denial of Lee's request for reassignment did not constitute an adverse employment action under the test articulated by the Court in *White*. First, the supervisory duties that Atkins assigned to Lee were actually more desirable than the duties Lee held as a secretary. Plaintiff even admitted that the supervisory duties associated with the supervisor position provided her with a favorable opportunity to develop her resume and management skills. (Pl. Dep. 77:12-78:2). In fact, plaintiff accepted the job precisely because of the developmental opportunities that the position provided. *Id.* Moreover, Marilyn's pay grade (Level 14) was already at a supervisory level. (Atkins Dep. 206:22-207:12) As a result, Lee was *laterally* assigned and not demoted to her new position. *Id.*

     Plaintiff argues that because management knew that the supervisor position was causing her stress, their denial of her requests for reassignment constitutes an adverse employment action. (Pl. Dep. 66:5-67:11). However, plaintiff admitted that she remained professional during her entire stint as supervisor and did not allow management to witness the stress that she was experiencing. (Pl. Dep. 68:11-19, 69:9-14). Furthermore, plaintiff never directly complained to Atkins about a hostile work environment or stress. (Atkins Dep. 128:21-24, 174:11-14). As a result, Atkins did not know plaintiff was experiencing emotional difficulties because of her new position. (Atkins Dep. 124:20-125:2, 187:22-188:6, 192:4-193:4, 207:18-24). In addition, none of plaintiff's co-workers and immediate supervisors ever reported to Atkins that plaintiff was experiencing stress. (Atkins Dep. 50:12-16, 66:9-11, 111:13-15). Consequently, Atkins had no way of knowing that the denial of plaintiff's requests for reassignment was causing plaintiff stress.

     More importantly, within the Inspection Service, employees are routinely reassigned according to the needs of the division and plaintiff was aware of this fact. (Pl. Dep. 170:20-35; Atkins Dep. 104:25-105:21, 108:7-17). As a result, plaintiff's reassignment and defendant's eventual decision to deny her requests were well within the standard operating procedures of the Postal Inspection Service. Plaintiff was not being treated differently than any other employee within the Inspection Service. As the terms and conditions of plaintiff's employment did not objectively change for the worse as a result of her lateral transfer or defendant's denial of her requests, it was not an adverse employment action as a matter of law. *Nidds v. Schindler Elevator*, 103 F.3d 854, 860 n.3 (9th Cir. 1996) (transfer to different work site with no reduction in pay not an adverse job action); *Kortan v. Cal. Youth Authority*, 217 F.3d 1104, 1112 (9th Cir. 2000) (reassignment of job duties, falsely accusing employee of not submitting work order, ridiculing of employee to co-workers, and unfairly negative performance review are insufficient to establish adverse employment action); *Tran v. Trustees of State Colleges in Col.*, 355 F.3d 1263, 1268 (10th Cir. 2004) (transfer without reduction in pay or benefits that requires employee to develop new skills is not adverse employment action). Thus, the denial of plaintiff's requests for reassignment cannot support her retaliation claim and summary judgment is granted on that claim.

**3.   No Causal Link Exists Between the Protected Activity and the Adverse Action**

Even assuming that the denial of plaintiff's requests for reassignment was an adverse employment action, which it was not, plaintiff cannot establish a causal connection between plaintiff's participation in the petition and management's decision to keep her as a supervisor. This is true for no less than five separate reasons: First, there was not a close temporal relationship between these events. *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (temporal proximity between protected activity and adverse employment action must be "very close" to make a *prima facie* case of retaliation; 3 months is not sufficient). Plaintiff signed the petition in February 2003 and participated in a follow-up interview with management regarding the petition in June 2003. During Atkins' first week on the job in September 2003, plaintiff disclosed to him that she had signed the petition, but Atkins had no knowledge of plaintiff's subsequent June 2003 meeting with management regarding the petition. (Atkins Dep. 74:24-77:5, 80:13-81:2, 205:8-12, Exh. I to Scharf Dec., pg. 8). Lee was not transferred to the supervisor position until June 2004 and plaintiff did not make any requests for reassignment until shortly thereafter. (Pl. Dep. 74:7-25, 158:18-159:22; Castor Dep. 24:12-25). Between September 2003 and June 2004, Atkins only discussed the petition once and that was with plaintiff, who brought the petition up entirely of her own accord during Atkins' first week on the job. (Atkins Dep. 74:24-75:7). Over a year and a half elapsed between plaintiff's participation in the petition and management's denial of her first request for reassignment. Accordingly, plaintiff cannot establish a close temporal relationship between the two events.

