Daniel Ray Bacon, Esquire, SB # 103866
LAW OFFICES OF DANIEL RAY BACON
234 Van Ness Avenue
San Francisco, California 94102-4515
Telephone: (415) 864-0907
Facsimile: (415) 864-0989

ATTORNEYS FOR PLAINTIFF
MARILYN N. LEE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MARILYN N. LEE,<br><br>            Plaintiff,<br><br>    v.<br><br>JOHN E. POTTER, POSTMASTER GENERAL,<br><br>            Defendant. | Case No. C 07-2540 SBA<br><br>PLAINTIFF 'S MEMORANDUM OF POINTS AND AUTHORITIES  IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Date:          September 16, 2008<br>Time:          1:00 P.M.<br>Courtroom:   #3<br>Judge:         Hon. Saundra Brown Armstrong |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION..................................................................................  1

   A.  FACTUAL HISTORY.....................................................................  1

II.  STANDARD OF REVIEW...................................................................  11

   A.  THE DEFENDANT HAS NOT MET THE REQUIREMENT
      FOR SUMMARY JUDGMENT.....................................................  11

   B.  INNUMERABLE CONFLICTS EXISTS BETWEEN THE MATERIAL
      FACTS AS PRESENTED BY THE RESPECTIVE PARTIES.........................  15

   C.  SUMMARY JUDGMENT IS RARELY APPROPRIATE
      IN EMPLOYMENT DISCRIMINATION CASES...............................  15

   D.  PRIMA FACIE CASE OF DISCRIMINATION...............................  16

   E.  DEFENDANT'S STATED REASONS FOR DENYING PLAINTIFF
      HER RIGHT TO RETURN FROM HER DETAIL ARE PRETEXTUAL........  16

   F.  EVIDENCE OF DISPARATE TREATMENT...................................  17

      1.  PLAINTIFF'S COMPLAINTS IN JUNE OF 2003 OF
          DISCRIMINATION AT USPIS AND SUBSEQUENT MEETING
          ARE PROTECTED ACTIVITIES UNDER TITLE VII SINCE
          SHE WAS A PARTICIPANT IN COMPLAINING OF
          DISCRIMINATION AND THE DEFENDANT'S ALLEGATIONS
          THAT PLAINTIFF DID NOT ENGAGE IN PROTECTED
          ACTIVITY IGNORES THE LAW FOLLOWED BY THE EEOC
          AND THE CIRCUIT COURTS: ALLEGATIONS OF RACIAL
          BIAS ARE PROTECTED.........................................................  18

      2.  ADVERSE ACTIONS NEED NOT QUALIFY AS 'ULTIMATE
          EMPLOYMENT ACTIONS' OR MATERIALLY AFFECT THE
          TERMS OR CONDITIONS OF EMPLOYMENT TO
          CONSTITUTE RETALIATION...............................................  19

   III.  CONCLUSION:   PLAINTIFF HAS CLEARLY SHOWN A
       PRIMA FACIE CASE OF RETALIATION FOR ENGAGING
       IN A PROTECTED ACTIVITY OF COMPLAINING OF RACE
       DISCRIMINATION   TO EO OFFICIALS WHICH RESULTED
       IN ADVERSE ACTIONS WHICH ARE RECOGNIZED AS SUCH
       UNDER EEOC GUIDELINES, THE NINTH CIRCUIT AND THE
       UNITED STATES SUPREME COURT......................................  26

**TABLE OF AUTHORITIES**

Page

*Anderson v. Liberty Lobby, Inc.,* (1986)
 477 U.S. 242, 248........................................................ 13

*Atkinson v. Oliver T. Carr Co.* (1986)
 40 FEP Cases (BNA) 1041, 1043-44 (D.D.C. 1986)................ 25

*Berry v. Stevinson Chevrolet* (10th Cir. 1996)
 74 F.3d 980, 986........................................................ 25

Binseel v. Department of the Army (1998)
 EEOC Request No. 05970584 (10/8/98)........................... 23

*Boazman v. Economics laboratory, Inc.,* (1976, CA5 Ga)
 537 F.2d 210........................................................... 14

*Brooks v. Postmaster General* (1994)
 EEOC Appeal No. 05930625, 4077/E1.............................. 17

*Busby v. City of Orlando* (11th Cir. 1991)
 931 F.2d 764........................................................... 18

*Burlington Northern & Sante Fe Railway Co.,* v White (2006)
 No. 05-259 June 22, 2006...................................19, 20, 22

*Celotex Corp. V. Catrett,* (1986)
 484 U.S. 1066 cert. denied (1988)................................. 13

*Cooper v. Postmaster General, Runhon, Jr.* (1996)
 EEOC Appeal No. 01943785........................................ 17

*Davis v. Tri-State Mack Distributor* (8th Cir. 1992)
 981 F.2d 340........................................................... 25

*DeAngelis v. El Paso Municipal Police Officers Ass'n* (5th Cir. 1995)
 51 F.3d 591 (cert. denied), 116 S. Ct. 473....................... 25

*Doucette v. Secretary of Health and Human Services* (1993)
 EEOC Appeal No. 05920719, 3558/D5.............................. 18

*Eastman Kodak Corp. V. Image Technical Services* (1992)
 504 U.S. 451, 456..................................................... 12

*EEOC v. Southwest Texas Methodist hospital* (5th Cir. 1979), cert. denied
 606 F.2d 63, 445 U.S. 928, reh. denied, 446 U.S. 947.......... 16

*First National Bank of Arizona v. Cities Services Co.,* (1968)
 U.S. 253, 288-289.................................................... 14

//

**TABLE OF AUTHORITIES (continued)**

Page

*Fong v. American Airlines Inc.*, (9th Cir. 1980)
F.2d 759, 762-763............................................................................ 14

*Garcia v. Lawn* (9th Cir. 1986)
805 F.2d 1400, 1401-02................................................................... 25

*Hashimoto v. Dalton* (9th Cir. 1997)
118 F.3d 671, 680............................................................................. 19

*Jones v. Western Geophysical Co.* (5th Cir. 1982)
669 F.2d 280.................................................................................... 16

*Kientzy v. McDonnell Douglas Corp.* (8th Cir. 1993)
990 F.2d 1051, 1060......................................................................... 18

*Knox v. State of Indiana* (7th Cir. 1996)
93 F.3d 1327, 1334........................................................................... 21

*Logue v. International Rehabilitation Assoc.* (3rd Cir. 1988)
837 F.2d 150, 155............................................................................. 17

Marr v. Department of the Air Force (1996)
EEOC Appeal No. 01941334 (6/7/96)............................................ 23

*Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.* (1986)
475 U.S. 574..................................................................................... 15

*McAlester v. United air Lines, Inc.* (10th Cir. 1988)
851 F.2d 1249................................................................................... 18

*McDonnell Douglas Corp. v. Green* (1973)
411 U.S. 792, 802............................................................................. 12

*McKnight v. General Motors Corp.* (7th Cir. 1990)
908 F.2d 104, 111 cert denied 499 U.S. 919 (1991)...................... 25

*Meritor Savings Bank v. Vinson* (1986)
477 U.S. 57, 64-67............................................................................ 24

*Passner v. American Chemical Society* (D.C. Cir. 1991)
935 F.2d 322, 331..................................................................... 21, 22

*Plumber v. School District #40 County of Yamhill* (9th Cir. 1997)
130 F.3d 432, 436............................................................................. 14

*Ray v. Henderson* (9th Cir. 2000)
217 F.3d 1234................................................................................... 21

*Reeves v. Sanderson Plumbing Products, Inc.* (2000)
530 U.S. 133, 147-148...................................................................... 13

**TABLE OF AUTHORITIES (continued)**

Page

*Roebuck v. Drexel University* (3rd Cir. 1988)
    852 F.2d 715, 734........................................................................... 17

*Sheridan v. E.I. Dupont de Nemours & Co.* (3rd Cir. 1996)
    70 BNA FEP Cas 98, 67 CCH EPD paragraph 43950.................... 16

*Sims v. Cleland* (6th Cir. 1987)
    813 F.2d 790, 793........................................................................... 17