Second, management had limited knowledge of the events surrounding the petition and only knew that plaintiff had engaged in the allegedly protected activity because she disclosed this information. (Atkins Dep. 26:22-28:25, 74:24-75:15, 77:13-22). Even when Atkins learned about the petition, he did not know the specific details regarding the petition; Atkins only knew that the petition complained about bad employee morale, bad productivity, and inefficient management practices. *Id.* More importantly, Atkins was unaware that plaintiff had participated in a subsequent meeting with management regarding the petition. (Atkins Dep. 80:25-81:3). As a result, Atkins was only vaguely aware of a petition and plaintiff's participation in it. (Exh. J to Scharf Dec., pg. 1).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
CASE NO. C 07-2540 SBA                                                                                              14

Third, Atkins had no motive to retaliate against plaintiff. Atkins received his position as Inspector in Charge ("INC") because the previous manager retired. (O'Leary Dep. 72:8-73:2). Although Atkins did not know any specific details regarding the petition, he understood that concerns raised in it played a role in the prior managers leaving San Francisco. (Atkins Dep. 76:13-21). As Atkins stated himself, "I was not affected by the petition in any way, except in a positive way, as I was chosen to become the Inspector in Charge in San Francisco." (Exh J. To Scharf Dec., pg. 2). Consequently, Atkins had absolutely no reason to retaliate against an employee who signed a petition that directly benefitted him.

Fourth, plaintiff was given a significant cash award and provided other leadership opportunities while working as a supervisor, which is inconsistent with a claim that management was retaliating against her.[2/] In December 2004, Atkins awarded Lee with one of the highest division merit awards, a honor that few support employees receive. (Pl. Dep. 136:21-138:4, 165:1-16). As a result of that award, Lee received a thousand dollars of merit pay. *Id.* Atkins also consistently praised Lee with special achievement awards and was complimentary in his evaluation of her work. (Atkins Dep. 205:25-206:3). For example, in a November 2004 evaluation, Atkins wrote: "Marilyn has proved she can address significant problem areas and come up with equitable solutions. The morale of the admin staff, their ability to work as a team, and their subsequent improvement in productivity are directly attributable to Marilyn's interpersonal and supervisory abilities." (Exh. H to Scharf Dec.).

In addition to awarding the plaintiff with cash rewards, Atkins also recommended Lee for various course work in order to further develop her management and leadership qualities. He sent Lee to Investigative Analyst training in St. Louis during July 2004, the only San Francisco Division support employee allowed to attend. (Atkins Dep. 125:7-22, 205:13-24; Castor Dep. 84:2-9). In May 2005, Atkins provided Lee with another developmental opportunity when he sent her to Diversity Liaison training. (Pl. Dep. 163:24-164:2; Atkins Dep. 134:25-135:2, 205:22-24; Castor Dep. 84:14-20). As plaintiff's former co-worker Kaycee Graham testified, the training opportunities offered to Lee were

---

[2/]   Where the same actor is responsible for both favorable and adverse employment actions within a short period of time, a strong inference arises that there was no discriminatory motive. *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270-71 (9th Cir. 1996).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
CASE NO. C 07-2540 SBA                                                                                                         15

viewed as positive experiences and coveted within the division because they could bolster an employee's resume. (Graham Dep. 76:11-77:12).

Fifth, plaintiff has presented no evidence that any of the other signatories were retaliated against. Plaintiff testified that, to her knowledge, she was the *only* signatory to the petition and *only* person who participated in a follow-up meeting regarding the petition that was the victim of retaliation. (Pl. Dep. 126:2-5, 143:21-25).

As the evidence demonstrates, plaintiff cannot establish a causal link between her alleged protected activity and defendant's decision to deny reassignment. *See Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003) (summary judgment is appropriate if the totality of facts fail to establish the requisite causal link). Accordingly, plaintiff cannot maintain her retaliation claim and summary judgment is granted on that claim.