*Sorba v. Pennsylvania Drilling* Co. (3rd Cir. 1987)
    821 F.2d 200................................................................................... 15

*Spring v. Sheboygan Area School District* (7th Cir. 1989)
    865 F.2d 833................................................................................... 21

*St. John v. Employment Development Dept.* (9th Cir. 1981)
    642 F.2d 273, 274........................................................................... 22

*St. Mary's Honor Cir., v. Hicks* (1993)
    113 S. Ct. 2742, 2749..................................................................... 17

*Storey v. Department of the Treasury* (1999)
    EEOC Request No. 0597083 (8/3/1999)........................................ 23

*Strother v. S. Cal. Permanente Medical Group* (9th Cir. 1996)
    79 F.3d 859, 870............................................................................. 12

*Texas Dept. Of Community Avvairs v. Burdine* (1981)
    450 U.S. 248, 253........................................................................... 17

*Tirona v. State Farm Mutual Auto Insurance Co.,* (D. Hawaii 1993) (quoting)
*T.W. Electrical Service Inc. v. Pacific Electrical Contractors Association* (9th Cir. 1987)
    809 F.2d 626, 631........................................................................... 14

*Thornhill Publishing Co., Inc. v. GTE Corp.,* (9th Cir. 1979)
    594 F.2d 730, 738........................................................................... 14

*Waldridge v. American Hoechst Corp.* (7th Cir. 1994)
    24 F.3d 918, 921............................................................................. 12

*Warren v. City of Carlsbad* (9th Cir. 1995)
    58 F.3d 439, 441, 443..................................................................... 12

*Wyatt v. City of Boston*
    35 F.3d, 15-16................................................................................. 25

*Wright v. West* (1992)
    505 U.S. 277, 296........................................................................... 13

## TABLE OF AUTHORITIES (continued)

**Page**

*Yartzoff v. Thomas* (9th Cir. 1987)
    809 F.2d 1371, 1376......................................................................... 21

### STATUTES

Federal Rules of Civil Procedure 56(c).......................................................... .13

Federal Rules of Civil Procedure 56(e).......................................................... .14

### OTHER AUTHORITIES

EEOC Manual ¶ 8005, § 8-II Elements: Retaliation Claim, D, 3, p. 6512............................ 21

EEOC Manual ¶ 8005, § 8-II Elements: Retaliation Claim, D, 3, p. 6513............................ 21

Regulation 716.12 (a)........................................................................... 22

I. INTRODUCTION.

    A.   FACTUAL HISTORY

    Plaintiff's action herein is a claim for retaliation and harassment due to Plaintiff's participation in a petition [Ex. 5] submitted to Defendant in 2003 and her subsequent meeting in June of 2003 with management. The petition and the subsequent meeting dealt with complaints of waste, fraud, abuse, mismanagement, discrimination in hiring and retaliation.

    Plaintiff commenced employment with the US Postal Service on February 9, 1980 as a Senior Stenographer in the office of the Regional Chief Inspector for the Western Region. In 1992, Plaintiff was assigned to the San Francisco (SF) Division of the United States Postal Inspection Service (USPIS) and became the secretary to the Division's Inspector in Charge (INC). Plaintiff remained in the INC Secretary position for eleven years. In February of 2003, Plaintiff, a United States Postal Inspection Service [USPIS] Employee for over 25 years, and 48 other employees, signed a petition against management for Fraud, Waste, Abuse of authority, Mismanagement, and discrimination, based on the race of the employee, and retaliation. The Plaintiff signed the petition because management was showing favoritism and discrimination in promoting employees.[1]

    On February 22, 2003, the petition was sent to Ombudsman Jim Birch by Judy McDermott who initiated the petition, along with other correspondence in support of allegations made in the 2003 petition and which detailed complaints about discrimination, which resulted in the two AICs being removed from their positions in March 2003. [See P's dec.¶5, Exs. 6 & 7]

---

[1]Defendant's Motion for Summary Judgment erroneously states that the petition did not allege any "protesting any discriminatory practices," when in fact the complaint was of "bias" in promoting employees. Defendant's brief also ignores the subsequent meeting and notes read to management in the meeting which clearly involve protest of discrimination. Defendant's brief erroneously concludes that bias is not discriminatory. Bias under Title VII which refers to race is unlawful. The signatories of the petition and plaintiff's statements in the meeting involved the protest of the promotion of employees based on color and bias. Such statements reveal that a trier of fact should determine such issues.

PLAINTIFF 'S MEMORANDUM OF P.& A.
IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

1

1    INC Alan Kiel remained in his position as the INC. Cite   Kiel repeatedly approached Lee about

2    why she signed the 2003 petition, which was upsetting to her.  Ombudsman Birch was informed

3    by email dated 5/14/03 that if the Agency did not address Kiel continuing to inappropriately

4    approach Lee about the 2003 petition, that an outside agency would be contacted. ( Ex. 12).

5    Five days after this email was sent to Birch, Kiel sent an email dated 5/19/03 and announced his

6    retirement effective 6/30/03.  P's Ex. 20.   Kiel announced his retirement at the same time that

7    Karla Corcoran, Postal Inspector General, was being investigated by Congress for some of the

8    same issues addressed in the petition and for which she eventually was removed.

9         Each complainant who signed the petition was promised confidentiality. Although

10   Plaintiff was promised confidentiality by Headquarters [HG] and local management, in

11   approximately May 2003, someone released Plaintiff's name to Assistant Inspector in Charge,

12   Juliana Nedd, and Inspector in Charge, Alan Kiel. The two managers approached Plaintiff  in a

13   public work area and told her they were aware she signed the petition.   HQ and local managers,

14   which included Deputy Chief Michael Ahern and Ombudsman James Birch, then met with

15   Plaintiff and others individually to hear their complaints. [P's dec.¶ 5]  The managers promised

16   Plaintiff verbally and later confirmed in an email that there would be no retaliation, no transfer,

17   no demotion, no reassignment if she met with them. (Plaintiff's dec. Ex. 18 )

18        Their meeting was at the Marriott Hotel Conference Room in June 2003. Subsequently

19   the local managers, Inspectors Kiel, Nedd and Gamache were removed from the Division and the

20   interim Inspector in Charge position was assigned to W. P. Atkins.    Plaintiff subsequently was

21   solicited at least four times to take the position of Inspection Service Operations Coordinator

22   (aka Supervisor) of the Administration Center early 2005 by Inspector in Charge W. P. Atkins

23   and was told that the detail would assist her in being promoted.  Reluctantly, Plaintiff accepted

24   the detailed assignment as a supervisor and temporarily gave up her position as a Secretary

25   [Level EAS-14] and was placed in the supervisory role.   A detailed assignment such as the one

26

27   PLAINTIFF 'S MEMORANDUM OF P.& A.
      IN OPPOSITION TO DEFENDANT'S

28   MOTION FOR SUMMARY JUDGMENT

1   plaintiff accepted was clearly known in the agency as a temporary assignment.  (See Dec. Of

2   DRB, Ex. D, Ahern depo:. 14-15)   Plaintiff finally accepted the supervisor detail position,

3   because he was "my INC" and she believed that the supervisory detail would enhance her

4   promotional opportunities.  Plaintiff had advised at least one co-worker [Elena Bailey] that

5   Atkins continued to approach her about taking the detail and that she felt like she could not tell

6   him no because he was the INC.

7       In Plaintiff's 2004 year-end accomplishments she stated that she "accepted" the detail as

8   the Admin. Center Supervisor for promotional opportunities which was to last until December

9   2004, with the understanding that she would be returned to her INC secretary position if she was

10  not promoted, emphasizing what she had been advised by management in order to get her to

11  accept the detail.   [See EX. 26 of P's dec., she thought she would switch with Barbara Mendes

12  at end of 2004 if not promoted]   Plaintiff believed that the detail was temporary and was told by

13  management that the experience would help her to obtain a higher level position, preferably as a

14  General Analyst, so she accepted the position.  Plaintiff was told she was needed as the Admin

15  Center Supervisor and there was no one else that could do that job.

16      Plaintiff later requested to be returned to her secretary position because she was suffering

17  severe stress and emotional damage, of which the defendant was aware, but was repeatedly told

18  that she must remain in the supervisory position.   Management refused to take Lee out of the

19  supervisor position stating she was too valuable in that position and that there was no one to

20  replace her as the Admin. Center Supervisor, even though Plaintiff made numerous requests to

21  various members of management. Defendant claims that Plaintiff needed to remain in the

22  supervisor position of the Administration Center "because the division needed her in that role...It

23  was critical to the division that Marilyn Lee remain as the administrative center supervisor."