### D. Defendant's Reasons For Denying Plaintiff's Request for Reassignment Were Legitimate and Non-Retaliatory

Even if plaintiff could prove a *prima facie* case of retaliation, which she cannot, she cannot refute defendant's legitimate and non-discriminatory reasons for refusing to grant plaintiff's request for reassignment. *Vasquez v. Los Angeles*, 349 F.3d 634, 647 (9th Cir. 2004) (granting summary judgment on retaliation claim because employer proferred legitimate reason for plaintiff's transfer that plaintiff failed to show was pretextual). Specifically, plaintiff was performing well in her new position and her previous position had been filled. (Atkins Dep. 93:8-11, 144:22-145:1; Castor Dep. 90:21-91:8). Executive and Administrative Support ("EAS") employees can be moved at the manager's discretion according to the needs of management and the division. (Atkins Dep. 108:11-17). Management kept Lee in a supervisory role because of her superior performance and excellent management skills. *See* (Exh. H to Scharf Dec.). She had improved morale, improved effectiveness, and increased efficiency within the division. (Atkins Dep. 72:25-73:5, 122:11-14; Castor Dep. 91:22-94:9). Moreover, management felt that she was handling the supervisory responsibilities well and improving work procedures within the division. (Atkins Dep. 180:15-181:23; Castor. Dep. 93:16-94:9, 100:17-20). In her deposition, plaintiff agreed with management's positive appraisal of her performance, stating that she

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
CASE NO. C 07-2540 SBA                                                                                                                              16

had outperformed her predecessor at the supervisor position. (Pl. Dep. 84:2-7, 169:7-11).

Management also kept Lee in the supervisor position because the division needed her in that role. (Atkins Dep. 122:11-14, 147:15-19; Castor Dep. 25:10-13, 31:17-24, 32:11-16). It was critical to the division that Marilyn Lee remain as the administrative center supervisor. (Atkins Dep. 147:15-19). As Atkins stated in his November 2004 evaluation of Lee, she had "proven herself to be *indispensable* to the organization in this role [as supervisor] . . . the additional responsibility and scope of her new assignment really pinpointed Marilyn's strengths." (Exh. H to Scharf Dec.) (emphasis added).

Moreover, management knew that if Lee were removed, the supervisor position would be difficult to staff. "It's easy to fill a secretary job; it's not easy to fill a supervisor job." (Atkins Dep. 144:24-145:1). "I could get anybody to do the secretary job. I couldn't get just anybody to do the supervisor job." (Castor Dep. 106:12-14). Lastly, plaintiff's previous secretary position had already filled by a qualified individual, Kaycee Graham; consequently, there was no need to transfer Lee back into that position. (Atkins Dep. 118:4-119:1; Graham Dep. 77:23-78:9).

Thus, the agency clearly had legitimate and non-retaliatory reasons to keep plaintiff in her supervisory role, so her claim of retaliation fails. *See, e.g, Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1437-38 (9th Cir. 1990) (not promoting plaintiff because she did not maintain a positive workplace demeanor and did not command the necessary respect was a legitimate non-discriminatory reason).

### E. Plaintiff Cannot Prove Pretext

Where, as here, the defendant articulates legitimate and non-retaliatory reason for the adverse employment action, the burden shifts back to the plaintiff to prove with *direct* or *specific* and *substantial* circumstantial evidence "that the explanation was merely a pretext for impermissible retaliation." *Manatt v. Bank of America,* 339 F.3d 792, 800-01 (9th Cir. 2003) (Because "Manatt failed to introduce any direct or specific and substantial circumstantial evidence of pretext, summary judgment for the Bank must be affirmed."). Plaintiff has not met that burden in this case.

Plaintiff has no direct evidence that Atkins kept her in the supervisor position for reasons unrelated to her excellent performance in that role. Plaintiff stated in her deposition that she believes that management's decision was retaliation because she can think of no other reason why Atkins did not

honor her request for reassignment.  (Pl. Dep. 48:11-49:14, 167:2-18, 167:24-168:3).  However, she cites no evidence to support her claim.  *Id.*  She merely states her subjective belief that management must have been retaliating against her for her participation in the petition.  (Pl. Dep. 65:3-16).  *See e.g., Schuler v. Chronicle Broad. Co. Inc.,* 793 F.2d 1010, 1011 (9th Cir. 1986) (employee's feelings or subjective beliefs do not qualify as specific and substantial evidence of pretext); *Steckl v. Motorola, Inc.*, 703 F2d 392, 393 (9th Cir. 1983) (plaintiff's "mere assertions that [defendant] had discriminatory motivation and intent in failing to promote him were inadequate, without substantial factual evidence, to raise an issue precluding summary judgment.").