24  [Def.'s brief 17:1-3].  However, Atkins' claims were pretextual and false since management had

25  planned on closing the administration center and Atkins only wanted Plaintiff in the

26

27  PLAINTIFF 'S MEMORANDUM OF P.& A.
     IN OPPOSITION TO DEFENDANT'S
28  MOTION FOR SUMMARY JUDGMENT

                                          3

1    administration center so she would be laid off with the closing of the administration center. [P's

2    Dec.,Ex. 43].   Atkins knew of the planned closure of the Administration Center and only sought

3    to keep Plaintiff in that position so he could get rid of her.  There was no divisional need to keep

4    someone in a position that had already been decided to be eliminated.  Thus, Plaintiff clearly has

5    evidence that Atkins was keeping Plaintiff in the administration center for reasons other than her

6    excellent performance in that role as argued by Defendant. [Def's brief 17:24-25].

7         Atkins, the INC who stated that the detailed assignment would assist Plaintiff in being

8    promoted gave Plaintiff several false reasons for his refusal to return plaintiff to her secretary

9    position: (1) there was no one to replace plaintiff [four other employees were able to replace

10   plaintiff-see declaration of Plaintiff, ¶ 44-49; depos of Ahern: 13-14; O'Leary: 66-67; Graham:

11   27-28; Castor: 22-23; Atkins: 60-61]; (2) Plaintiff was "indispensable" (Def's brief 17:3-6)

12   [Plaintiff was offered training seminars wherein she was absent from being a supervisor and she

13   was encouraged to take other detailed assignments, which would have removed her from the

14   supervisor position, but when she accepted an OIG detail which Atkins confirmed in writing, it

15   was denied under false claims that the agency could not pay for the detail even though they had

16   paid for other employees' detailed assignments.  The OIG detail was cancelled because the

17   Agency would not pay for Lee's OIG detail, disparate from at least two other details that the

18   Agency paid for with Katie O'Leary and Sheilah Castor, who were detailed outside of the

19   USPIS, P's dep 30:25-31:5, EXS 46 & 47, email of Atkins ]; (3) Plaintiff "was handling the

20   supervisory responsibilities well," when in fact they knew she was suffering severe stress [See

21   Atkins depo, 44-45; 49:23-24 where he admits to seeing Plaintiff emotionally breaking down

22   over the supervisory duties, yet he callously called it "manipulative behavior."] and these

23   injuries were later confirmed by the DOL finding of workplace injury. [P's Dec., Ex. 39-DOL

24   finding]     At his deposition, Atkins claimed that he was permitted to keep someone in a

25   temporary detailed assignment. [Atkins: 60-61   This contradicts the agency's regulations

26

27   PLAINTIFF 'S MEMORANDUM OF P.& A.
     IN OPPOSITION TO DEFENDANT'S
28   MOTION FOR SUMMARY JUDGMENT

                                                    4

1  regarding temporary assignments as explained below as well as Mr. Ahern, 13:14-14:20 ].  The

2  reasons stated for Plaintiff's removal are also false (Plaintiff removed for suicide threats (Def.'s

3  brief 19:6-8)) when in fact the procedure for such leaves were not followed, as explained below.

4  These articulated reasons addressed by the agency are specific and substantial circumstantial

5  examples of false and pretextual evidence.

6      On June 21, 2005 Plaintiff was told by Sheila Castor that she would not be returned to

7  her previous position as the INC Secretary, working for Bill Atkins.   Plaintiff then complained

8  of the refusal to return her to her secretary position in a telephone call made on July 27, 2005

9  (Information for Pre-complaint counseling, Counselor's Report-P's Dec, EX. 77), some 38 days

10  after she was informed that she would not be returned to her previous job.  This record clearly

11  indicates that there were timely complaints made of actions which the Plaintiff considered

12  retaliatory since they were made within 45 days.   29 CFR § 1614.105(a)(1)

13      These requests of Plaintiff were made to Inspector in Charge Bill Atkins; Acting

14  Assistant Inspector in Charge Sally Diaz and Administrative Specialist Sheilah Castor. Because

15  of her requests to be removed as a supervisor, Plaintiff was offered a detail with the OIG.  The

16  new Ombudsman Toogood informed Chief Heath of her OIG detail which was eventually

17  cancelled.   Top-level managers knew of Plaintiff's desire to be removed as a supervisor and did

18  not intervene.

19      At his deposition Atkins falsely claimed that Plaintiff had asked for the detail assignment

20  to be a supervisor (Atkins: 35-41).  Atkins had requested Plaintiff to take the detailed assignment

21  of supervisor and it was his initial request.  Atkins acknowledged in his 2004 year-end

22  evaluation of Plaintiff that, "Marilyn took over the supervisory duties at my personal request,

23  and not because it was a position she desired." P's Dec. EX. 27.    Defendant's motion

24  erroneously states that "Atkins granted [plaintiff's] request" when plaintiff never made any

25  request [Def's brief at 5:1] even though his written review stated the fact that he had asked

26

27  PLAINTIFF 'S MEMORANDUM OF P.& A.
    IN OPPOSITION TO DEFENDANT'S

28  MOTION FOR SUMMARY JUDGMENT

1    plaintiff to take the detailed assignment.

2          The Meeting of June 2003

3     Plaintiff met with local and headquarters' managers in mid June 2003 regarding her reasons for

4    signing the 2003 petition. Plaintiff had six pages of prepared notes which she read to the group, and

5    later prepared two pages of notes dated 8/10/05 summarizing the 6/03 meeting to include with her

6    EEO complaint. [Ex. 19] Plaintiff specifically addressed during this meeting that a black female

7    AIC, Juliana Nedd, had discriminated against other employees when Nedd chose another black

8    female Wanda Smith, for a "detail" opportunity and that the detail was not offered to anyone else,

9    when it appeared there were others more qualified. Plaintiff addressed that Nedd met with Smith

10    and helped her with her 991, Application for Promotion, and that "these events were all out in the

11    open, with Juliana keeping her door open and talking very loudly as usual. Juliana did not offer this

12    same treatment to anyone else and it was very clear by her actions Juliana wanted Wanda in that

13    position." Plaintiff also stated during this meeting, "One day an Inspector approached me and told

14    me that management has directed an investigation to inquire of employees who may have said the

15    selection was racially motivated meaning Juliana Nedd wanted to promote Wanda Smith because

16

17    she was black and my name was mentioned."    [Ex. 19]

18

19    After the June 2003 meeting, Lee was advised verbally  and by email dated June 13, 2003 that she

20    would not be demoted, reassigned or retaliated against due to her role in the petition and meeting

21    with managers in the June 2003 meeting. [Ex. 18]

22    Ombudsman Birch in a 5/7/03 email stated that he shared information from the petition and

23    supporting  correspondence sent to him with the Chief Postal Inspector and " **other relevant**

24    **executives.**" [P's Dec.,Ex 11]  Mike Ahern stated in his deposition that the executive committee

25    consisted of the Lee Heath, CPI, Larry Katz, Chief Legal Counsel, himself, four other deputy chief

26

1  postal inspectors and a non-inspector (Ahern 21:1-13), and that the Executive committee met 6-9

2  times per year (Ahern, 22:1-2). Ahern also stated that the INCs in the Western Area reported to him

3  (Ahern 19:13-17; 20:7-19.)

4  When INC Kiel retired, Bill Atkins, the Seattle AIC, was named the new SF INC in July 2003 and

5  was to report to the SF Division in September 2003. Atkins's supervisor was Mike Ahern, Deputy

6  Chief Inspector. [Atkins:88:15-18; Ahern, 58:4-8]  Ahern and Katz reported to CPI Heath. [Ahern,

7  22:13-17,77:25-78:1] When Atkins reported to the SF Division his Secretary was Marilyn Lee.