Plaintiff attempts to cite the cancellation of her detail to the Office of Inspector General ("OIG") as circumstantial evidence of reprisal.  (Pl. Dep. 59:19-60:23).  However, the evidence shows that management was unable to detail Lee because of a salary dispute.  (Atkins Dep. 63:11-16, 167:1-24; Exh. J to Scharf Dec., pg. 2).  In fact, Atkins initially approved Lee's detail to OIG because he felt that it would be a positive developmental opportunity for plaintiff.  (Atkins Dep. 62:16-19, 165:4-8; Exh. J to Scharf Dec., pg. 2).  Unfortunately, OIG's Special Inspector in Charge, Anita Davidson, was unwilling to assume Ms. Lee's salary because OIG was not authorized a support position in San Francisco.  (Exh. J to Scharf Dec., pg. 2).  There is absolutely no way that Inspector Davidson's decision was motivated by a retaliatory purpose because Ms. Davidson had no knowledge of plaintiff's participation in the petition and any subsequent meetings regarding the petition.  (Atkins Dep. 208:17-209:2).

Plaintiff argues that because there were other employees within the division who might have been able to assume her supervisor position had she been detailed to OIG, management must have denied her detail in retaliation for her petition activity.  (Pl. Dep. 61:12-62:16).  However, as Atkins explained in his deposition, these employees were ill-suited for the supervisor position.  (Atkins Dep. 68:7-71:6).  With the exception of this tenuous circumstantial evidence and plaintiff's own subjective belief that management's decision was motivated by retaliatory motives, plaintiff offers no direct evidence to dispute the fact that the cancellation resulted from OIG's unwillingness to pick up her salary.  (Pl. Dep. 60:13-23).

Furthermore, there were additional legitimate and non-retaliatory reasons to explain the denial of

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
CASE NO. C 07-2540 SBA                                                                                                         18

plaintiff's transfer to OIG. The Postal Inspection Service and OIG had a strained political relationship and a rift existed between the two agencies. (Atkins Dep. 168:18-169:8; O'Leary Dep. 53:11-14). As a result, it was difficult for the Inspection Service and OIG to work out an agreement where OIG would assume plaintiff's salary. Plaintiff offers no direct or circumstantial evidence to dispute this additional explanation.

Lastly, plaintiff argues that defendant's treatment of her while placing her on administrative leave is evidence of pretext and retaliation. (Pl. Dep. 90:12-92:3). However, management was merely following the standard operating procedures of the Postal Inspection Service for an employee who makes suicidal statements, when it placed plaintiff on leave. (Atkins Dep. 90:23-92:9, 172:14-21). The administrative letter that management sent to her was a standard human resource generated letter. (Castor Dep. 95:19-97:9; Exh. N to Scharf Dec.). As Atkins stated in his deposition, the scheduling of a medical appointment and subsequent decision to lock plaintiff's computer followed the standard operating procedures of the Postal Inspection Service and plaintiff was not treated differently. (Atkins 178:21-179:11). Plaintiff's only rebuttal to this evidence is her subjective opinion that her fitness for duty examination should have been scheduled earlier, but she offers no direct evidence to dispute defendant's explanation. (Pl. Dep. 91:18-91:3).

As the evidence indicates, plaintiff has no direct or specific and substantial circumstantial evidence of pretext; accordingly, defendant is entitled to summary judgment on her retaliation claim.

## V. CONCLUSION

Therefore, good cause appearing, and for the reasons stated above, and for the reasons stated in defendant's moving papers, the Court hereby grants defendant's motion for summary judgment on all of plaintiff's claims, and hereby dismisses this action in its entirety with prejudice.

Dated: September __, 2008

_____
Hon. Saundra Brown Armstrong
United States District Court Judge