8

9       Atkins was aware of the 2003 petition and the circumstances surrounding the removal of the

10  three managers from their positions. William Akins was named the new SF INC in July 2003 and

11  reported to the Division on September 10, 2003, along with Acting AIC Robert Bethel whom Atkins

12  brought with him from the Seattle Division. Atkins was aware of on-going issues in the Division,

13  including EEOs filed and the 2003 petition. Atkins stated he was aware that the last management

14  group was "booted" out of SF. [Atkins, 87:13-16]

15       Three managers being removed from their positions had never been done in the past in the

16  USPIS, and every Division manager and employee was aware of what happened in SF regarding a

17  petition being circulated and the three managers being removed. Atkins was also aware that Plaintiff

18  had signed the 2003 petition and met with local and headquarters managers in June 2003 which

19  resulted in the removal of the prior INC from his position, as well as the two AICs. Atkins was

20  advised that Lee had informed managers during the June 2003 meeting that she overheard the prior

21  SF managers talking while Plaintiff was sitting at her desk outside their offices, and that what she

22  overheard managers discussing and what she observed was one reason she signed the petition.

23

24

25

26

27  PLAINTIFF'S MEMORANDUM OF P.& A.
    IN OPPOSITION TO DEFENDANT'S
28  MOTION FOR SUMMARY JUDGMENT

7

1    When Akins reported to the SF Division, within a few months he relocated Plaintiff's work

2    desk from outside his and the other SF manager's office area to a secluded office (former conference

3    room) where Plaintiff would not overhear confidential conversations by the new SF managers.

4    Plaintiff's work desk had previously been located outside the SF manager's office area for at least

5    11 years while she reported to prior INCs.  [Lee, 128:7-17]

6

7    Atkins then continued to approach Plaintiff to ask her to take a "detail" to the Admin Center

8    Supervisor position, and asked her at least four times.    Management advised Plaintiff that the

9    supervisor detail would help her with future promotional opportunities and began to give her training

10   opportunities. Atkins continued to approach Plaintiff on at least four separate occasions regarding

11   the supervisor detail, and Plaintiff finally accepted the "detail" to the Supervisor of the Admin Center

12   in June 2004. Plaintiff took the supervisory position with the understanding that it would help her be

13   promoted and that it was a temporary detail assignment.  Once Plaintiff was detailed as the Admin

14   Center Supervisor,  she was no longer invited to the management meetings, and as such she was no

15   long privy to the on-going activities of the Atkins management team even though her position as an

16   administrative Center Supervisor is considered a part of management.  P's depo 135 line 1-17 "I was

17   not invited to the management meetings." "And I thought that was kind of wrong."

18

19   Plaintiff found her new job responsibilities as a supervisor stressful and repeatedly requested

20   that she be reassigned back to her original INC secretary job.  Management was aware that the

21   supervisor job was causing Plaintiff extreme stress.  Plaintiff's supervisor, Sheila Castor, and other

22   co-workers repeatedly saw Lee crying and/or visibly upset on numerous occasions.  At least three

23   people approached Castor to comment on their observations of Plaintiff's distress stating she was

24   "emotionally fragile" and "cried often." Castor, 47:5-25.    Castor told Plaintiff to get a detail outside

25

26

27   PLAINTIFF 'S MEMORANDUM OF P.& A.
      IN OPPOSITION TO DEFENDANT'S

28   MOTION FOR SUMMARY JUDGMENT

8

1   the Agency and when Plaintiff did, the USPIS refused to pay for the detail, disparate from at least two

2   other details they did pay for involving two other females (white).

3       Plaintiff subsequently made comments of what does she have to do, hurt herself to get

4   someone's attention about removing her as the supervisor.   The Agency placed Plaintiff on

5   administrative leave on July 18, 2005 "while the inspection service reviews the circumstances

6   surrounding your alleged stressful work environment." [letter placing p on leave ex 66]   Plaintiff

7   filed a DOL stress claim on August 10, 2005 which was accepted by the DOL on February 4, 2006.

8
    Plaintiff is currently on temporary total disability.  Plaintiff had received a monetary award and a far-

9   exceeds merit from Atkins while she was his INC secretary, so refusing to return her to the INC

10  secretary position was not due to her inability to perform the job.

11

12      Plaintiff made numerous requests to be returned as the INC secretary for health reasons, but

13  her requests were denied, even though management saw that Plaintiff's health was being negatively

14  impacted due to the "detail" as the Admin. Center Supervisor.   Plaintiff even requested to be

15  reassigned to any position where she did not have to supervise employee even if it was not the INC

16  secretary position, but her request was denied.

17

18      Management had allowed at least seven other employees to be placed on "details" and then

19  returned them to their original positions. [60-List of detailed employees who were allowed to return

20  to their original positions].   Plaintiff was the only person treated disparately when she was not

21  allowed to return to her original position. Management had also created positions for at least one

22  employee, Kaycee Graham, but did not do that for Plaintiff when she requested out of the supervisor

23  detail. [Ex. 35 email indicating Graham returned as supervisor]

24

25

26

27  PLAINTIFF 'S MEMORANDUM OF P.& A.
     IN OPPOSITION TO DEFENDANT'S
28  MOTION FOR SUMMARY JUDGMENT
                                                    9

1    Plaintiff became increasingly more distressed with the duties of a supervisor and made repeated

2    requests to management to be removed from her detail as the Admin Center supervisor position and

3    returned to her INC secretary position.  Management was aware of Plaintiff's increasing distress, as

4    Plaintiff was observed by management and co-workers in tears on numerous occasions.  Plaintiff's

5    supervisor, Sheilah Castor, stated she observed Plaintiff in tears, and that Plaintiff was "hysterical

6    during at least two phone conversations," and was becoming "increasingly more emotional and

7    upset."    Castor also stated she was advised by several co-workers that Plaintiff appeared

8    "emotionally fragile and cried often," naming three co-workers who approached her about Plaintiff's

9    distress.  [Caster, 33:24-25; 51:22-24; 52:21-53:24]

10

11          Numerous employees had served as Admin. Center Supervisor prior to Plaintiff's detail there

12   in June 2004, and numerous served in that position during the past 4 years after Plaintiff left the

13   Agency, negating the Agency's contention that no one was available to replace Plaintiff as the

14   Admin. Center Supervisor.  Additionally, initially when Plaintiff was to be detailed to the OIG in

15   April 2005 Castor stated that if Plaintiff would have received the OIG detail, Castor would review

16   staffing to see who would replace Plaintiff as the Admin Center Supervisor (Castor 52:16-20),

17   negating that Plaintiff was not returned to her INC Secretary position because there was no one to

18   replace her when there were going to find someone to replace her for the OIG detail in April 2005.

19   At least seven other employees were placed on "details" and then allowed to return to their regular

20   positions.  [Ex. 60]  Disparately, Plaintiff was the only employee singled out who was placed on a

21   detail, at management's request, and then not allowed to return to her regular position.

22   After being told she would never be returned as the INC secretary or removed from the

23   Supervisor position, Plaintiff subsequently made a comment to AIC Sally Diaz stating, "What do

24

25

26   PLAINTIFF'S MEMORANDUM OF P.& A.

27    IN OPPOSITION TO DEFENDANT'S
     MOTION FOR SUMMARY JUDGMENT

28                                                10

I have to do, do I have to hurt myself to make it clear that I have to be removed from the supervisory position?"  Plaintiff made the comment out of frustration and the comment was not said as a suicidal threat, and in fact the AIC she made the comment to initially promised not to tell anyone about Plaintiff's comment if she went and saw a doctor.  [Lee, 71:4-17; 175:17-25; 176:1-25; 178:17-18]  Plaintiff wanted to get a medical note to be removed from the supervisory position and hoped that Atkins would honor the request.    The Agency placed Plaintiff on administrative leave on July 18, 2005 and provided her a letter dated 7/15/05 stating, "You are hereby placed on administrative leave (non-duty status with pay) effective July 18, 2005, while the Inspection Service reviews the circumstances surrounding your alleged stressful work environment." [Ex. 66, Admin. Leave letter]  Plaintiff was never advised she was being placed off work for her comments about hurting herself or that management thought that she would hurt herself nor that she was being sent for a FFD medical exam.  In fact, Lee was not sent for a fitness for duty medical exam, until after she filed her pre-EEO on 8/13/05 which was received in Washington DC on 8/15/05.  One day later, on 8/16/05 Castor contacted Plaintiff to advise her she was being scheduled for a FFD medical exam on 8/23/05. [Ex. 67, Fitness for Duty letter]  Plaintiff had already been off work for over 30 days before she was advised she was being sent for a FFD medical exam.  Plaintiff filed a Department of Labor stress claim on August 10, 2005 for "work related stress & hostile work environment which was accepted by the DOL on February 4, 2006. [Ex. 39-DOL acceptance of stress claim]

## II. STANDARD OF REVIEW

### A.    THE DEFENDANT HAS NOT MET THE REQUIREMENTS FOR SUMMARY JUDGMENT.

In analyzing a motion for summary judgment all evidence must be viewed in a light most

1    favorable to the non-moving party.  Summary judgment is proper only if no material factual

2    issues exist, *Warren v. City of Carlsbad* (9th Cir. 1995) 58 F.3d 439, 441.

3        [T]he non-movant need not match the movant witness for witness, nor persuade the court

4    that her case is convincing, she need only come forward with appropriate evidence demonstrating

5    that there is a pending dispute of material fact" *Waldridge v. American Hoechst Corp.* (7th Cir.

6    1994) 24 F3d 918, 921.  Inferences drawn from the evidence must be viewed in the light most

7    favorable to the nonmoving party, *Eastman Kodak Corp. v. Image Technical Services* (1992) 504

8    U.S. 451, 456.

9

10       The Federal Courts follow the formula expounded in *McDonnell Douglas Corp. v. Green*

11   (1973) 411 U.S. 792, 802 in analyzing discrimination and retaliation cases.  Under the rules set

12   forth in *McDonnell Douglas* the plaintiff must first present her prima facie case alleging

13   discrimination, harassment or retaliation.  After the plaintiff has presented a prima facie case the

14   defendant must set forth a legitimate, non-discriminatory reason or reasons for its actions.  The

15   plaintiff must then present sufficient evidence that a reasonable jury could find that the

16   defendant's proffered reason is in fact untrue or pretextual or provide direct evidence of

17   discriminatory intent.

18

19       The "plaintiff…need produce very little evidence of discriminatory motive to raise a

20   genuine issue of fact as to pretext," *Warren v. City of Carlsbad* (9th Cir. 1995) 58 F.3d. 439, 443.

21   "To survive an employer's summary judgment motion, only a genuine factual issue with regard to

22   discriminatory intent need be shown, a requirement that is almost always satisfied when the

23   plaintiff's evidence, direct or circumstantial, consists of more than the presumption established by

24   the three-pronged *prima facie* case test" *Strother v. S. Cal. Permanente Medical Group* (9th Cir.

25

26   PLAINTIFF 'S MEMORANDUM OF P.& A.

27    IN OPPOSITION TO DEFENDANT'S
     MOTION FOR SUMMARY JUDGMENT

28                          12

1   1996) 79 F3d 859, 870.

2   Finally, evidence that casts doubt on an employer's stated reasons for its actions <u>alone</u> can be

3   sufficient to support a jury finding of discriminatory or retaliatory intent. "Proof that the defendant's

4   explanation is unworthy of credence is simply one form of circumstantial evidence that is probative

5   of intentional discrimination, and it may be quite persuasive" *Reeves v. Sanderson Plumbing*

6   *Products, Inc.* (2000) 530 U.S. 133, 147. "[T]he trier of fact can reasonably infer from the falsity of

7   the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an

8   inference is consistent with the general principle of evidence law that the fact finder is entitled to

9   consider a party's dishonesty about a material fact as 'affirmative evidence of guilt" *Id.* at 147 citing

10  *Wright v. West* (1992) 505 U.S. 277, 296. "Moreover, once the employer's justification has been

11  eliminated, discrimination may well be the most likely explanation, especially since the employer is

12  in the best position to put forth the actual reason for its decision,"*Reeves* at 147-148. In the instant

13  case there is more than enough evidence to cast grave doubt on Defendant's alleged "legitimate"

14  reasons for its actions.

15

16  A motion for summary judgment may be granted only when the pleadings, depositions,

17  answers to interrogatories, and admissions on file, together with any affidavits submitted, show

18  that there is "no genuine issue as to any material fact" and that the moving party is entitled to a

19  judgment as a matter of law. Fed. R. Civ. Pro. 56(c). Material facts are those which may affect

20  the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as

21  to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict

22  for the nonmoving party. <u>Id</u>. The party moving for summary judgment bears the initial burden of

23  identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence

24  of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), cert.

25

26

27  PLAINTIFF 'S MEMORANDUM OF P.& A.
     IN OPPOSITION TO DEFENDANT'S
28  MOTION FOR SUMMARY JUDGMENT

13

denied, 484 U.S. 1066 (1988).   The Supreme Court stated in *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-289 (1968), that all that is required to overcome a motion for summary judgment "is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Even if the opposing party fails to file an opposition motion and rests upon the pleadings, the motion for summary judgment must be denied if the movant's submission does not resolve all factual issues. *Boazman v. Economics Laboratory, Inc.*, 537 F2d 210 (1976, CA5 Ga)[Emphasis added]. "[The Court] must not weigh the evidence or determine the truth of the matter, but determine only whether there is a genuine issue of trial," *Plumber v. School District #40 County of Yamhill* (9th Cir. 1997) 130 F.3d 432, 436.

In analyzing a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, supra, 477 U.S. 242 at 255 (1986).  A court ruling on a summary judgment motion must not determine credibility of witnesses or weigh material facts legitimately in dispute. Id.  When direct evidence of the movant conflicts with direct evidence of the non-movant, the judge must assume the truth of the evidence set forth by the non-moving party with respect to that fact. *Tirona v. State Farm Mutual Auto Insurance Co.*, 812 F. Supp. 1083, 1085 (D. Hawaii 1993) (quoting *T.W. Electrical Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 631 (9th Cir. 1987).  The evidence presented by the parties must be admissible. Fed. R. Civ.  P. 56(e).  Conclusory, speculative testimony in affidavits and moving papers will not be considered in ruling on a motion for summary judgment. *Thornhill Publishing Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  Hearsay statements found in affidavits are inadmissible. See *Fong v. American*

PLAINTIFF 'S MEMORANDUM OF P.& A.
 IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

14

1   *Airlines, Inc.*, 626 F.2d 759, 762-763 (9th Cir. 1980).   Summary judgment is not appropriate

2   where genuine issues of material fact exist and the moving party is not entitled to judgment as a

3   matter of law.  Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.*, 475

4   U.S. 574 (1986); *Anderson v. Liberty lobby, Inc.*, 477 U.S. 242 (1986).  Thus the Declaration of

5   Ms. Lynne Hebrst is multiple heresay regarding Ms. Gail Sibley and should be disregarded.

6

**B.    INNUMERABLE CONFLICTS EXIST BETWEEN THE MATERIAL FACTS AS**
7   **PRESENTED BY THE RESPECTIVE PARTIES**
        The versions of the events and the material facts set forth by the Defendant and the
8
9   Plaintiff bear little resemblance to one another.  The Plaintiff has clear evidence to prove

10  disparate treatment since the standard practice was to permit transfers, and since Plaintiff's

11  assignment was a "detail," she should have been permitted to return to her secretary job as many

12  others were allowed routinely to do,  (See Exhibit 60  Dec  of Plaintiff )   Plaintiff was denied

13  the standard practice of being permitted to return to her regular assignment from a detail.  Thus

14  her treatment was disparate from the standard practice.  To deny plaintiff the opportunity for a

15  jury to hear the matter and determine the true reason for Defendant's refusal to permit plaintiff to

16  return to her regular assignment from a temporary detail would be a travesty.

17
**C.    SUMMARY JUDGMENT IS RARELY APPROPRIATE IN EMPLOYMENT**
18  **DISCRIMINATION CASES**
        Because of the nature of employment discrimination cases and the likelihood that genuine
19
20  issues of material fact will exist, summary judgment is rarely appropriate.   Once an employee has

21  presented evidence of inconsistencies that casts doubt on an employer's credibility,  the employer

22  may not obtain summary judgment unless it can show that no factual dispute exists because the

23  employee will not be able to provide either direct or indirect evidence of a discriminatory

24  purpose. See *Sorba v. Pennsylvania Drilling Co.*,  821 F.2d 200 (3d Cir. 1987).  The plaintiff will

25

26  PLAINTIFF 'S MEMORANDUM OF P.& A.
27   IN OPPOSITION TO DEFENDANT'S
    MOTION FOR SUMMARY JUDGMENT
28                                                15

1    survive a summary judgment motion if, having presented a prima facie case, the plaintiff also

2    produces sufficient evidence to raise a genuine issue of fact as to whether the employer's

3    proffered reasons are not its true reasons for the challenged action, but instead are merely

4    pretextual. See *Sheridan v. E.I. Dupont de Nemours & Co.*, 70 BNA FEP Cas 98, 67 CCH EPD

5    paragraph 43950 (3d Cir. 1996).

6         In job discrimination cases, courts are hesitant to grant summary judgment where issues of

7    motive or intent are involved.  See *EEOC v. Southwest Texas Methodist Hospital*, 606 F2d 63

8    (5th Cir. 1979), cert. denied, 445 U.S. 928, reh. denied, 446 U.S. 947.  When motive or intent are

9

10    involved, genuine issues of fact usually exist.  *Jones v. Western Geophysical Co.*, 669 F2d 280

11    (5th Cir. 1982).  Here Defendant has stated false reasons for its actions toward Plaintiff

12    [Defendant's assertion that plaintiff requested a detail contradicts Defendant's review of Plaintiff

13    were it stated the truth that Defendant requested the detail; falsely denied knowledge that detail

14    was harmful to Plaintiff, etc. ]

15    **D.  PRIMA FACIE CASE OF DISCRIMINATION**

16

17         Plaintiff has shown evidence that the reasons Defendant has asserted for its action of

18    refusing to return Plaintiff from her temporary detail, are false and pretextual, because there was

19    no critical need for Plaintiff to stay in a position which had been selected for elimination.

20    Atkins did not trust Plaintiff because he moved her to an enclosed office; placed her on a detail

21    never to return as secretary; Defendant offered Plaintiff other jobs/details; brought Kaycee into a

22    meeting with Plaintiff; and then tried to reassign Plaintiff as supervisor so she could be RIF'd.

23         Plaintiff contends that the reasons given for her being forced to remain in the supervisor's

24    detail are pretextual and that the true reason for her forced maintenance in the supervisor position

25

26    PLAINTIFF 'S MEMORANDUM OF P.& A.

27    IN OPPOSITION TO DEFENDANT'S

28    MOTION FOR SUMMARY JUDGMENT

1    was her signing a petition and meeting with management to complain about discrimination.

2    Plaintiff also contends that she has been the victim of disparate treatment due to her protected

3    activity in that all other employees who desired to return to from their detail assignments were

4    routinely permitted to do so.

5            Plaintiff also alleges that Defendant failed to take all reasonable steps to prevent

6    discrimination.  Defendant clearly failed by not investigating the reasons, facts or circumstances

7    of Plaintiff's mistaken travel pass usage.

8

9    **E.      DEFENDANT'S STATED REASONS FOR DENYING PLAINTIFF HER RIGHT
           TO RETURN FROM HER DETAIL ARE PRETEXTUAL**

10

11          "The factfinder's disbelief of the reasons put forward by the defendant
            (particularly if disbelief is accompanied by a suspicion of mendacity) may,
            together with the elements of the prima facie case, suffice to show intentional

12          discrimination.  Thus, rejection of the defendant's proffered reasons will
            *permit* the trier of fact to infer the ultimate fact of intentional discrimination,

13          and the Court of Appeals was correct when it noted that, upon such rejection,
            'no additional proof of discrimination is *required*.'" St. Mary's Honor Ctr.

14          v. Hicks (1993) 113 S. Ct. 2742, 2749 (emphasis in original).

15          The falsity of even <u>one</u> of the employer's articulated reasons for its actions

16    create a permissible inference that the other articulated reasons are also false. *Roebuck v.*

17    *Drexel University* (3rd Cir. 1988) 852 F.2d 715, 734, *Logue v. International*

18    *Rehabilitation Assoc.* (3rd Cir. 1988) 837 F.2d 150, 155, *Sims v. Cleland* (6th Cir. 1987)

19    813 F.2d 790, 793.    The claim that operational needs ("Management also kept Lee in

20    the supervisor position because the division needed her in that role," [Def's brief at

21    17:1]) are sufficient to justify a legitimate business need has been held to be insufficient

22

23    and cited as a basis to show discriminatory treatment against the post office. See *Cooper*

24    *v. Postmaster General, Runhon, Jr.* (1996), EEOC Appeal No. 01943785;   *Brooks v.*

25    *Postmaster General* (1994) EEOC Appeal No. 05930625, 4077/E1; Also see *Texas Dept.*

26    PLAINTIFF 'S MEMORANDUM OF P.& A.

27     IN OPPOSITION TO DEFENDANT'S
       MOTION FOR SUMMARY JUDGMENT

28                              17

1  *Of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981).   Thus Defendant's claims

2  echo other attempts by the this agency to create legitimate business reasons which have

3  been held to be pretextual.   Also see *Doucette v. Secretary of Health and Human*

4  *Services,* EEOC appeal No. 05920719, 3558/D5 (1993)

5
6      Defendant has articulated reasons for Plaintiff's denial of her request to return

7  from her detail which are false . However, Defendant has treated all other employees

8  differently than Plaintiff Lee.  No one other than Plaintiff was denied the right to return

9  to their regular assignment from a detail.  See EX. 60 of Plaintiff's declaration.

10      The above facts indicate that the so-called reasons for Plaintiff's forced

11  maintenance in the supervisor position were merely a convenient pretext with which to

12  bolster the Defendant's unjustified and retaliation against Plaintiff for her exercise of her

13  right to criticize discriminatory practices.

14  **F.   EVIDENCE OF DISPARATE TREATMENT**

15
16      Plaintiff may also show discrimination by showing that similarly situated

17  individuals, not of Plaintiff's protected class did not receive the same adverse treatment

18  as Plaintiff. *Kientzy v. McDonnell Douglas Corp.* (8th Cir. 1993) 990 F.2d 1051, 1060,

19  *Busby v. City of Orlando* (11th Cir. 1991) 931 F.2d 764, *McAlester v. United Air Lines,*

20  *Inc.* (10th Cir. 1988) 851 F.2d 1249.

21      In the instant case no evidence has been offered indicating that anyone other than

22  Plaintiff was prohibited from returning to their regular assignments after working a

23  temporary detail.

24      F-I. PLAINTIFF'S COMPLAINTS IN JUNE OF 2003 OF DISCRIMINATION

25  AT USPIS AND SUBSEQUENT MEETING ARE PROTECTED ACTIVITIES UNDER

26
27  PLAINTIFF 'S MEMORANDUM OF P.& A.
   IN OPPOSITION TO DEFENDANT'S

28  MOTION FOR SUMMARY JUDGMENT

                                    18

1  TITLE VII SINCE SHE WAS A PARTICIPANT IN COMPLAINING OF
   DISCRIMINATION AND THE DEFENDANT'S ALLEGATIONS THAT PLAINTIFF
2  DID NOT ENGAGE IN PROTECTED ACTIVITY IGNORES THE LAW FOLLOWED
   BY THE EEOC AND THE CIRCUIT COURTS: ALLEGATIONS OF RACIAL BIAS
3  ARE PROTECTED.

4          The anti-retaliation provisions make it unlawful to discriminate against any

5  individual because she has made a charge, testified, assisted, or participated in any

6  manner in an investigation or proceeding under Title VII.  This protection applies to

7  individuals challenging employment discrimination under the statutes enforced by

8  EEOC.   Once an employee makes any contact with an EEO counselor, that employee is

9  engaging in participation and is protected by Title VII.  *Hashimoto v. Dalton* 118 F 3d

10 671, 680 (9th Cir., 1997).   In this case, Marilyn Lee signed a petition and also made

11 contact with Deputy Chief Michael Ahern and Ombudsman Birch, eeo counselors in

12 approximately June of 2003 where she complained of discriminatory practices of

13 promoting employees in a unfair and discriminatory manner and is thus protected. (See

14 Plaintiff's decl, Ex. 19 )   Then when Plaintiff Lee was told that she would not be

15 returned to her previous position she timely protested this action.  Defendant does not

16 address the issues of retaliation correctly.  Defendant argues that adverse action is

17 necessary to prove retaliation ["..the denial of Plaintiff's requests for reassignment was

18 not an adverse employment action.." p. 12:9-10 of Def's brief]

19         However, the United States Supreme Court has made clear that adverse action is

20 not required to prove retaliation.  In *Burlington Northern & Sante Fe Railway Co. V.*

21 *White* No. 05-259, 2006, the United States Supreme Court made it clear that a

22 reassignment of duties can constitute retaliatory discrimination, just as in the instant case.

23 The Defendant in this case states that adverse action was required which clearly misstates

24
25
26
27 PLAINTIFF 'S MEMORANDUM OF P.& A.
    IN OPPOSITION TO DEFENDANT'S
28 MOTION FOR SUMMARY JUDGMENT
                                        19

1    the law.   The court in *Burlington Northern & Sante Fe Railway Co. V. White* No. 05-

2    259, June 22, 2006 explains:

3        "Contrary to Burlington's claim, a reassignment of duties can constitute
         retaliatory discrimination where both the former and present duties fall within the same
4        job description.  Almost every job category involves some duties that are less desirable
         than others.  That is presumably why the EEOC has consistently recognized retaliatory
5        work assignments as forbidden retaliation...Based on this record, a jury could reasonably
         conclude that the reassignment would have been materially adverse to a reasonable
6        employee."  ID at p. 2 of the opinion.

7

8        Just as White's case involved emotional distress from the assignment, Plaintiff

9    Lee herein also claimed emotional distress from the temporary detailed job assignment.

10   White testified to physical and emotional pain from the different job assignment and

11   subsequent removal from her position by management.   *Burlington Northern & Sante Fe*

12   *Railway Co. V. White* No. 05-259, June 22, 2006 makes very clear that such issues are

13   fact issues and those facts do not need to rise to the level of an adverse action.  Thus the

14   issue is not whether the actions in placing Lee in a new position were an adverse action,

15   but whether the employer's actions would have been materially adverse to a reasonable

16   employee or job applicant.

17

18       The signing of a petition complaining of bias in promoting employees based on

19   race and bias and the subsequent meeting where she clearly complained of discriminatory

20   promotional practices constitutes protected activity and thus Defendant's arguments that

21   the petition and subsequent meeting are not protected speech are erroneous.

22    F-2.   ADVERSE ACTIONS NEED NOT QUALIFY AS 'ULTIMATE
         EMPLOYMENT ACTIONS' OR MATERIALLY AFFECT THE TERMS OR
23       CONDITIONS OF EMPLOYMENT TO CONSTITUTE RETALIATION.
24       Although some courts previously held that the retaliation provisions only apply to

25   retaliation that takes the form of ultimate employment actions or require that the action

26
     PLAINTIFF 'S MEMORANDUM OF P.& A.
27   IN OPPOSITION TO DEFENDANT'S
     MOTION FOR SUMMARY JUDGMENT
28                                    20

1  materially affects the terms, conditions, or privileges of employment, The Equal

2  Employment Opportunity Commission [EEOC] does not recognize those decisions as

3  decisive on the issue and concludes that such constructions are unduly restrictive. [EEOC

4  Manual, ¶ 8005, § 8–II Elements: Retaliation Claim, D, 3, p. 6512].[1]    According to the

5  EEOC, the statutory retaliation clauses prohibit **any adverse treatment** that is based on a

6  retaliatory motive and is reasonably likely to deter the charging party or others from

7  engaging in protected activity.

8

9       The EEOC Compliance Manual states:

10      The Commission's position is based on statutory language and policy
considerations. The anti-retaliation provisions are exceptionally broad. They make it

11  unlawful to 'discriminate' against an individual because of his or her protected activity.
This is in contrast to the general anti-discrimination provisions which make it unlawful to

12  discriminate with respect to an individual's 'terms, conditions, or privileges of
employment.' The retaliation provisions set no qualifiers on the term 'to discriminate,'

13  and, therefore prohibit *any discrimination* that is reasonably likely to deter protected
activity. [citing *Knox v. State of Indiana*, 93 F. 3d 1327, 1334 (7th Cir., 1996) and *Passer*

14  *v. American Chemical Society*, 935 F 2d 322, 331 (D.C. Cir., 1991), stating that Section

15  704(a) does not limit retaliation to acts of discharge, transfer, or demotion.] They do not
restrict the actions that can be challenged to those that affect the terms and conditions of

16  employment. Thus, a violation will be found if an employer retaliates against a worker
for engaging in protected activity through threats, harassment in or out of the workplace,

17  or any other adverse treatment that is reasonably likely to deter protected activity by that
individual or other employees. [EEOC Manual, ¶ 8005, § 8–II Elements: Retaliation

18  Claim, D, 3, p. 6513].

19      The EEOC standard covers **lateral transfers**, unfavorable job references, and changes in

20  work schedules. These actions are all reasonably likely to deter employees from engaging in

21  protected activity.   Adverse employment action does not have to be an ultimate employment

22  action. See e.g., *Ray v. Henderson*, 217 F.3d 1234 (9th Cir. 2000); *Spring v. Sheboygan Area*

23  *School District*, 865 F. 2d 833 (7th Cir., 1989); *Yartzoff v. Thomas*, 809 F. 2d 1371, 1376 (9th Cir.,

24  _____

25      [1]*Burlington Northern & Sante Fe Railway Co. V. White* No. 05-259, June 22, 2006 makes
it clear that the EEOC's view on this is correct: That adverse action is not required.

26  PLAINTIFF 'S MEMORANDUM OF P.& A.

27   IN OPPOSITION TO DEFENDANT'S

28  MOTION FOR SUMMARY JUDGMENT
                        21

1987); *St. John v. Employment Development Dept.,*642 F. 2d 273, 274 (9th Cir., 1981) - a transfer to another job of the same pay and status may constitute an adverse employment action. [Plaintiff requested to be returned to her job as Secretary due to stress as a Supervisor and was refused for no valid reason and in violation of regulation 716.12 (a).   Because the Admin Center had a history of problem employees, the Admin Center Supervisor position (ISOC) was considered a punitive move by others because of Complainant's signing the 2003 petition.]

   *Passer v. American Chemical Society*, 935 F.2d 322, 331 (D.C. Cir. 1991) (Section 704(a) broadly prohibits an employer from discriminating against its employees in any way for engaging in protected activity and does not "limit its reach only to acts of retaliation that take the form of cognizable employment actions such as discharge, transfer or demotion".   Although in this instance there were threats of termination when Lee requested that she be returned to the secretary position.

       Under the Commission's view, an aggrieved employee may establish a prima facie case of reprisal by showing that: (1) she engaged in prior protected activity; (2) she was subjected to treatment which would have been materially adverse to a reasonable employee to such an extent that it would affect their willingness to make a complaint of discrimination or participate in giving a statement regarding an allegation of discrimination and (3) there is a causal connection between the protected activity and the employee's treatment. In applying this standard, the Commission considers an "adverse treatment" to be any adverse treatment, including threats and harassment in or out of the workplace, that is based on a retaliatory motive, and is reasonably likely to deter the charging party or others from engaging in protected activity. See EEOC Compliance Manual, ID and *Burlington Northern & Sante Fe Railway Co. V. White* No. 05-259, June 22, 2006

PLAINTIFF 'S MEMORANDUM OF P.& A.
 IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
                    22

1    Unlawful retaliation for EEO activity can occur whenever the employer acts in response

2    to protected EEO activity in such way that is reasonably likely to deter protected activity in the

3    future.  Binseel v. Department of the Army, EEOC Request No. 05970584 (10/8/98).  Marr v.

4    Department of the Air Force, EEOC Appeal No. 01941334 (6/7/96).  [Lee's Coworkers were

5    asked to respond to Plaintiff's DOL questionnaire and management intimidated employees not to

6    respond in fear of retaliation   Employees witnessing Plaintiff suffer on a daily basis and

7    management not intervening to help Plaintiff  only fueled confirmation of retaliation for those

8    utilizing Title 7 rights.]

9    An employee's right to EEO representation is sufficiently connected to a term, condition,

10   or privilege of employment so that abridgement of that right by the agency will render an

11   employee aggrieved.  Storey v. Department of the Treasury, EEOC Request No. 0597083

12   (8/3/1999)

13   Now in *Burlington Northern & Sante Fe Railway Co. V. White* No. 05-259,

14   decided June 22, 2006, the United States Supreme Court makes it clear that the EEOC's

15   view of retaliation is correct: That activity by an employer which would dissuade a

16   reasonable worker from making or supporting a charge of discrimination.  Unwelcome

17   transfers of job assignment as in *Burlington Northern & Sante Fe Railway Co. V. White*

18   make it clear that the standard is not one of adverse action as the judge in this case stated

19

20   at page 6.

21   In this case, Ms. Lee was threatened with disciplinary action of insubordination (a

22   termination offense) each time she complained of management's refusal to allow her to

23   return to her secretary position when she explained that the supervisor of the

24   Administrative Center was causing her injury.  The agency's actions of keeping Ms. Lee

25

26

27   PLAINTIFF 'S MEMORANDUM OF P.& A.
     IN OPPOSITION TO DEFENDANT'S

28   MOTION FOR SUMMARY JUDGMENT

                                         23

1  in the position of Inspection Service Operations Coordinator (aka Supervisor) was in

2  clear violation of **agency regulations** which required temporary assignments only for

3  emergencies and then not to exceed 90 days to keep Lee in the position of Supervisor. [A

4  copy of the USPS Employment Labor Management Regulations Assignment,

5  Reassignment, and Promotion, 711 et seq. Are attached as Exhibit 78 to P's declaration.

6  Since these regulations require forms to be completed for such assignments and since

7  discovery has produced no forms which were submitted to the proper higher authorities,

8  this is clear evidence that the management was acting contrary to agency policy.

9

10  Instead Defendant claims that its actions were for legitimate business reasons which it

11  claims were non-discriminatory, non-retaliatory reasons for each of its actions (pp. 16-17

12  of Def's motion) yet defendant's brief did not even address the agency's violation of

13  regulations regarding temporary assignments.          Such agency violations of regulation

14  clearly deter one from engaging in protected activity.   Even if there were a requirement

15  that the challenged action affect the terms or conditions of employment, retaliatory acts

16  that create a hostile work environment would meet the standard as well, since as the

17  Supreme Court has made clear, the terms and conditions of employment include the

18  intangible work environment.   *Meritor Savings Bank v. Vinson* 477 U.S. 57, 64-67

19

20  (1986).   Threats of termination by her supervisor when Lee complained of not being

21  allowed to return from to her secretary job from the Supervisor job, clearly qualifies for

22  sufficient action to constitute retaliation.  If an employee is subjected to threats of

23  termination for merely asking that the regulations be obeyed and that she be returned to

24  her previous chosen job assignment since no legal cause existed to keep her in the

25

26  PLAINTIFF 'S MEMORANDUM OF P.& A.

27   IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

28                                            24

1    temporary position, then such actions deter one from engaging in protected activity.

2    See *DeAngelis v. El Paso Municipal Police Officers Ass'n* 51 F. 3d 591 (5th Cir.), cert.

3    denied, 116 S. Ct. 473 (1995); *Davis v. Tri-State Mack Distributor,* 981 F.2d 340 (8th

4    Cir., 1992).    Very little action on the part of the employer is needed to demonstrate

5    retaliation.  For example see *McKnight v. General Motors Corp.,* 908 F. 2d 104, 111 (7th

6    Cir., 1990) ["retaliation or a threat of retaliation is a common method of deterrence"],

7    cert. Denied 499 U.S. 919 (1991); *Garcia v. Lawn,* 805 F. 2d 1400, 1401-02 (9th Cir.,

8    1986) (threatened transfer to undesirable location); *Atkinson v. Oliver T. Carr Co.* 40

9    FEP Cases (BNA) 1041, 1043-44 (D.D.C. 1986) (threat to press criminal complaint).

10

11    In  *Hashimoto v. Dalton* 118 F 3d 671, 680 (9th Cir., 1997) a retaliatory job

12    reference violated Title VII, even though it caused no harm and did not prevent the

13    employee from being hired, and in *Berry v. Stevinson Chevrolet,* 74 F. 3d 980, 986 (10th

14    Cir. 1996) (instituting theft and forgery charges against former employee found

15    retaliatory), and *Passer,* at 935 F. 2d, at 331 found that merely cancelling symposium in

16    honor of retired employee who filed ADEA charge was found to be retaliatory.   In Lee's

17    case she was threatened with termination after she complained of being held out of her

18    assigned position in violation of the regulations.

19

20    Adverse employment action includes "demotions, **disadvantageous transfers** or

21    assignments, refusals to promote, unwarranted negative job evaluations and toleration of

22    harassment by other employees." (Wyatt v. City of Boston, 35 F.3d, 15-16).  In this case, Lee was

23    in a secretary position, but was removed and transferred to another position against her will. [The

24    Secretary position she had held was being upgraded to a higher level with increased pay.] If

25    Complainant had not been temporarily reassigned and transferred against her will and in violation

26

27    PLAINTIFF 'S MEMORANDUM OF P.& A.
       IN OPPOSITION TO DEFENDANT'S

28    MOTION FOR SUMMARY JUDGMENT

25

1  of agency regulations governing temporary assignments to the Supervisor position, she would

2  have been eligible for promotion and a pay increase.  Despite the fact that Complainant was in a

3  supervisor position, she did not receive any promotion and the pay was no more than her

4  Secretary position.

5      An employer can be liable for retaliation if it permits "actions like moving the

6  person from a spacious, brightly lit office to a dingy closet, depriving the person of previously

7  available support services....)("[t]here is nothing in the law of retaliation that restricts the

8  type of retaliatory act that might be visited upon an employee who seeks to invoke her

9  rights by filing a complaint"); (Knox v. Indiana, 93 F.3d 1327, 1334). [Chief Atkins moved

10 Complainant to an office away from managers so conversations could not be overheard and

11 refused to return her to her previous position but kept her in the Supervisor position in violation

12 of regulations which prohibited Lee remaining in that position for more than six months.  Atkins

13 kept her in that position in clear violation of the regulations and without showing any cause why

14 someone should fill such a position on a temporary basis.

15     III. CONCLUSION:  PLAINTIFF  HAS CLEARLY SHOWN A PRIMA FACIE CASE

16 OF RETALIATION FOR ENGAGING IN A PROTECTED ACTIVITY OF COMPLAINING
   OF RACE DISCRIMINATION TO EEO OFFICIALS IN A PETITION AND IN A MEETING

17 WHICH RESULTED IN ADVERSE ACTIONS WHICH ARE RECOGNIZED AS SUCH
   UNDER EEOC GUIDELINES, THE NINTH CIRCUIT AND THE UNITED STATES

18 SUPREME COURT.
       Plaintiff Lee herein has presented ample evidence to show that she was placed in a role in

19
   a department which had been slated for elimination in an effort to remove Plaintiff from the

20
   USPIS and that she has been retaliated against for her complaints of discrimination against the

21
   United States Postal Inspection Service [USPIS] and the conduct of the agency has resulted

22
   in actual harm to the complainant.     LAW OFFICES OF DANIEL RAY BACON

23 August 26,  2008

24
                                DANIEL RAY BACON
25                              ATTORNEY FOR PLAINTIFF

26

27 PLAINTIFF 'S MEMORANDUM OF P.& A.
   IN OPPOSITION TO DEFENDANT'S

28 MOTION FOR SUMMARY JUDGMENT
                                26