wishes and which negatively impacted me. I addressed the retaliation in detail in the EEO filed on 10/20/03. This is the second time I have been punitively transferred after coming forward with complaints, the first time being in 1998 and for which I also filed an EEO (HI-0036-99)

The retaliation and harassment is continuing. On September 11, 2003, I was interviewed by Internal Affairs Divisions (IAD) inspectors for an alleged threat I made against Linda Ng, ECA Support Clerk, on August 21, 2003. The alleged threat was reported by Ng to Regina King, Acting Team Leader, who took no action due to it being a non-credible threat. Sally Diaz, Team Leader of the San Francisco Threat and Assault Team, was informed of what occurred when she returned to work and she also took no action due to it being a non-credible threat. Greg Campbell, Acting AIC, became aware of the alleged threat and contacted local management and IAD became involved.

On September 11, 2003 I was interviewed by Inspectors from the Internal Affairs Division. On October 14, 2003, I called the EEO 1-800 telephone number and requested the paperwork to file an EEO. On November 3, 2003 I received the paperwork from the EEOC to file my complaint. On November 4, 2003 I mailed my EEO.

## B: Discrimination Factors

Retaliation (prior EEOS and whistleblower retaliation), Gender (female)

## Past EEOs:

| | |
|---|---|
| 04/02/98 | No complaint filed |
| 08/11/98 | HI-0076-98 |
| 12/22/98 | HI-0028-98 |
| 01/04/99 | HI-0036-99 |
| 02/16/99 | HI-0056-99 |
| 06/19/99 | HI-0080-99 |
| 10/03/00 | HI-0012-01 |
| 12/26/00 | HI-0047-01 |
| 05/15/01 | HO-0084-01 |
| 07/29/02 | HI-0075-02 |
| 10/20/03 | 66-000-0055-03 |

## C: Description of Incident/Action

In February 2003 I began correspondence with Jim Birch, Ombudsman for the Postal Inspection Service, regarding problems within the San Francisco Division of the Postal Inspection Service. I subsequently helped organized a petition (which was to be confidential) that was sent to him containing 49 employee signatures who had concerns with problems in the Division along with a survey to be sent to employees about their concerns. I subsequently sent Inspector Birch a letter with 31 exhibits on March 4, 2003, citing examples of concerns in the petition and to give credibility to items addressed in the petition. The petition and correspondence to Inspector Birch resulted in the removal of the top three managers from their positions (Alan Kiel, INC, Juliana Nedd, AIC and Greg Gamache, AIC) in 2003.

Prior to the INC (Alan Kiel) leaving the Division (via retirement) he told people in the Division that he knew Judy McDermott was the number one signer on the petition and Quan Howard was

the number two signer on the petition. In June 2003, approx. a month after Kiel was making these comments; both Quan Howard and I were reassigned against our wishes, effective July 1, 2003. I was reassigned from my position on the Internal Crimes (IC) team in Richmond CA to the External Crimes Assault (ECA) team in San Francisco, which negatively impacts me: this team is the furthest possible distance from my residence in Suisun City, CA increasing my commute by an extra two hours per day, significantly changes my work hours, the ECA team is historically reserved as a training team for new inspectors or those in trouble. Several people have made jokes to me about my being on the ECA team, as it is known as an inconsequential team. Additionally, I was assigned to a territory that has almost twice the number of complaints as others on the team. One team member (a new inspector) was allowed to relocate her office from San Francisco to Oakland, while I had to relocate from Richmond to San Francisco. My work hours have increased significantly in being required to respond to ECA complaints, going from 2.8 hours average in June while on the IC team, to 6.4 hours in July while on the ECA team. **Additionally, everyone knows I was reassigned against my wishes in retaliation for ramifications from the petition and the removal of the three managers from their positions. I filed an EEO on this matter on 10/20/03 (#66-000-0055-03).**

After the three managers were removed from their positions in 2003, Acting managers were brought in to the Division, including James Donnelly and John Wisnewski. It appeared their behavior was no different than the three managers that were removed, and the issues outlined in the petition were not being addressed. In order to get someone to address the issues outlined in the petition sent to Ombudsman Jim Birch, I sent a letter (and 92 Exhibits) dated 8/4/03 to David Fineman, Chairman of the Postal Board of Governors, and Dianne Feinstein, Senator, outlining the Fraud, Waste, Abuse, and Mismanagement. Donnelly and Wisniewski were named in this letter as falsifying records. I also named Gregg Campbell, Acting AIC, in this letter, who used his position as a team leader to solicit funds from Division employees for his church. I specifically asked that my letter and exhibits not be released the Postal Inspection Service due to known acts of retaliation, nor to the Inspector General, due to their incompetence. I asked that someone from the Department of Justice investigate the allegations in the petition. David Fineman released the letter and exhibits to the USPIS, even though it was specifically requested that he not do that due to known acts of retaliation.

I received a letter dated 8/12/03 from Lawrence Katz, Counsel/Inspector in Charge, stating that Fineman had released my letter and exhibits to him to investigate (**Exhibit 1**). I am positive he discussed my letter and its ramifications with Chief Inspector Heath as it was released right when the Postal IG, Karla Corcoran, was asked to step down from her position. I sent Katz an e-mail stating he should never have received the letter (**Exhibit 2**) and on August 16, 2003, I sent a letter to David Fineman, regarding his irresponsible release of confidential and sensitive documents to the very agency that it addressed (**Exhibit 3**). As a result of Fineman's release of this confidential and sensitive information, I knew it was only a matter of time before retaliation against me continued. I did not have long to wait.

I was out of the office on training and vacation from August 25 through September 8, 2003. On September 9, 2003, I returned to work. On that day, Linda Ng came into my office to speak with me. I recall Regina King also being in my office when Ng came into my office. Later that afternoon, Sally Diaz, Team Leader, had a team meeting that lasted over an hour, and again Linda Ng was in this meeting with me. During this meeting, Diaz said she would be gone for a few days, but could not say why. It turns out that both Diaz and Ng were out of the office the next two days so they could not speak to me in reference to the upcoming IAD investigation.

The following day, on September 10, 2003, the new INC, Bill Atkins, gave a speech to our Division employees and introduced his acting AIC, Robert Bethel. During his meeting Atkins stated he knew there were problems in the Division and he stated that retaliation was a thing of the past. He also stated EEOs in this Division were the highest in the nation, and went on to repeatedly mention EEOs. Several people came up to me afterwards and mentioned Atkins' repetition of discussing EEOS and the inappropriateness of him discussing EEOs in this manner. **Exhibit 4** is a Memorandum of Interview of Atkins. Several hours after Atkins gave his speech, Robert Bethel, came to my office and said he wanted to speak to me. He escorted me to Atkins' office. When I got to Atkins office, one of the first things Atkins said was , "there have been some problems in the Division and I'm not sure why, but your name has been put out there." Bethel immediately interrupted Atkins and said a support person said I threatened them. I believe Bethel interrupted Atkins because Atkins' statement to me implied I was there for other reasons, and that I was being investigated due to my participation in the petition and the release of my letter to Fineman, not the alleged threat. I was told by Bethel that I was being investigated by Internal Affairs for a threat I made against a support person. They would not tell me what the threat was that I allegedly made or who made the complaint. They told me that IAD would be interviewing me the following day between 10 and 12 in the morning, and said that I would have to turn in my service weapon. At the end of this meeting with Atkins and Bethel, I looked at Atkins and stated, "I find it interesting that the three managers are gone and you receive my letter and now this is happening." Neither commented on my comment. **Exhibit 5** is a Memorandum of Interview of my meeting with Atkins and Bethel on September 10, 2003. As I walked back to my office, Acting AIC Campbell, walked by me in the hall without acknowledging me.

The following day, on September 11, 2003, I drove my personal car to work, because I was sure that management would attempt to fire me and I did not want to be stranded in San Francisco with the government car. When I got to work I placed all my accountable items in a pile and packed my personal items from my office in a box. I gave my service revolver to Regina King, Acting Team Leader, as requested. I was required to wait several hours past the time I was told IAD would be interviewing me. At approx 12:45 I was interviewed by IAD inspectors Brian Vranizan and Beverly Canova. Vranizan stated Linda Ng complained that I said to her that I could punch her in the face. I explained to the IAD inspectors, that I had made that comment, but that I had also said to Ng, "Don't take it personal, you're just the only one here." I explained that it was said as a joke and that both Ng and I laughed. The first thing Inspector Vranizan said was that Ng did not feel threatened by my comment and he said Ng told them that I laughed after making the comment. Vranizan said Ng was upset that it had gotten this far and Ng repeatedly asked them during their interview of her, "When can I talk to Judy?" I asked him how it got to this point with IAD being involved if Ng did not feel threatened, and he said that once it got past Sally Diaz, they had to investigate. **This meant that someone at a higher level than Diaz reported the incident: Greg Campbell, Acting AIC, John Wisnewski, Acting INC, and James Donnelly, Acting AIC.** I asked Vranizan if their standard operating procedure was to conduct an investigation when the alleged victim did not even feel threatened. Canova replied that Ng was adamant that she was threatened initially, but was now backing down and they thought she was being intimidated from coming forward. From Canova's demeanor, I felt she was not being truthful, but I did not comment. I later learned from Ng that IAD inspectors did not contact her prior to her interview in San Francisco in order to determine the credibility of the alleged threat – something that would normally be done. Vranizan also stated that everyone interviewed felt the incident was blown out of proportion. Vranizan and Canova did not ask if they could tape record my interview, nor did they ask me to provide a written sworn statement, both of which are standard procedures in legitimate investigations of this type. Vranizan told me that a report would be sent to INC Atkins and it would be up to him to determine whether any

action would be taken against me.  **Exhibit 6** is a Memorandum of Interview of my IAD interview on 9/11/03.

On September 12, 2003, I called in sick.  When I returned to work on September 15, 2003, I had an e-mail from Linda Ng dated 9/12/03, titled **SHOCK,** saying that she was sorry for what happened and that it got out of hand **(Exhibit 7).**  I sent Ng an e-mail asking her if she wanted to talk and she said she did.  She came to my office and was very apologetic about what happened. The first thing I asked Ng was whether she felt I was threatening her and she said "no."  She said she felt so bad about what happened and she did not know how it got out of hand.  She said she felt so bad that she sent INC Atkins an e-mail that morning and asked him how she could take back what happened and then she went to talk to him.  She said Atkins was understanding, but stated he expected better behavior from his inspectors.  I explained to Ng that I felt someone had used her to get at me and that management was angry with me for something I had done and they saw this as an opportunity to go after me.  I asked Ng who she went to about the comment I made to her and she said Regina King and Jessie Dinghi.  Dinghi is close friends with Greg Campbell, who was the one who went to management.  Campbell was previously rumored to be the top candidate for the AIC position in the Division until my letter was released outlining how he used his position to solicit money from employees in the Division.  On September 10, 2003 during Atkins's speech to the Division employees Atkins said they would not be promoting anyone from within the Division.  This occurred after Atkins received a copy of my letter sent to David Fineman which included an exhibit regarding Campbell's lack of integrity.  I am sure Campbell was angry that he was not going to be promoted, as on 9/10/03 after Atkins and Bethel told me I was being investigated, I walked back to my office and passed Campbell in the hall and he ignored me as he walked past me.  I knew by his attitude that he was involved.  **Exhibit 8** is a Memorandum of Interview of Linda Ng.

On September 15, 2003, after I spoke with Ng, Sally Diaz came to my office to ask if I felt I could still work on the team.  I told her I was incredibly upset by what occurred.  Diaz stated she wanted to talk to me about what happened, but she said that she was instructed not to speak to me about what occurred or her interview.  If the interview of me by IAD was legitimate, and legitimate questions were asked of Diaz, there would be no reason not to allow her to speak to me about what occurred and what IAD had discussed with her.  However, I believe her interview dealt with issues other than the alleged threat with Ng (ie: the letter dated 8/4/03 or issues addressed in that letter), therefore, she was instructed not to talk to me.  **She should be asked, in depth, what was discussed with her during her interview with IAD, to determine the real motive behind the IAD investigating me.  Other witnesses should also be questioned in depth.**  Additionally, some of the witness interviews by IAD were several hours long, which would also indicate there was more to what was occurring than an alleged threat I made against Ng.

Since being notified of the IAD investigation I have suffered high levels of stress, anxiety, headaches, and sleeplessness, as a result of being investigated for a trumped-up charge, which never should have been investigated.  The IAD investigation was initiated to retaliate and harass me for my participation in the removal of the three managers from their positions and the letter I sent to David Fineman and Dianne Feinstein, and to deter me from coming forward in the future. Additionally, others in the Division know I was interviewed, as the interview was at SF Division headquarters, and they now know what happens to people that come forward and complain.  It is humiliating and degrading.  Additionally, I now have an "H" case on my record which will have to be disclosed in any case where I am required to testify.  This IAD investigation negatively affects my reputation and  credibility regardless of the outcome, as well as deters others from coming forward.  I believe this is just more retaliation as a result of the petition and the

subsequent release of the letter and exhibits I sent to the BOG which also negatively named Acting AICs Wisniewski, Donnelly and Campbell, and questioned their integrity. Additionally, Atkins could have stopped the investigation from happening once he reported to the San Francisco Division, but he did not.

Additionally, letters were sent to management, outlining the issues in this Division, however, people did not sign the letters due to known acts of retaliation. I believe several letters were sent to Wisnewski, Donnelly, and Atkins, who in turn contacted numerous individuals in the Division in an effort to determine the author of the letters. I find this behavior outrageous given the fact that the conditions in this Division were so bad that all three managers were removed, a move that is unprecedented. This is just further harassment and intimidation in an effort to force people to keep their mouths shut and is retaliatory for coming forward with legitimate complaints – an on-going practice in this Division. If people felt comfortable with the integrity of management they would feel free to openly come forward, but they do not. That is why some individuals feel a need to send letters without their names. This is also the reason an independent party needs to address the issues in this Division, something that has not been done to date.

## D.     COMPARISONS

Retaliation – prior EEOs and whistleblower retaliation
Disparity – James Donnelly, Acting AIC, (white male) was not investigated by IAD for telling at least one employee he was going to "shove a boot up his ass." He should be questioned about this comment, who was present when he made the comment, whether he was investigated by anyone for his threat against this employee and why IAD was not contacted for this matter. He should also be asked who else he made the same type of comments to while he was the acting AIC.

## E.     OFFICIALS

Lee Heath, Chief Postal Inspector
Lawrence Katz, Chief Legal Counsel
Alan Kiel, INC
John Wisniewski, Acting INC & Acting AIC
James Donnelly, Acting AIC
Greg Campbell, Acting AIC
Bill Atkins, INC
Robert Bethel, Acting AIC

## F.    RESOLUTION

- Any mention of this investigation, or "H" case entirely removed from my record, with no mention of it anywhere.

-Transferred back to the IC Richmond team domiciled in Richmond until my retirement.

-Not supervised by anyone named in my EEO or past EEOs.

-Reimbursement for all annual and sick leave used as a result of this incident.

-Reimbursement for all my time spent on this EEO.

-A public apology posted on all Division domicile bulletin boards for 60 days.

-EEO training for all Division managers.

-Attorney fees.

-Compensatory damages for physical, emotional and psychological suffering and damage to my reputation, in the amount of $300,000.00.


Sincerely,

Judy McDermott
Postal Inspector
366 Hibiscus Lane
Suisun City CA 94585
Home 707/428-6513
Work 415/778-5248
October 4, 2003


Exhibits

1.    Copy of letter from Lawrence Katz dated 8/12/03.
2.    Copy of e-mail dated 8/18/03 that I sent to Katz stating he should never have received the letter from Fineman.
3.    Copy of letter dated August 16, 2003 that I sent a letter to David Fineman, regarding his release of confidential and sensitive documents.
4.    Memorandum of Interview of Atkins dated 9/10/03.
5.    Memorandum of Interview of Atkins and Bethel dated 9/10/03.
6.    Memorandum of Interview of my IAD interview dated 9/11/03.
7.    E-mail from Linda Ng dated 9/12/03.
8.    Memorandum of interview of Linda Ng.

# EXHIBIT 14

washingtonpost.com

# Postal Service IG Quits As Inquiry Concludes
Report Finds Pattern of Abuse and Waste

By Christopher Lee
Washington Post Staff Writer
Wednesday, August 20, 2003; Page A19

Karla W. Corcoran, the U.S. Postal Service inspector general, retired yesterday after a federal investigation found that she abused her authority, wasted public money and promoted questionable personnel practices.

The Postal Service's Board of Governors announced that David C. Williams, a former IG at four different agencies, would immediately take over as only the second inspector general in the history of the agency.

The investigation by the President's Council on Integrity and Efficiency found that Corcoran "followed a pattern and practice of unprofessional conduct in the management of the USPS OIG, used questionable judgment in areas within her discretion, extravagantly expended USPS funds, and engaged in personnel practices which were either questionable or not in accord with USPS policy," wrote Grant D. Ashley, chairman of the council's integrity committee.

The committee recommended that "the most severe administrative sanctions available be taken against Ms. Corcoran," Ashley wrote in a July 28 report cover letter to Clay Johnson III, council chairman and deputy director for management at the Office of Management and Budget. The council promotes professionalism among IGs and in U.S. agencies.

In a telephone interview yesterday, Corcoran used an expletive to characterize the findings of the council's 274-page report and said she had been made a scapegoat.

"They did not employ people that were familiar with postal operations," Corcoran said of investigators. "It's as much of an attack on the Postal Service itself as it is on me. They don't like a lot of postal practices, and so I became the catalyst."

Corcoran, who earned $142,500 a year, became the Postal Service's first IG after Congress created the office in 1996 to combat the perception that the chief postal inspector could not be objective. Corcoran's job was to root out waste and fraud at the Postal Service, which has 750,000 employees and a $65 billion budget. She said she identified $2.2 billion in potential and actual savings during her tenure. But critics, including a group of 55 current and former employees, complained of what they described as her overbearing, "values-oriented" management style, reckless spending and unfair personnel decisions.



Investigators found that Corcoran had spent more than $1 million for each of the agency's three most recent annual recognition conferences, events in which all 750 employees of the IG's office gathered at D.C. hotels for team-building drills, training and awards ceremonies. Investigators said she humiliated employees by yelling at them in public; promoted some without relevant experience; and left threatening messages with former staffers to try to hinder the probe.

The Postal Service said in a written statement that Corcoran departs "with the thanks of the governors for her service."

Senate Finance Committee Chairman Charles E. Grassley (R-Iowa) said an IG must be "above reproach," and that Corcoran was not.

"The U.S. Postal Service . . . touches the lives of nearly each American every day," said Grassley, whose own probe of Corcoran's tenure produced similar findings. "Someone must be making sure that taxpayers' money is invested wisely."

*Staff researcher Lucy Shackelford contributed to this article.*

© 2003 The Washington Post Company

EXHIBIT 15

**UNITED STATES POSTAL SERVICE** ®

## EEO Complaint of Discrimination in the Postal Service
*(See Instructions and Privacy Act Statement on Reverse)*

| 1. Name Judy A. McDermott | 2. SSN 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 | 3. Case No. 66-000-0055-03 |
|---|---|---|

| 4a. Mailing Address *(Street or P.O. Box)* 366 Hibiscus | 4b. City, State and ZIP + 4 Suisun CA 94585 |
|---|---|

| 5. Email Address * | 6. Home Phone (707) 428-0513 | 7. Work Phone (510) 526-9708 |
|---|---|---|

| 8. Position Title *(USPS Employees Only)* POSTAL INSPECTOR | 9. Grade Level *(USPS Employees Only)* ISLE 13 | 10. Do You Have Veteran's Preference Eligibility? ☐ Yes ☒ No |
|---|---|---|

| 11. Installation Where You Believe Discrimination Occurred *(Identify Installation, City, State, and ZIP+4)* EPC 390 Main Street, 3rd Fl. SAN FRANCISCO CA 94188 | 12. Name & Title of Person(s) Who Took the Action(s) You Allege Was Discriminatory ALAN Kiel, INC John Wisniewski, AIC James Donnelly, AIC (See Attached) |
|---|---|

| 13a. Name of Your Designated Representative N/A | 13b. Title |
|---|---|

| 13c. Mailing Address *(Street or P.O. Box)* | 13d. City, State and ZIP + 4 |
|---|---|

| 13e. Email Address * | 13f. Home Phone ( ) | 13g. Work Phone ( ) |
|---|---|---|

* Providing this information will authorize the Postal Service to send important documents electronically.

| 14. Type of Discrimination You Are Alleging | 15. Date on Which Alleged Act(s) of Discrimination Took Place |
|---|---|
| ☐ Race *(Specify)*    ☒ Sex *(Specify)* Female 45 <br> ☐ Color *(Specify)*    ☒ Age (40+) *(Specify)* 45 <br> ☐ Religion *(Specify)*    ☒ Retaliation *(Specify Prior EEO Activity)* <br> ☐ National Origin *(Specify)*    ☐ Disability *(Specify)* | 6/26/03 |

16. Explain the specific action(s) or situation(s) that resulted in you alleging that you believe you were discriminated against (treated differently than other employees or applicants) because of your race, color, religion, sex, age (40+), national origin, or disability. *Note that if your allegation is like or related to a previous complaint, that complaint may be amended. 29 C.F.R. § 1614.106(d)*

See Attached
9 Pages
Exhibits # 1-88

17. What Remedy Are You Seeking to Resolve this Complaint?

See Attached

18. Did You Discuss Your Complaint with a *Dispute Resolution Specialist* or a *REDRESS* Mediator?
☒ Yes (Date you received the Notice of Final Interview): _____  ☐ No

| 19a. Signature of Dispute Resolution Specialist *Carole A. Redman* | 19b. Date 10/2/03 |
|---|---|
| 20. Signature of Complainant or Complainant's Attorney *Judy A. McDermott* | 21. Date of this Complaint 10/20/03 |

PS Form 2565, March 2001 *(Page 1 of 2)*

**October 20, 2003**

**#12:**
Lee Heath, Chief Postal Inspector
Lawrence Katz, Chief Legal Counsel
Alan Kiel, INC
Juliana Nedd, AIC
John Wisniewski, Acting AIC
James Donnelly, Acting AIC
Anita Beppu, Team Leader

On June 26, 2003, I was notified I was being transferred from the Internal Crimes (IC) Richmond Team to the External Crimes Assault (ECA) team in San Francisco. On August 5, 2003, I called the EEO 1-800 telephone number and requested the paperwork to file an EEO. On August 15, 2003, I received the paperwork from the EEOC to file my complaint. On 8/22/03 I mailed my pre –EEO complaint. On October 14, 2003, I received the letter from the EEOC containing the paperwork to complete my final EEO. On October 20, 2003 I mailed my final EEO complaint.

I was reassigned from the IC team at the Richmond domicile to the ECA team at the San Francisco Domicile beginning July 1, 2003 until ???????October 1, 2003. On ??????I was told by Sally Diaz, my new team leader, that I was being reassigned back to the Richmond Domicile, still on the ECA team.

## #14: Discrimination Factors
Retaliation (prior EEOs and whistleblower retaliation), Age (45), Gender (female)

## Past EEOs:
| | |
|---|---|
| 04/02/98 | No complaint filed |
| 08/11/98 | HI-0076-98 |
| 12/22/98 | HI-0028-98 |
| 01/04/99 | HI-0036-99 |
| 02/16/99 | HI-0056-99 |
| 06/19/99 | HI-0080-99 |
| 10/03/00 | HI-0012-01 |
| 12/26/00 | HI-0047-01 |
| 05/15/01 | HO-0084-01 |
| 07/29/02 | HI-0075-02 |

## #16: Description of Incident/Action

In February 2003 I began correspondence with Jim Birch, Ombudsman for the Postal Inspection Service, regarding problems within the San Francisco Division of the Postal Inspection Service. I subsequently organized a petition (which was to be confidential) that was sent to Birch containing 49 employee signatures who had concerns with problems in the Division, including a survey to be sent to employees about their concerns (**Exhibits 1-2**). I subsequently sent Birch a letter with 31 exhibits on March 4, 2003, citing examples of concerns addressed in the petition and to give

credibility to items addressed in the petition. (**This letter and exhibits is not being included in this EEO due to the highly confidential and sensitive nature of information included**).

The petition and subsequent correspondence to Birch resulted in the removal of the top three managers from their positions (Alan Kiel, INC, Juliana Nedd, AIC and Greg Gamache, AIC).

Prior to the INC (Alan Kiel) leaving (via retirement) he told people in the Division that he knew Judy McDermott was the number one signer on the petition and Quan Howard was the number two signer on the petition. In June 2003, approx. a month after Kiel was making these comments, both Quan Howard and I were reassigned against our wishes. I was reassigned from my position on the Internal Crimes (IC) team in Richmond, CA to the External Crimes Assault (ECA) team in San Francisco, which negatively impacts me: this team is the furthest possible distance from my residence in Suisun City, CA increasing my commute by minimally an **extra** two hours per day, significantly changes my work hours, the ECA team is historically reserved as a training team for new inspectors or those in trouble. Several people have made jokes to me about my being reassigned to the ECA team as it is known as an insignificant team. Additionally, I was assigned to the San Francisco territory which has almost twice the number of complaints as others on the team. One team member Jessie Dinghi (a new inspector) was allowed to relocate her office from San Francisco to Oakland, while I had to relocate from Richmond to San Francisco. My work hours have increased significantly in being required to respond to ECA complaints going from 2.8 hours average in June while on the IC team, to 6.4 hours in July while on the ECA team (**Exhibits 3-4**). **Additionally, everyone in the Division knows I was reassigned against my wishes in retaliation for ramifications from the petition and the removal of the three managers. This is just one more example of the perpetuation of the hostile work environment in this Division.**

The reason I was given for being reassigned to the ECA team was an e-mail I sent to my team leader Anita Beppu and AIC Jim Donnelly in May 2003. In this e-mail I asked again for assistance at the Richmond domicile and stated if no assistance was forthcoming to reassign me to a team with support help. Neither Beppu nor Donnelly acknowledged this e-mail I sent to them or contacted me regarding my concerns. I had previously requested assistance on numerous occasions in the past from Beppu, but none was forthcoming. I was also assigned the Sacramento Internal Crimes territory approx. two years earlier in addition to my own territory for which I repeatedly asked for assistance from Beppu, to no avail. **Exhibits 5-6** show the territory prior to and after I was reassigned the Sacramento territory and shows the disproportionate increase in territory (and workload and misc. complaints) that I received.

The support help at the BMC has been there for at least ten years (Liz Karp), and was taken away a month after I filed an EEO against Juliana Nedd, AIC, on 7/29/02 (see EEO #HI-0075-02 on file with the EEOC). There is no other domicile in our Division without support help. I believe the support help (Liz Karp) was taken from my domicile in retaliation for filing the EEO naming Nedd on 7/29/02 and prior EEOs, and was done in an effort to make me fail at my job, a pattern management has used with other Inspectors filing numerous EEOs (Keith Silva domiciled in Hawaii). Silva is also having current problems with his team leader (Kat Derwey) that management is not addressing, stemming from retaliation for past EEOs. Those filing EEOs are retaliated against with no intervention from management. This is also an example of decisions based on personal agendas outlined in the petition to Birch. Liz Karp was never given any reason for her reassignment from the Richmond domicile, and the work product from inspectors at the BMC during FY 2002 would lend credibility to the belief that support help was needed at that domicile. Additionally, management eventually took away all the inspectors domiciled at Richmond (except for myself), so I had no one to work with (Alan Anderson and Paul

Wilhelmus). Alan Anderson was subsequently returned to the Richmond domicile sometime after the beginning of 2003. The result of the added workload I incurred from the Sacramento territory and performing functions previously done by the Karp, resulted in my going from being the number one producer of stats in 2002 on the IC team to the lowest producer of stats on the team in 2003. Again, I believe this was done on purpose by INC Kiel and AIC Nedd in an attempt to get me to fail at my job.

Below (*in italics*) is a portion of a letter (which included 92 Exhibits) dated August 4, 2003, which I sent to David Fineman, Chairman of the Postal Board of Governors (BOG), and Senator Dianne Feinstein, regarding my concerns at the behavior that was occurring in the San Francisco Division of the Postal Inspection Service that had not yet been addressed, and the fact that I believed I was being reassigned to the ECA team in San Francisco as a result of whistle blowing retaliation for my participation with the petition to Birch and the removal of the three managers:

## *Retaliation for Whistle Blowing on Fraud, Waste, Abuse, and Mismanagement in the San Francisco Division of the Postal Inspection Service*

*After the petition was sent to Inspector Birch, it was learned that INC Kiel approached Marilyn Lee on at least two different occasions stating that he knew she signed the petition that went to Inspector Birch and he wanted to know why. Marilyn Lee immediately contacted Inspector Birch, and told her she was concerned that INC Kiel's contacted her about this confidential matter. Neither Inspector Birch nor the Acting AICs intervened on her behalf. Inspector Birch responded in an email that INC Kiel had done nothing wrong (see Exhibit 23). It was only after it was pointed out to Inspector Birch in emails to him that INC Kiel's behavior was unethical, and that someone outside the Agency would agree (see Exhibit 24), that INC Kiel announced his retirement on June 30, 2003 (see Exhibits 26 & 27). It is unknown how INC Kiel learned Marilyn Lee's name was on the petition or who else he approached in this manner. Inspector Birch was asked to follow up with this to determine who else INC Kiel approached, but he felt it was unnecessary.*

*At this same time, INC Kiel allegedly approached a team leader in this Division* **(Sally Diaz)** *and told the team leader that he knew Judy McDermott and Quan Howard were the number one and number two signators on the petition.* **Diaz later told Howard about her conversation with Kiel.** *Shortly after INC Kiel made these comments, on June 26, 2003, I was notified that I was being transferred from the Internal Crimes team in Richmond to the External Crimes Assault (ECA) Team in San Francisco, against my wishes. Quan Howard was also reassigned from his position on the ECA team as the San Francisco Division recruiter to the ECA team in San Jose investigating assaults, against his wishes. The ECA team is usually reserved for new inspectors (I have 17+ years as an Inspector), and previously had three new inspectors assigned to the team. This transfer increases my commute by an extra two hours a day, changes my work hours significantly, requires me to now be on response 24-7, requires me to drive a work car to and from my residence, and is known to be one of the least significant teams in the Division. Until recently there were six people on the team, three of whom are new inspectors (Dinghy, McAlhaney, Heath) (Exhibit 42), one inspector who was transferred to the team by Nedd to punish him by increasing his commute by 2-3 hours per day by making him drive from San Jose to San Francisco (Quan Howard), a black female transferred to the team by Nedd for upward promotibility (Regina King) and one inspector who is allegedly on a "performance improvement" plan (Pete Colon).*

*I was notified of my transfer on June 26, 2003, via a telephone call from Anita Beppu, my IC team leader. Inspector Beppu was defensive when I asked why I was being transferred and said I was not the only one being transferred off the team, but that Mike Ramos was also being transferred to EC San Francisco (he wanted to be transferred to the EC team). When I asked her why I was chosen she could not answer me. When I repeated my question to her she eventually stuttered and said it might have something to do with an email I sent on May 7, 2003 (Exhibit 43). Exhibit 44 is a Memorandum of Interview of Inspector Beppu. On June 27, 2003, I received a phone call from Sally Diaz, my new ECA team leader. She welcomed me to the team and wanted to know how I felt about it. I explained that I was upset and told her why. I told her I felt it was retaliation for whistle blowing on the three managers and that they were saying I was being moved because of an email I sent asking for help at the BMC. She was already aware of the history of my not receiving help at the BMC. She told me she had not asked for me, but said Inspector Donnelly was initially going to give her Inspector Victoria Fussell. She said she told Inspector Donnelly that she did not want Inspector Fussell and he said what about Judy McDermott, to which she agreed (I later found out that after Inspector Diaz was offered Fussell, she had been asked if she would take Inspector Paul Lowery to which she said no). I am not aware of Inspectors Fussell and Lowery ever receiving a "far exceeds" year-end merit, yet their names initially were mentioned when trying to staff this team. I have received a "far-exceeds" merit on almost every assignment I have worked in my career, in addition to having the number one IC stats in FY02. Inspector Diaz stated I was being assigned to the San Francisco territory, which has significantly more threats and assaults than any other territory on the team (Exhibit 45) requiring a higher number of responses on my part. This transfer to ECA is highly punitive to me. The new commute increases my commute by an additional two hours per day, as well as changing my work hours significantly. Additionally, I have had several people make jokes to me that I am on the ECA team – because it is known as being a team reserved for new inspectors or those in trouble. Additionally, Inspector Dingui relocated her office from San Francisco to Oakland, after it was announced I would be coming to the ECA team, while I relocated my office from Richmond to San Francisco. Exhibit 46 is a Memorandum of Interview of Inspector Diaz.*

*On June 30, 2003, I met with Acting AIC Donnelly to discuss my transfer to the ECA team (Exhibit 47). I asked him why I was being transferred, why I was being transferred to the ECA team, and who had input into the decision. He stated who had input was not relevant. He said the reason I was transferred was the email I sent on May 7, 2003, which he handed to me and which he had highlighted with a yellow marker (see Exhibit 43). I then asked why I was chosen for the ECA team and he said they talked to team leaders and found a team where I was needed and that had openings. When asked who had input into the decision to transfer me he stated "Juliana Nedd and Greg Gamache had no input." When I asked about Alan Kiel, he hesitantly said, "well, we had to go to him with our decision."*

*I attempted to explain to Inspector Donnelly that the reason I sent the email was due to frustration at the lack of support I had been receiving on the team, and that the support clerk and Inspectors had all been taken from that Richmond BMC domicile during the past year and I was left to do everything myself. Inspector Donnelly kept referring to my email stating they were trying to accommodate my request. He stated no support help at the BMC was forthcoming. I pointed out that neither he nor the team leader had even acknowledged the email I sent, nor had they picked up the phone to discuss it with me. I told him there was history in this Division about why the support was taken away from the BMC (retaliation by Nedd and Kiel). He appeared to already have his position firmly in hand and did not want to listen to what I had to say. I told him this transfer negatively impacted me and that I knew Alan Kiel was telling people that I was the number one signer on the petition and then I am transferred. I told him I believed the transfer was retaliation for whistle blowing on the three managers and their subsequent removal from the*

#66-000-0055-03

5

JUDY A MCDERMOTT

*Division, and I would pursue the matter as such.* **Exhibit 48** *is a Memorandum of interview of James Donnelly. On July 2, 2003, Liz Karp, Support Clerk, was sent to the BMC to do almost one years' worth of filing (**Exhibit 49**).* **This was less than one week after it was announced I was being transferred, and two days after Inspector Donnelly stated to me on that no help was forthcoming to the BMC.** *Additionally, I had recently sent an email to Inspector Beppu on April 1, 2003, and prior to that on August 16, 2003, asking for help with the filing, yet my request was denied* **(Exhibits 50 and 51).** *Exhibits 52 and 53 state that 15 support clerks were being transferred to the Division in March 2003, yet no assistance was forthcoming to the BMC. I believe Inspector Nedd played a significant part in this decision, for retaliatory purposes.*

**Retaliation is rampart in this Division – and was one of the issues in the petition that 49 people agreed with – and which still has not been addressed.** *I currently have filed 9 EEOs, the latest one was filed on July 29, 2002 against Juliana Nedd, when she accused me of sending anonymous letters about her merits and awards, and then threatened to send me for a fitness for duty.* **Exhibit 54** *is a copy of EEO # 9 that I filed on July 29, 2002 naming Juliana Nedd and Alan Kiel). To date, seven of my EEOs have been accepted as being legitimate complaints and are at the EEO Administrative stage. Keith Silva was another inspector that filed numerous EEOs that management attempted to give "unsatisfactory" year-end merits to, two years in a row in an attempt to remove him from his position as a postal inspector. I believe Nedd was attempting to set me up to fail at my job by taking away all support help I had at the BMC so they could do the same thing to me. I believe that is the reason they took all the support help from the BMC in 8/02, moved all Inspectors from the BMC in 2003 except for myself, and I was given twice the territory as others on my team without any assistance. I believe Nedd had to take away any help I was receiving, because in 2002 I had the number one Internal Crimes stats in the San Francisco Division (even with all the EEOs I have pending). I believe there were ulterior motives at work for taking away the support help, another example of decisions being made for personal agendas.* **Exhibits 55-84** *are my repeated attempts to obtain assistance at the BMC after the support help was taken, and examples of all the extra duties I was performing after the support help was removed from the BMC, including: ordering toner, ordering water, calling the repair man for the OCE copy machine on numerous occasions, calling for meter repairs, ordering supplies, requesting employee printouts, requesting garnishment printouts, opening mail and distributing mail, and sending mail out every night. No other domicile in the Division is without a support clerk, except for Bakersfield which has one inspector (who is not a top producer of stats) and whom has never had support help in the past. The BMC has had support help from at least 1994 until August 2002 when Liz Karp was transferred from the BMC. During FY 2002, the two inspector domiciled there (Anderson and McDermott) had more stats than the rest of the IC team put together. Additionally, the Division just received at least 15 extra employees to help the Division when the ISOG was closed in December 2002 (see **Exhibits 52 and 53**). Liz Karp had initially been told she was coming back to the BMC in early 2003, and later was told she would not be returning to the BMC. She was not given any reason. Additionally, it is rumored that Greg Gamache will now move his office to the BMC.*

*Additionally, when I was told I was being transferred to the San Francisco ECA team, there were openings on other teams, some within a short commute of where I was currently domiciled at the Richmond BMC where I could be reassigned to work. Or, I could have been placed on one of the two new teams that were formed which are high priority teams– Internet Fraud and Identity Theft (see **Exhibit 41**). Instead, I was transferred to one of the most insignificant teams in the Division usually reserved for new inspectors, the furthest possible distance from my residence, given the territory with the most complaints on the team, and now required to respond 24-7 working various tours. One of the new inspectors on ECA was subsequently allowed to move her office from San Francisco to Oakland, (Dingui) while I was required to relocate from Richmond (5*

*miles from Oakland) to San Francisco, and assigned the San Francisco territory which has significantly more threats and assaults as other territories. I have over 17 years as a postal inspector with numerous "far exceeds' merits and awards, and am consistently a high performer. When I went to Inspector Donnelly about being reassigned to the ECA team, he said they were trying to accommodate my email request, yet it was clear to him that I was not happy with the transfer to the ECA team, and he did not "accommodate" me to another team as I suggested.* **The reasons he gave for transferring me to the ECA team ring false, especially since there were openings on other teams where my skills would be better utilized for a Division that is so short staffed.**

*On July 14, 2003, I contacted Inspector Birch about the whistle blowing retaliation* **(Exhibit 85)**. *He said he would not get involved and did not see a problem* **(Exhibit 86)**. *This was the same response he gave to the Marilyn Lee incident (see* **Exhibit 23**). *I do not believe the Agency is capable of monitoring its own behavior unless their hand is forced, as in the case of the three mangers in this Division.*

## ACTION REQUIRED

*--The survey sent to Division employees must address retaliation -- it is rampant in this Division. Retaliatory actions as a result of the petition need to be investigated and addressed;*
*--Determine if the reason Inspectors Howard and McDermott were transferred were retaliatory;*
*--Investigate the promotions of Jim Thiede and Gregg Crabb to determine if those signing the petition were retaliated against with regard to promotions;*
*--The survey should address whether anyone in the management team asked any employee about whether they signed the petition and/or made comments to them about who they believed signed the petition and what was said;*
*--Alan Kiel, Juliana Need and Greg Gamache need to be interviewed to determine who they made comments to about who signed the petition. They also need to be interviewed regarding what was disclosed to them regarding their removal from the Division ( to determine how much confidential information Jim Birch, Ombudsman released);*
*--Jim Birch should be interviewed regarding the release of confidential information (LA inspectors may have information on other information Inspector Birch has released);*
*--Marilyn Lee should be interviewed regarding INC Kiel approaching her about the petition;*
*--Team leaders interviewed and asked who the Acting AICs contacted about Judy McDermott coming to their team; and*
*--Judy McDermott and Quan Howard returned to the teams and positions they were assigned prior to retaliation occurring.*

Since being reassigned to the ECA team, I have suffered humiliation, been made the butt of jokes for being reassigned to the ECA team, and incurred high levels of stress, anxiety, and sleeplessness, as a result of being transferred for whistleblower retaliation. I have seen a doctor for migraines and chest pains. Many in the Division know my part in sending the petition and now see that I have been punitively reassigned. It is humiliating and degrading and a deterrent for anyone else wanting to come forward. I can provide names of individuals who have witnessed my condition. Additionally, my reassignment to this new ECA team negatively impacts me in the insignificant type of work being conducted, the increased commute, the increased workhours, the change in workhours, being required to drive a government car to and from work against my past requests, and being on response 24-7.

As addressed in my pre-EEO complaint dated 8/22/03, I learned, via a letter dated 8/12/03 from Lawrence Katz, Chief Legal Counsel for the USPIS, that David Fineman, BOG Chairman, released the confidential letter (and 92 Exhibits) I sent to him to the USPIS, even though I repeatedly stated that it should not be released inside the Agency and I requested an outside Agency investigate the allegations. In my pre-EEO complaint I stated I expect more retaliation to occur as a result of Mr. Fineman irresponsibly releasing the confidential documents and records to the very Agency that it addresses -- with issues so serious that the three managers were removed from their positions. On August 20, 2003, Deputy Chief Inspector Ahern was in the San Francisco Division asking questions about why Liz Karp went to the Richmond domicile on 7/2/03 to provide support help after it was announced I was being transferred from Richmond, and after AIC Donnelly told me no support help was forthcoming at that domicile. Ahern specifically spoke with Karp about why she went to the Richmond domicile. Per my discussion with Karp, told Ahern she went to the BMC to wait for a repairman for the shredder, and she spent the day filing. In the past, I was required to call and wait for repairmen, but after I was reassigned, a support person did that duty. Additionally assistance with filing was one of the items I previously requested help with. Upper USPIS management is aware of what is occurring and has not intervened.

Additionally, on August 18, 2003, AIC Donnelly questioned me about a hotel charge on a travel voucher I just submitted, where I obtained a hotel room after working 16 hours at the San Francisco P&DC (**Exhibit 87-88**). I finishing work at 12:00 a.m. in San Francisco (after working 16 hours) and had to respond to Menlo Park on an alleged assault the next morning prior to the carrier going out on the street (I live in Suisun), so I got a hotel room. I have never heard of anyone ever being questioned about obtaining a hotel room under these circumstances. In fact, my team leader, Sally Diaz, had no problem with my obtaining a hotel room. Additionally, my prior team leader (Anita Beppu) repeatedly approved hotel rooms for team member Candace Wilkes when she could not drive home after working long hours. I believe this is just more retaliation as a result of the petition and the subsequent release of the letter and exhibits I sent to the BOG which also negatively named Acting AICs Wisniewski and Donnelly and questioned their integrity on decisions they made since coming to the Division. Shortly after transferring me to the San Francisco domicile, Inspector Donnelly told Sally Diaz, my new team leader, that I could submit a letter to get off the ECA team. Diaz relayed this information to me on August 4, 2003. If I was legitimately transferred to the ECA team, why would Donnelly, a month later, tell Diaz I could put in a letter to get off the team. The discriminatory and retaliatory behavior against me has continued to perpetuate the hostile work environment that is on-going in this Division and that I, and others, have experienced since filing EEOs.

Additionally, as I addressed in my in my pre- EEO complaint, retaliation has occurred against me as a result of the release of the letter I sent to the BOG. On September 11, 2003, my prediction of future retaliation came true and I was investigated by our Internal Affairs Division for some trumped up charge that had no merit. I will be filing a subsequent EEO on this incident. Retaliation is rampant and on-going, creating a hostile work environment that has to be addressed -- either inside this Agency or outside the Agency. One only has to look at the pattern of retaliation that I have experienced since coming forward with EEOs.

## #17:  RESOLUTION

--To be transferred back to the Internal Crimes team, domiciled in Richmond, until my
   retirement.
--Not supervised by anyone named in current or past EEOs.
--Reimbursement for all annual and sick leave used as a result of this incident.

--Reimbursement for all my time spent on this EEO.
--A public apology posted on all Division domicile bulletin boards for 60 days, acknowledging that management has participated in discrimination and retaliation.
--In-depth EEO training for all Division managers and supervisors.
--Attorney fees.
--Compensatory damages for physical, emotional, and psychological suffering and damage to my reputation, in the amount of $300,000.00.


Sincerely,

*Judy McDermott*

Judy McDermott
Postal Inspector
366 Hibiscus Lane
Suisun City CA 94585
Home 707/428-6513
Work 510/528-9708
October 20, 2003


Exhibits

1.      Copy of the letter and petition to Inspector Birch dated February 22, 2003 (3 pages).
2.      Copy of the proposed survey sent to Birch with the petition (1 page).
3-4.    Copy of workhours for June 03 (2.8) and July 03 (6.4) (2 pages).
5.      IC team territory prior to receiving the Sacramento territory (1 page).
6.      IC team territory after McDermott received the Sacramento territory (4 pages).

23.     Email from Birch that Kiel did nothing wrong (2 page).
24      Emails to Ombudsman Jim Birch regarding expectations and Division issues (2 page).

26.     Copy of Kiel's retirement announcement dated May 19, 2003 (1 page).
27.     Copy of Kiel's retirement ISCOM dated June 11, 2003 (1 pages).

41.     Copy of changes to the teams, with EC teams not staffed (4 pages).
42.     Copy of the Enter on Duty dates of new Inspectors (3 pages).
43.     Copy of email dated May 7, 2003, I sent to Beppu/Donnelly ref getting assistance at the BMC (1 page).
44.     Copy of Memorandum of Interview of Anita Beppu (1 page).
45.     Copy of the number of assaults in the San Francisco territory (1 page).
46.     Copy of Memorandum of Interview of Sally Diaz (2 pages).
47.     Copy of email asking to speak with AIC Donnelly ref my transfer (1 page).
48.     Copy of Memorandum of Interview of AIC Donnelly (2 pages).
49.     Copy of note from Liz Karp, Secretary, she came to BMC on July 2, 2003 to do filing (1 page).
50-51.  Copy of emails to team leader Beppu asking for help at the BMC (2 pages).
52-53.  Copy of emails stating 15 ISOG employees are coming to DHQ (10 pages).
54.     Copy of EEO #9 filed against Nedd and Kiel dated July 29, 2002 (26 pages).

#66-000-0055-03                                    9                              JUDY A MCDERMOTT

55-83. Copies of emails sent asking for help at BMC and performing clerical work (38 pages).

84.  Copy of IC team territories showing disparity in territory after McDermott
     was given Sacramento territory in addition to her own (4 pages).

85.  Copy of email to Ombudsman Birch ref whistle blowing retaliation (1 page).

86.  Copy of Birch's response to whistle blowing retaliation (1 page).

87-88  Emails regarding obtaining a hotel room (2 pages).

EXHIBIT 16

Subject: Detail Assignments AIC Sanfrancisco Division.doc

# U.S. POSTAL INSPECTION SERVICE
# NATIONAL COMMUNICATION

| | | | |
|---|---|---|---|
| **DATE:** | 3/19/2003 | **CATEGORY:** | Human Resources |
| **FROM:** | Field Operations - West | **CONTACT NAME:** | Ahern, M E |
| **CASE #:** | | **CONTACT PHONE:** | 312-669-6501 |
| **SUBJECT:** | Detail Assignments - AIC Sanfrancisco Division | | |

.9/2003

ective March 31, 2003, Inspector John Wisniewski, assistant inspector in charge, Western Allegheny Division, will detailed to the position of assistant inspector in charge, San Francisco Division, for approximately 120 days.

ective March 31, 2003, Inspector James M. Donnelly, team leader, North Jersey/Caribbean Division, will be detailed he position of assistant inspector in charge, San Francisco Division, for approximately 120 days.

# EXHIBIT 17

| | |
|---|---|
| From: | McDermott, Judy A |
| Sent: | Wednesday, June 11, 2003 9:26 AM |
| To: | Birch, James W |
| Subject: | RE: San Fran Visit |

Inspector Birch:

I don't think I have anything else to say that hasn't been said. If you decide you want to meet with any of us, let me know; however, most of us will probably be tied up with the big "operation" out here. Have a safe trip out.

Judy McDermott

     -----Original Message-----
| | |
|---|---|
| From: | Birch, James W |
| Sent: | Tuesday, June 10, 2003 7:33 AM |
| To: | McDermott, Judy A |
| Subject: | San Fran Visit |

Next week the Chief will be in San Fran - Monday and Tuesday.   Accompanying him will be myself, Marsha Freso, and Counsel Larry Katz.

If you or any employee to your knowledge would like to meet personally with any of us, please let me know.   I'm not sure if the setting will be amenable for a meeting, but we can play it by ear.

Thanks.

1

# EXHIBIT 18

Lee, Marilyn N

From:
Sent:
Subject:

Birch, James W
Friday, June 13, 2003 7:31 AM
Lee, Marilyn N
RE: Guarantee

I will tell them in person when I see them on Monday.........thanks.

-----Original Message-----
From:      Lee, Marilyn N
Sent:      Friday, June 13, 2003 10:28 AM
To:        Birch, James W
Subject:   RE: Guarantee

Thank you.  I would like John Wisniewski and Mike Ahern to come.  Please tell them that the Chief would like to meet with them privately at the hotel that day and I don't want them to tell Alan Kiel of our meeting.

-----Original Message-----
From:      Birch, James W
Sent:      Friday, June 13, 2003 7:13 AM
To:        Lee, Marilyn N
Subject:   RE: Guarantee

Marilyn........you have the absolute right to speak with me, your INC, your DCI, etc at any time.  Asking for a meeting and then presenting points in a professional, constructive manner is something we wish all employees would do.  Rather than retaliation. we should be thanking you for coming forward and sharing your concerns.

That being said........yes.......I can guarantee that meeting with myself, or Acting INC, or DCI, or any combination, will not result in a demotion, reassignment, or removal.

# EXHIBIT 19

I like to thank you for giving me the time to see you and telling chronicle of events that has happened to me. I'd like to make it clear that from this meeting, all details are to be kept strictly confidential and that I receive no retaliation before I begin. That means I will not be demoted, removed or reassigned.

Before we start, I want to know the following:

Is this meeting being taped? If so, I want a copy of the exact tape.

Will a report be done on this meeting? If so, I would copies of this meeting and who typed it and I would like the names of the people who will have access to this report. I also want to keep this confidential and want everyone who has a copy of the report to sign and return the signed copies to the ombudsman who in turn will provide me a copy of the signed sheets.

If a report is being prepared, can my name and title be substituted with a Code Name or alias?

I am asking DCI Mike Ahern to be here as moral support. I'd rather that Mike considered as an independent person and not be involved in this meeting. Since I know, respect and trust Mike Ahern, I would just want him to be here to listen and I feel I need a friendly face. If Mike feels uncomfortable in this decision, then please excuse yourself. I would understand.

I must apologize for reading my notes but I want to provide you with the most exact information on hand.

My issue is strictly favoritism and I chose to sign the petition because of the actions committed, which I felt were unjust. When I signed the petition it was my understanding that my complaint would be kept confidential and that there would be no retaliation. I expected the ombudsman or committee to review my complaint and weigh its own credibility. Being realistic, I am sure the ombudsman receives many complaints on a daily basis regarding favoritism, unsafe practices, overwork, etc. For example, I heard that there were several complaints re the ad hoc position selections at the divisions. The ombudsman/committee may find my complaint unactionable or unreasonable. But at least if I filed my complaint, it would be a matter of record. I was confident that someone else in the Division would complain sooner or later on the same issue of favoritism and that one day the ombudsman would have to listen. I also expected that my details of my experience could be twisted and interpreted as "unsubstantial or frivolous". At that time, I didn't know until the petition was formally filed that a number of the Division employees had "issues" and not necessarily the same reason as mine.

After hearing my concerns, you may also want to side with Alan, Juliana and Greg. But my point is at least I got someone to listen to my issue and have my complaint file. That is the intention of my signing the petition – someone other than local management (Alan, Juliana and Greg) to review, listen and file my complaint.

*1 of 6*
*Marilou Lee*

Let me get on with the events that occurred.  Let me warn you that this maybe another Level 19 ad hoc selection issue which you may have heard before.  Sometime in 2002, the support had to submit a write-up of what they wanted to do for Management and turn it in to the Admin. Specialist Sheilah Castor. My interpretation of that order was what my goals are and what I would like to do. I indicated what I would like to be in a training position of some sort but that there is no position available in that area at our Division at this time. I expected that if we turned it in, Management was going to read what our desires are. My feeling is that I don't think they even read it otherwise they may have considered my feelings about the recruitment ad hoc position.

Juliana discussed with Alan and Greg (mainly Alan) to create a support position and that support person would gather the reports that management needed on an interim basis. They assigned Wanda Smith for that position.  I don't think the position was offered to anyone else.  During the time Wanda was assigned to this newly created position, she did not have enough work to do and was asked to assist the Admin. Center.  Although she was assigned to the Management Team, she reported directly to AIC Nedd, including when she was absent.  I asked Wanda is she would like to be my backup as she was not that busy and she said she was not interested.

Socorro Frias reluctantly filled as a backup for me. No one else would volunteer as they felt that unless I got promoted, no one had a burning desire to learn my job and no one wanted to deal with AIC Juliana Nedd.  As an employee working for her directly, I am of the opinion that AIC Juliana Nedd has an overbearing personality towards her subordinates.  My opinion of her is that she is smart, innovative, fun loving, and at the same time she is loud, overbearing, intimidating, has no patience, or appropriate delivery. She also is very direct and critical to the point that sometimes it hurts.  Some employees try to avoid her at all costs by not coming to DHQ.

When news of the ad hoc Recruitment Level 19 was developing, Juliana took Wanda into her office, researched and gave her information about the position, and helped her with her 991. These events were all out in the open, with Juliana keeping her door open and talking very loudly as usual. Juliana did not offer this same treatment to anyone else and it was very clear by her actions Juliana wanted Wanda in that position.  I was disappointed because the position was in the area of what I desired and expressed which was filed with management. No one mentioned or considered me for it. I told Alan I was going to apply for it and he indicated with approval. And just that.  With approval. Alan knew that Wanda got assistance from Juliana. It was happening in front of him. If he didn't know, then he is just as guilty of favoritism.

However, when the 991s deadline expired, Juliana went to Alan's office and asked out loud if a decision has been made re the ad hoc position as she only heard that Wanda was the only one applied.  An Inspector happened to be there and informed Juliana that there were other employees who applied, including me.  You can hear Juliana in "silent mode." I can only imagine her eyes rolling when the Inspector told her I applied.

2 of 6
m. l. Lee

Later Sheilah Castor called me in and told me that Wanda got the Ad Hoc Level 19 position. I was not happy with the decision as I thought there were others who were more qualified in that area other than Wanda. Again, this was my opinion and I returned to work.

I had to prepare the merit and award forms for the year. Juliana had put in Wanda for an "outstanding" merit rating and Management approved it. The write-up included her work on the recruitment process, which she just got recently assigned to within the 2-3 months. I question this management decision as in my opinion outstanding merits were based on performance for the entire year or continually.

Now I have prepared awards for many years. Wanda has worked for several supervisors and has not been recognized to that extent to receive that type of recognition. I can name several other stellar support people who, because of their work performance, will receive recognition no matter who they work for and are more deserving for an "outstanding" merit. Maybe she should get an award but an "outstanding" merit?? I am of the opinion that if another support person had been assigned to the ad hoc position other than Wanda, it is highly unlikely that person would get an "outstanding rating." Again this is my opinion.

I also got an "outstanding" merit. But I believed I truly deserve it. I worked for it and I am sure most of the people in the Division will vouch for my work ethics. I did not "smooze" to Management to get this rating.

I was very disappointed with management decisions, clearly thinking that Juliana had all along shown favoritism towards Wanda and that there was nothing to do but continue doing my work. Alan would come up to me and often said I do great work. Not only him, but I was surprised of the number of employees that came up to me and said they were sorry I did not get the position but I do great work. I said thank you to everyone. I guess it got to me because just about every day someone would say kind things to me. The more they said it, the more difficult it was for me to accept it. During this time a petition was going around. I passed up on signing it. The fact that some people thought I was wronged and offered the petition should have told me what they thought of the decision made by management.

One day an Inspector approached me and told me that management has directed an investigation to inquire employees who may have said the selection was racially motivated meaning Juliana Nedd wanted to promote Wanda Smith because she was black and my name was mentioned. The thought crossed my mind, however I never spoke to anyone about it. Others may have come to the same conclusion and one can interpret this action as management trying to cover up that the decision wasn't racially motivated. I didn't think much of it then. It just showed how much time and energy management was wasting.

One day, that petition came around and I decided to sign it based on my issue of favoritism of the selection process for the ad hoc Recruitment Level 19.

3 of 6

On Juliana Nedd's last day before she left for her detail, she asked that I speak to Alan directly as he found out that I signed the petition. I was surprised and unprepared to speak to Alan. I didn't want any confrontation with him as I believed that my issue in comparison to some of the other filers carried more weight than mine. So I walked into Alan's office and told him that Juliana said that I should talk to you about the petition. He asked me why I signed it. My thoughts were racing in my head. I can't tell him everything (like the open favoritism, awards, etc.) which is the main issue of my complaint. He may use the info I gave him and refer to my complaint as "frivolous or unsubstantial, etc." Again, it may be frivolous to some but I wanted someone else to know about what I've been through and I needed that info to present to the ombudsman. I proceeded to tell him about the Inspector who approached me and the investigation of my possibly telling others of the selection as racially motivated. Alan asked me if I thought he would do such a thing. I told him no because he would ask me directly but I would think Juliana would do it. Alan did not say anything. He was very hurt and said that by my signing the petition as his secretary, it reflected on him. Not knowing what to say, I apologized. In my mind I'm sure Juliana had a part in making the ad hoc recruitment decision. But I wasn't going to tell Alan that. Anyway Alan told me that the investigation was not directed on me and then he asked me if that was the only reason why I signed the complaint.

All I could think of was we can't continue like this and I have to work with Alan. I decided to appease him and said my signing the petition was a mistake. What can I say? I had to say that otherwise I could have been working in a hostile environment. Looking back I'm glad I made that decision, as I could not have lasted this long to tell my issue. I did not want to speak to Alan about the issue or give the information I had. Over the weekend, I was very miserable and I decided that the first thing on Monday morning, I was going to contact Mr. Birch.

I called Mr. Birch the first thing Monday morning, but he did not answer and left a message. Then I emailed him and said I need to speak to someone immediately as I was compromised. Finally when I heard from Mr. Birch he told me to speak to John Wisniewski. I asked Birch if John was in Acting AIC capacity or here to validate the complaints of the petitioners. He said John was working for Birch. But John was on his back way to SF and did not arrive until later that morning and Alan walked in. Alan asked to speak to me again. We were in the Kline Conference Room with the blinds open enough so you can see Alan and me. I was hoping that I would have spoken with someone from the ombudsman office before I could speak with him again. Again I had to give him as little info as I could without revealing what I considered "my essential facts to my issue." I knew that I had to tell him something.

I told Alan about how I disappointed with his decision to select Wanda. I told him that there are very few higher-level support positions in the field and this position was a Level 19. A Level 19 is a very high level for a support person. For me, giving that assignment to Wanda was like a ppo moving to a PPO division manager position. But again that is my opinion. The position was a developmental position so if that position

4 of 6

Marilyn Lee

ever became a permanent, she would be the best qualified person and gets that job. Also, higher level jobs at the Division level are very limited. Since I have been InC Secretary, there have been very few higher level support positions at the Division. These positions were opened only because of retirements or transfers -- the ISOC, a SET, and the Admin Specialist position. After hearing your speech yesterday that there would be higher levels opening up, was encouraging news to the support. Anyway at that point, Alan said he would give me developmental admin training for 3 months. And I told him I would like that. Regardless of what happened, I told Alan I would continue to do the good work that I do. Our meetings ended with me in tears and I'm sure the word got around. Alan did not approach me to talk about it further after the second incident.

In our conversations, Alan said that most of the petitioners complained about recognition. I said to myself, do you know what they are saying; you can't even recognize your own secretary with a promotion. Alan said he gave me an award. I bit my tongue. What was he thinking? I got the outstanding award based on my job performance. I felt that the award he gave me was like a person who gives his good dog a bone. I was hurt that Alan gave Wanda a promotion and an award, an outstanding award. I'd rather get a promotion than an award.

During my talks with Alan, all I could think of was we can't continue like this and I have to work with Alan. I did not know if anyone from the ombudsman's office was going to come out to speak with me and when. If no one from the ombudsman's office showed up, at least our relationship was not strained. I had to continue to work with him. In the meantime, I decided to keep the facts of my issue to myself.

Later I found out that John Wisniewski and Jim Donnelly went out with the Sullivans and it was my decision not to say anything to John about my case. I hesitated to have John Wisniewski here at this meeting but Mr. Birch advised that you will be acting InC and are to be trusted.

After the incident, the only person who was brave enough to speak to me about the confrontation and offer me assistance was Judy McDermott. She told me I should have never spoken with Alan but it was too late.

The talk of the Division is that the InC Secretary is a whistleblower. You don't know how that feels I'd like to tell you what's life has been since my talk with Alan and the announcement of his retirement. The first remark was, "Marilyn, what did you do to make Alan retire?" Not only did I hear that from one person but from several people. Some petition filers told me that they were happy I signed as they felt they were the bottom of the barrel employees, poor performing employees, misfits or outcasts of the Division and my signing brought attention to their issues. I was surprised that these employees felt that way. Their personal experience with management must have been so traumatic that they honestly believe they were the misfits or outcasts of the Division. Some were disappointed that I signed it. The day I heard from Mr. Birch telling me to inform everyone that wanted to speak with him to send him an email, there was so much tension. I walked into a crowded lunchroom and I can feel the tension. I felt the petition

filers did not want to speak to me to avoid being associated as a filer and the other people did not want to speak to me, as I am a troublemaker.

I am not happy with these comments or situation. Had this issue been handled in a confidential manner I would not be in this situation. What is even worst is that the division is torn in half – those that signed and those that did not. Morale is low and the energy to focus on work is not all there. My signing did not help the build the trust in management.

I asked for this meeting outside the Division so not to attract attention. I feel I should inform the Chief directly of what has been happening. I request that everyone here don't tell Alan of this meeting or the details. It would only hurt him and I would not like to display any awkward feelings between us at his retirement luncheon. Besides I have to continue working for him and I respect Alan as a decent person.

I am worried about the ombudsman program and its credibility. Had I been just another support person who had filed a complaint of favoritism, and there was another complaint filed by another support person in the same division for the same reason, would the ombudsman give those complaints credibility? How many complaints need to be filed before "issues" are brought to light?

I am disappointed that many of the filers did not come to speak to you directly as I can't speak for them. Besides I don't know their personal issues. I am not a complainer, never filed an EEO or signed a petition in my 24 years. After this incident, I can understand why those who filed complaints in the past are not happy with the process. Your credibility and integrity is questioned. However, for those filers not chose not to speak with you directly also compromises my credibility and integrity because they alone can substantiate the events that occurred. The only conclusion I can come up with is that they probably feel nothing positive can come out of this.

I am upset that someone gave Alan my name that I signed the petition. I am upset that he personally had to question me about my signing. Had anyone else signed this petition, no one, no one would have approached that person and question him or her. Team Leaders were not questioned, but an InC Secretary. I am upset that after the incident with Alan, no one from the ombudsman's office came to my assistance to protect me and left me in a vulnerable and possibly hostile environment. I am upset that it took this long to hear from the ombudsman's office. And if my position as InC secretary brought this issue to light, then I am upset that upper management's attitude towards any complaint filed by any other person, regardless of what position, is probably not as important.

6 of 6
Marilyn Le

## JUNE 2003 MEETING REFERENCE THE 2003 PETITION

The petition signed by 49 employees, Support, Inspectors and Postal Police, was submitted to Birch in February 2003. Subsequently I was exposed as one of the signers. INC Kiel came up to me on two separate occasions wanting to know why I signed the petition. It was upsetting to have him approach me and I did not know what to say to him. I was shocked he knew that I signed the petition. It was to have been confidential. I had to work with him and did not want things to be difficult working with him. I gave him vague answers when he approached me. I was crying and upset that Kiel approached me. I called Ombudsman Birch asking for his help, but he would not give me any help. I was in tears. Birch told me to go to Wisniewski and said I could trust him. I was shocked when Birch said this because I found out that Wisniewski just went to AIC Nedd's house for dinner. How could I go to Wisniewski when he was supposed to be out here addressing the issues with the managers and he had gone to their house for dinner? Birch never followed up on my status regarding Kiel approaching me, as if he didn't care. I was extremely stressed about INC Kiel approaching me and broke down crying several times. I was in a panic and felt a lot of tension in the office. I did not know what to do. An Inspector intervened on my behalf, sending Birch an email about Kiel's behavior. Kiel later announced his retirement.

In June 2003 Inspector Birch asked me to send an email to those people whom I thought would like to meet with him and other managers in June 2003, to discuss their complaints on the petition. I did send an email to those people whom I thought would like to meet with him and even made a few phone calls. Those people were hesitant and I knew they were afraid of retaliation.

I told Birch the only way I would meet with him was if I met with Inspector Birch and his "team" offsite. He agreed. I arranged for a meeting at the Marriott Courtyard, because I did not want to meet at the office. Others that met with Birch at the office were "monitored." I was afraid of retaliation.

I arranged for a meeting at the Marriott Courtyard Hotel in a conference room, and around 4:30 p.m., I left the office early and it was there that I made my statements to those present about how management had been operating in San Francisco and my concerns. I believe the people at the meeting were Jim Birch, Ombudsman; Larry Katz, Chief USPIS Legal Counsel; Mike Ahern, Deputy Chief Inspector -Western Area; John Wisniewski, Acting AIC (at the time); and Greg Campbell, Acting AIC.

I prepared six pages of notes and took the notes to the meeting, because I didn't want to leave anything out. When I spoke, I read my notes and they just listened (**See Attached six pages**). I started out stating, "I would like to make it clear that from this meeting, all details are to be kept strictly confidential and that I receive no retaliation before I begin. That means I will not be demoted, removed or reassigned." They agreed. I read my six page comments, which I felt addressed as favoritism at the time. It may actually have been more than that.

1

Statement of Marilyn Lee for June 2005 Birch Meeting

No one made any comments until I was done. At the end, Inspector Birch indicated that maybe someone who signed the petition gave my name out. (I was not convinced that HQ kept my name confidential. Inspector Dermott informed me that on the page of the petition I signed, only three people signed the petition after my signature and could have seen my name.) Birch said he was sorry that no one came to my help. He said he would address my concerns and thanked me for coming in to speak with them. I recalled that shortly after this whole incident I went to a doctor for a regular checkup and mentioned the stress from my work. It was not to the level that I have been at since going to the supervisor position.


Marilyn N. Lee
8/10/05

2

Lee, Marilyn N

From:          Birch, James W
nt:            Friday, June 13, 2003 7:31 AM
To:            Lee, Marilyn N
Subject:       RE: Guarantee

I will tell them in person when I see them on Monday.........thanks.

> -----Original Message-----
> From:        Lee, Marilyn N
> Sent:        Friday, June 13, 2003 10:28 AM
> To:          Birch, James W
> Subject:     RE: Guarantee

Thank you.  I would like John Wisniewski and Mike Ahern to come.  Please tell them that the Chief would like to meet with them privately at the hotel that day and I don't want them to tell Alan Kiel of our meeting.

> -----Original Message-----
> From:        Birch, James W
> Sent:        Friday, June 13, 2003 7:13 AM
> To:          Lee, Marilyn N
> Subject:     RE: Guarantee

Marilyn........you have the absolute right to speak with me, your INC, your DCI, etc at any time.   Asking for a meeting and then presenting points in a professional, constructive manner is something we wish all employees would do.  Rather than retaliation. we should be thanking you for coming forward and sharing your concerns.

That being said........yes.......I can guarantee that meeting with myself, or Acting INC, or DCI, or any combination, will not result in a demotion, reassignment, or removal.

# EXHIBIT 20

McDermott, Judy A

**From:** Lee, Marilyn N
**Sent:** Monday, May 19, 2003 1:37 PM
**To:** Abe, Alice; Abe, David; Cabano, Anita; Del Carlo, Karen; Gamez, Diana; Mendes, Barbara; Pollock, Sybil; Ringseth, Eric; Smith, Nina; Yee, Tammie; Abad, Albert; Anderson, Alan; Baughan, Susan; Beppu, Anita; Bilka, John; Blank, Cynthia; Brucklacher, Charles; Campbell, Gregory; Campion, Patrick; Carlson, Robert; Cassidy, Michael; Colon, Pedro; Cottrell, Guy; Crabb, Gregory; Dare, Byron; Davenport, Cynthia; Derderian, Benjamin; Derwey, Kathryn; Diaz, Araceli; Dingui, Yessenia; Donnelly, James; Dorn, Patrick; Dortch, Robert; Ducar, Frank; Esteban, Patrick; Eto, Terry; Evans, Brian; Fitch, Jeffery; Ford Smith, Patricia; Fusseil, Victoria; Gamache, Gregory; Gordon, Janene; Greenspan, Marius; Guerra, David; Hales, Craig; Hall, Richard; Heath, Mark; Hernandez, Roberto; Herzog Evans, Kathleen; Herzog, Mitchell; Hofheins, Stephen; Howard, Quan; Hummel, John; Innes, Kenneth; Joe, Linda; Kaufman, George; Kershner, Adena; Kiel, Alan; Kienzle, William; King, Regina; Koscki, Kevin; Kovacs, Jeffery; Kwietkauski, Richard; Laurel, Lorenzo; Lawee, Edward; Lee, Lester; Lieske, Robert; Lim, Jennifer; Louie, Benjamin; Lowery, Paul; MacMillan, Matthew; Markwell, Brian; Mc Dermott, Judy; McAlhaney, Ryan; Mew, Barry; Montalvo, Miguel; Moore, Beatrice; Morales, JoseLuis; Morata, Dennis; Nedd, Juliana; Nguyen, Cathy; Palomar, G; Phillips, Robert; Ramos, Michael; Rickher, James; Runnels, Sam; Russo, Linda; Saluta, Bernardo; Santos, Efren; Silva, Keith; Siouris, Chris; Stephens, Robert; Stiles, Luz; Stout, Janet; Taylor, Jeffrey; Thiede, James; Welsh, Gary; Wemyss, Robert; Wilhelmus, Paul; Wilkes, Candace; Wilson, Michael; Wisniewski, John; Witt, Richard; Wong, Andrew; Woo, Dewey; Woo, Jim; Zinn, Angela; Andre, Neil; Ayon, Celia; Dower, Robert; Griffith, John; Holman, Berne; Merino, Anibal; Paglinawan, Lawrence; Preciado, Maria; Kwong, Sylvia; Moseley, Kenneth; Pakula, Richard; Altamirano, Luis; Arnold, Clifton; Butler, David; Chew, Spencer; Ebalo, Florencio; Gartelman, James; Goodman, John; Kiel, Steven; Stickles, Carmen; Villafranca, Carmen; Adamson, Joseph; Bautista, Perry; Bazyk, Charles; Bock, Bruce; Chu, Richard; Clayton, Loren; Crouse, Johnnie; Dozier, Quintin; Dzoan, Tuan; Estigoy, Emmanuel; Garcia, Jesus; Glover, Preston; Gonzalez, Bill; Griffin, Edward; Harbin, Mary; Henry, Herbert; Hinton, Terry; Hoganas, Ricky; Jacquet, Lanston; Johnson, Leroy; Johnston, Joseph; Jones, Donae; Jones, Eric; Kim, Gil; Knemeyer, Ellen; Lim, Alvin; Locker, Frank; Magdangal, Derrell; Maglasang, Dennis; Mattner, Dennis; Mayo, Germain; Oquendo, Daniel; Perales, Norris; Perez, Kristine; Phillips, David; Pinell, Jerry; Ramos, Ricarredo; Reyes, Rodrigo; Rodrin, Robert; Romualdo, Alfred; Sanchez, Daniel; Santiago, Gerald; Sare, Ishmael; Scheld, Steve; Seuell, Walter; Smith, Thurston; Sonnenburg, Gerald; Stephan, Michael; Sturtevant, Eric; Tam, Raymond; Tang, Jackson; Teague, Gary; Tibon, Fernando; Yen, Daniel; Andres, Florita; Dancoff-Young, Nila; Gamez, Thomas; Schoonmaker, Sandra; Acevedo, Reatha; Bailey, Ellena; Castor, Sheilah; Edwards, Carole; Frias, Socorro; Karp Gregory, Elizabeth; Kimble Jr, Henry; Lee, Marilyn; Leung, Stella; Lim, Jay; Ludovico, Luningning; Montano, Agnes; Ng, Linda; Perada, Rita; Perrier, Judith; Rodrigues, James; Sabalvaro, Catherine; Schuler, Roy; Smith, Judith; Smith, Wanda; Venegas, Teresita; Young, Mabel; Beyman, Sherry; Bouillez, Pamela; Golden, Maureen; Graham, Kaycee; Jones, Sharon; Miller, Kelly; Nevison, Willadean; Ogawa, Clara; Washington, Carol
**Subject:** Message from InC Kiel

**Importance:** High


I have advised both Chief Heath and DCI Ahern of my plan to retire June 30, 2003. I plan on spending the summer months working around the house and traveling with my family. I have enjoyed working with everyone. I look forward to our next six weeks together.
Please feel free to stop by and say hello.


Alan B. Kiel
Inspector in Charge
San Francisco Division

EXHIBIT 21

# U.S. POSTAL INSPECTION SERVICE

# NATIONAL COMMUNICATION

| | | | |
|---|---|---|---|
| **DATE:** | 3/13/2003 | **CATEGORY:** | Human Resources |
| **FROM:** | Investigations/Security | **CONTACT NAME:** | Clemmons, A S |
| **CASE #:** | | **CONTACT PHONE:** | 202-268-5445 |
| **SUBJECT:** | Detail Assignment - Inspector in Charge, Group 1 - Safety, National Headquarters | | |

Effective March 31, 2003, Inspector Juliana Nedd, assistant inspector in charge, San Francisco Division, will be detailed to the position of inspector in charge, Group 1 – Safety, National Headquarters, for approximately 120 days.

**Lee, Marilyn N**

| | |
|---|---|
| **From:** | Lee, Marilyn N |
| **Sent:** | Wednesday, August 11, 2004 8:51 AM |
| **To:** | Castor, Sheilah N |
| **Subject:** | FW: NCIC/NLETS training |

Would answer this but I would "bite" my tongue.   You know I have never shirked from any duties but it has been awhile since I actually used NCIC/NLETS. I am sure once I get the "refresher" course and actually do some NCIC/NLETS, it would no longer be her problem.  If I was asked to help Judith, do you think I would say no. I hate it when someone indicates "it is no longer my job" and even in her message, her tone is condescending.   How often do I interrupt her for help?  And you wonder why the Center employees are unhappy with her?

-----Original Message-----
| | |
|---|---|
| **From:** | Cabano, Anita S |
| **Sent:** | Wednesday, August 11, 2004 8:35 AM |
| **To:** | Lee, Marilyn N |
| **Cc:** | Smith, Judith R; Mendes, Barbara L; Castor, Sheilah N; Baughan, Susan M; Moore, Beatrice A |
| **Subject:** | RE: NCIC/NLETS training |

Marilyn,

Let's plan on meeting 9:00 a.m. on Friday.  Please keep in mind that you are also a backup for NCIC and now that you are on detail in the Admin. Center, it is your responsibility to help Judith with the training session as I am now in a detail assignment and need to stay focused on my new tasks.

See you on Friday.

Anita

-----Original Message-----
| | |
|---|---|
| **From:** | Lee, Marilyn N |
| **Sent:** | Wednesday, August 11, 2004 8:21 AM |
| **To:** | Cabano, Anita S |
| **Cc:** | Smith, Judith R; Mendes, Barbara L |
| **Subject:** | RE: NCIC/NLETS training |

This Friday would be good to meet and I would like all the Admin Center employees (except Henry) to receive the training since I am only detailed to this position.   I appreciate you and Judith taking the time to train other employees. I am sure that as soon as the ladies get familiar with NCIC/NLETS, they would be more than happy to assist in further training of other employees.

-----Original Message-----
| | |
|---|---|
| **From:** | Cabano, Anita S |
| **Sent:** | Wednesday, August 11, 2004 8:01 AM |
| **To:** | Lee, Marilyn N |
| **Cc:** | Smith, Judith R; Mendes, Barbara L |
| **Subject:** | RE: NCIC/NLETS training |

Marilyn,

Judith and I read the message below.  As the Center Supervisor and since you've taken over my duties, NCIC was one of my primary tasks.  When I say that, I am saying that I was Judith's backup.  As such, I took it upon myself to assist Judith with the training of other staff members and PPOs for which we've already held 3 classes.  When will you be available to talk to Judith and me about NCIC so that you can take over my tasks on NCIC?  Please let us know when you can meet with us so we can discuss our strategies and who on your staff needs training and when they will be available so we can plan the next training session.  I'm sure there are other direct reports that will need this training, too, and can attend the training session.

Anita

-----Original Message-----
**From:**          Lee, Marilyn N
**Sent:**          Tuesday, August 10, 2004 2:06 PM
**To:**  Smith, Judith R; Mendes, Barbara L; Cabano, Anita S
**Subject:**       FW: NCIC/NLETS training

Anita/Judith:

Can you work with me on setting up an NCIC/NLETS training class?  Give me some dates to start with.

Thanks

Marilyn


-----Original Message-----
**From:**          Castor, Sheilah N
**Sent:**          Tuesday, August 10, 2004 1:49 PM
**To:**  Lee, Marilyn N
**Subject:**       RE: NCIC/NLETS training

Work it out with Anita and Judith and let me know. Include Barbara since there may be directs who could use the training; I think we didn't include some people last time because of space constraints.  Thanks Sheilah


-----Original Message-----
**From:**          Lee, Marilyn N
**Sent:**          Tuesday, August 10, 2004 1:32 PM
**To:**          Castor, Sheilah N
**Subject:**       NCIC/NLETS training

Sheilah:

When can the Admin Center employees expect to get training for NCIC/NLETS?   I realize that this would require Anita Cabano and Judith Smith to teach the class.

Thanks

Marilyn Lee

# EXHIBIT 23



UNITED STATES POSTAL INSPECTION SERVICE

SAN FRANCISCO DIVISION

May 28, 2003

Dear Employee:

Attached, please find an Employee Evaluation Form which is being sent to each employee in our division. I ask that you take a few minutes to fill out the questionnaire. Please return your questionnaire using the self-addressed, postage paid envelope included for your use. I would appreciate your response by Friday, June 6, 2003.

I welcome your comments and look forward to hearing from you. Additionally, I want to assure you that your comments and/or concerns will be confidential. As the Chief Inspector will be visiting our division during the week of June 16th, we hope to be able to share all of the comments received from this survey with him.

Sincerely,

Alan B. Kiel
Inspector in Charge

Attachments



P. O. Box 882528
SAN FRANCISCO, CA 94188-2528
TELEPHONE: 415-778-5800
FAX: 415-778-5822

Counselor's Report
Page _118_ of _152_

Attachment 5 (1of5)

United States Postal Inspection Se...
San Francisco Division
## Employee Evaluation Form

In an effort to continuously improve our division, we would like your feedback regarding our division. Please take a few minutes to complete this survey and return it using the enclosed self-addressed, postage-paid envelope included for your use

Please check the appropriate box related to your current position:  ○ Inspector    ○ PPO    ○ Support

1. What are the three things that you like most about working in this division?

_____

_____

_____

2. What are the three things that you like least about this division?

_____

_____

_____

3. Do you feel that you are recognized for your work contributions?

_____

_____

4. What are the most important issues/priorities you face as it relates to your team/division?

_____

_____

_____

5. If you were the INC, what would be your first priority to address in the division?

_____

_____

_____

Do you have any additional comments/concerns?

_____

_____

_____

*Thank you for taking the time to complete this survey.*

Counselor's Report
Page _119_ of _152_

Attachment 5 (2 of 5)



UNITED STATES POSTAL INSPECTION SERVICE

NORTHERN CALIFORNIA DIVISION

## U.S. POSTAL INSPECTION SERVICE
## CLIMATE ASSESSMENT SURVEY

1. (Environment and Culture)
   Do you feel your work environment maintains a climate that values and respects your individual worth and dignity?

2. (Employee Support)
   Do you feel adequate resources are available to you should you need assistance with work and daily living problems?

3. (Discipline)
   If, and when, discipline has been taken against you or other co-workers, is the process handled professionally?

4. Do you feel your management/supervisors are competent in managing violent risk situations?

5. Does your manager/supervisor relate to you as an equal, neither elevating himself/herself above you nor accepting a position of inferiority?

6. Do you feel your manager(s) adequately handle those employees who violate postal policies?

7. Do you feel management monitors substance abuse among employees and/or provides counseling/referrals when appropriate?

P. O. Box 882528
SAN FRANCISCO, CA 94188-2528
TELEPHONE: 415-778-5800
FAX: 415-778-5822

Counselor's Report
Page _120_ of _152_

Attachment 5 (3of5)

8. Do you feel your work environment, (managers/co-workers) are supportive of individuals who are experiencing personal pain, illness or deaths in family, failed job opportunities, marital discord, and other situations?

9. Does management provide occasional training on self-help topics, such as, personal financial management and career planning?

10. Do you feel management is sensitive to your needs?

11. Does management attempt to reduce job stress as much as possible?

12. Do you feel management is committed to enforcing the zero-tolerance USPS policy on workplace violence?

13. Do you feel safe in your current work environment?

14. Do you believe management is addressing discrimination and sexual harassment?

15. Do you believe management practices disparate treatment and provides favoritism to certain employees?

16. Is your work environment one of openness and trust?

Counselor's Report
Page _121_ of _152_

Attachments (4 of 5)

17. (Your Supervisor)

   A.) Does your supervisor know his/her job?


   B.) Able to manage people?


   C.) Treat employees with dignity and respect?


   D.) Communicate with employees?



18. Are there any other concerns you would like to address?

Attachment 5
(5 of 5)

EXHIBIT 24



UNITED STATES POSTAL INSPECTION SERVICE

OFFICE OF COUNSEL

February 16, 2006


Ms. Marilyn Lee
951 Bradley Drive
Daly City, CA  94015-3667

RE: FOIA No. 2006-FPIS-00074

Dear Ms. Lee:

This is in further reference to your letter dated December 26, 2005, requesting, pursuant to the Freedom of Information/Privacy Acts, access to certain records that may be in the custody of the U.S. Postal Inspection Service regarding you.

In response to Item 1 of your letter, you requested information on "the basis for why you were sent for a Fitness for Duty examination on 8/23/05 with Dr. Carroll Brodsky." Enclosed are 4 pages of record material which can be released to you in their entirety.

In response to Item 2 of your letter, you requested "copies of any and all records and documents relating to the investigation the agency conducted, as outlined in our 7/15/05 letter placing you on administrative leave." The above-referenced four pages of record material are also responsive to this request. You are advised that the July 15, 2005, letter stated you were being placed on administrative leave "while the Inspection Service reviews the circumstances surrounding your alleged stressful work environment." The review of those circumstances are documented within the record material you are being provided.

In addition to the above enclosures, there was 1 other page which is exempt from disclosure in its entirety in accordance with section 552(b)(2), which concerns records related solely to the internal personnel rules and practices of an agency; and section 552(b)(5), which exempts inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the U.S. Postal Service.

As provided in title 39, Code of Federal Regulations, part 265, you have a right to appeal this decision.  A copy of the appeal procedure is also enclosed.

Sincerely,

E. J. Crespo
Deputy Counsel AIC
Office of Counsel


Enclosures

FREEDOM OF INFORMATION ACT

APPEAL PROCEDURE  (Title 39, Code of Federal Regulations, Part 265)

If a request to inspect or copy a record is denied, or a request for expedited processing of a request, is denied, in whole or in part; if no determination is made within the period prescribed by this part; or if a request for waiver of fees is not granted; the requester may appeal to the *Chief Counsel, Customer Protection and Privacy, U.S. Postal Service, 475 L'Enfant Plaza, SW, Washington, DC 20260*.

The requester shall submit his appeal in writing within 30 days of the date of the denial or of the other action complained of, or within a reasonable time if the appeal is from a failure of the custodian to act.  The Chief Counsel may, in his discretion, consider late appeals.

In the event of the denial of a request or of other action or failure to act on the part of a custodian from which no appeal is taken, the Chief Counsel may, if he considers that there is doubt as to the correctness of the custodian's action or failure to act, review the action or failure to act as though an appeal pursuant to this section had been taken.

A letter of appeal should include, as applicable:

a.   A copy of the request, of any notification of denial or other action, and of any other related correspondence;

b.   A statement of the action, or failure to act, from which the appeal is taken;

c.   A statement of the reasons why the requester believes the action or failure to act is erroneous; and

d.   A statement of the relief sought.

ACTION ON APPEALS

The decision of the Chief Counsel or his designee constitutes the final decision of the Postal Service on the right of the requester to inspect or copy a record.  The decision will normally be made within twenty working days from the time of the receipt by the Chief Counsel.  The twenty day response period may be extended by the Chief Counsel or his designee for a period not to exceed an additional ten working days when reasonably necessary to permit the proper consideration of an appeal, under one or more of the unusual circumstances set forth in part 265.7.

 **UNITED STATES**
**POSTAL SERVICE**

# Request for Fitness-for-Duty Examination

The purpose of the fitness-for-duty examination is to determine whether or not an employee is medically able to perform his or her job responsibilities. The employee's supervisor submits the request to the installation head or designee, who concurs with or denies the request. If there is concurrence, the request is forwarded to the Human Resources manager or designee. The supervisor must submit specific substantiating information with the request, including a copy of the attendance record, a job description with functional and environmental factors, and all other relevant observations regarding the employee.

It is essential that this substantiating documentation be specific and all-inclusive. This document along with the substantiating information may be submitted in its entirety to the examining medical professional.

**Please complete the following:**

| Date (MM/DD/YYYY) | Time | Pay Location | Facility |
|---|---|---|---|
| 07/15/05 | | 000 | USPIS, San Francisco Division |

| Employee's Name | Social Security No. |
|---|---|
| Marilyn N. Lee | 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 |

| Street Address | Telephone No. (Include Area Code) |
|---|---|
| 951 Bradley Dr | 650/755-1443 |

| City | State | ZIP Code |
|---|---|---|
| Daly City | CA | 94015-3667 |

| Tour and Hours | Nonscheduled Days |
|---|---|
| 7:30am - 4:30pm | S/S |

| Job Title | Duty Status |
|---|---|
| Inspection Service Operations Coordinator | Admin Leave |

Is This Request Due to a Job Related Injury or Illness?    ☐ Yes    ☒ No

Date of Injury (MM/DD/YYYY): 07/13/05

Reason for Requesting the Fitness-for-Duty Examination: (Additional information may be submitted on a separate page)

SEE ATTACHED NARRATIVE

| Supervisor's Name | Telephone No. (Include Area Code) |
|---|---|
| S. N. Castor, Admin Specialist | 415/778-5890 |

Supervisor's Signature: *S. Castor*    Date (MM/DD/YYYY): 07-18-2005

**Approved By:**

| Facility Manager's Name | Telephone No. (Include Area Code) |
|---|---|
| W. P. Atkins, Inspector in Charge | 415/778-5999 |

Facility Manager's Signature: *W. P. Atkins*    Date (MM/DD/YYYY):

**In the event this is an emergency fitness for duty request, please supply the following:**

Employee Taken to:    ☐ Health Unit    ☐ Contract Clinic    ☐ Emergency Facility

Name and Location

PS Form 2492, August 2000                                    Copy to Manager, Human Resources

PS Form 2492 –
Reason for Requesting the Fitness-for-Duty Examination

On July 13, 2005, Inspector Diaz, Acting Assistant Inspector in Charge, San Francisco Division requested Marilyn Lee, Administrative Support Center Supervisor, to come to my office. Ed Lawee, Postal Attorney was present in my office and wished to speak to Lee relative to a separate pending EEO matter unrelated to her which needed clarification. As Lee entered my office, I noticed her facial expressions were stern and that something was bothering her. I asked her in the presence of Lawee if something was wrong and she responded no but Lawee and I recognized Lee was attempting to refrain from crying. As Lee had answered Lawee's questions and had left my office, Lawee commented to me that something was obviously wrong and bothering Lee, in which I agreed. Lawee departed my office as our business had ended. Therefore, I walked over to Lee's office as I was concerned.

While inside Lee's office, I immediately asked her if I had done anything to her because I told her I noticed that the last several times I had seen her she seemed to be upset about something and she was not talking to me as she normally had in the past. She began crying so I closed her office door. She said "things" had become worse. I said to her that I thought things for her were better now as the last actual conversation I had had with her in the Security hallway, she had said she was happier and had developed a new attitude and was not going to let her current position effect her any longer.

(As information, Lee, formerly in the position of INC Secretary, has been detailed to supervise the administrative support center and has been highly emotionally upset by this change. This change has been in effect for over one year.)

In the course of our conversation, Lee cried profusely and said she has been humiliated by the change in her position and that she was not being respected by management, in particular, Bill Atkins, the Inspector in Charge. I reminded her that in our previous conversation (April 2005) that I had asked her not to take this change so personal and that she had been conducting an outstanding job in her position, while adding that the support staff were very happy with her in that position. I furthermore, explained that Atkins was pleased with her in her current position and that others had been changed from their positions, including myself, but that we all had a job to do and had to be flexible.

Lee continued to cry and said she had been very depressed for over a year since this change occurred and that she was having difficulty sleeping each night. She repeated while crying, "Why? Why? Why am I being treated like this? I am a good person. I am a good worker. I have been working here for many years. I've always done a great job. Why am I being ignored? I only agreed to do this detail with the understanding that I would get my position back. This is humiliating. I come in here and all I do is cry. I close my door. Everyone here knows that I'm not happy (referring to the support staff). She then pointed towards the support staff and said

they all feel the tension. "They" (the support staff) have even told me that if "they" (referring to Atkins and management) could do this to her (Lee) they could do this to any one of them (referring to the support). As she continued to say she could not understand what she did "wrong", she then told me she was even thinking about, "you know what" and leaving a letter behind that "says everything and Bill will know it was all his fault." I then said to her, "Marilyn, are you talking about hurting yourself? And she replied yes continuing to cry. She said, "I'm sorry Sally, but there's no one here I can trust and if I can't even go to my AIC – you, then what else is there to do? I even told Sheilah about I how feel, how I can't trust management and how I just need to get out of here."

I explained to Lee at this time that she knew I was going to speak to Atkins about our last conversation (April) because Lee had asked me to assist her in getting an outside detail. Lee then told me that by me talking to Atkins, it made matters worse for her and that when her merit evaluation was conducted it was worse because she was "badmouthing Bill." I apologized to her but told her I was trying to assist her and that she knew that. I told her I felt her well-being was more important at this point and felt she needed to see a doctor so she could get some help. I told her by having thoughts to doing something to herself that she should could not do anything because she has a great husband and two boys who needed her. I offered her EAP counseling and told her she needed to get some help. (I had suggested she seek counseling in April as well.) She said there was nothing a doctor or counselor would be able to do for her because she still had to be reminded everyday that she is in a "hostile work environment and that she is being harassed". She said she "feels threatened at work and that she is not safe." I then explained to her that no one had made any threats against her that I was aware of and that she was not in a hostile work environment adding if a threat was made it would then place her in fear of her physical safety and that this was not the case. She said she was very stressed out and that she feels threatened by the fact that if she talks to anyone about her feelings that management would hold it against her and possibly effect her merit in a negative way which would mean it would be difficult for her to transfer to another agency or find another job.

Marilyn, while still crying, pleaded with me to assist her in looking for an outside job and giving her my word that I would not repeat our conversation to management. She asked me to help her to distribute her resume to other federal agencies because that would be the only way she would feel better. I then asked her to forward her resume to me to which she said she would the following day as she was getting ready to leave work for the day.

The following day, July 14, 2005, she had called me and asked me if I was alone in my office to which I responded I was not. I later went to her office and again closed her door. I asked her how she was doing and feeling. She immediately began to cry hysterically. I then told her that I thought about everything we had discussed the previous day and that she had placed me in a bad position as AAIC. I discussed with her a similar situation that had occurred with me about eight years prior in which someone had come to me and said they were thinking about hurting themselves and that I failed to do the right thing. I explained to her that I was not a

professional counselor nor a doctor or psychiatrist, psychotherapist or any one who could assist her professionally. I told her I had a moral and legal obligation to assist her since she had told me she was having thoughts to harm herself. She then said, "I know. I'm sorry. I'm sorry. I know I thought about everything I said to you and I know it's a cry for help so I went ahead and scheduled a doctor's appointment for myself for Friday at 2:30 PM." I told her she had placed me in a position to do something and she, while continuing to cry, pleaded for me not to say anything to management. She told me she would not say anything to anyone nor mention she had our conversation. I asked her to provide me with written documentation from her medical provider and to call me upon leaving her doctor appointment on Friday. As she cried she said he was sorry that things had gone this far, but that she was serious and that Bill was not taking her seriously, that she did not matter to him because she could not understand why he was treating her this way. She repeated to me that she did not deserve to be stressed at work and that she planned to file an EEO because her INC secretarial position was being considered to be upgraded to a Level 16 pay and that she deserved to be in it as she had rightfully bid for the position. As I had other matters to tend to, I told her I had not looked at her resume, at which time she thanked me and asked me to delete the first resume submitted to me and to keep the second one.

Later in the day, she called my office after she was home and asked me to answer two questions. The first was whether or not I knew if Atkins did not want her back in her INC secretarial position and the second was whether or not I knew if Atkins cared about her or if she left at all. I told her that all I knew was that Atkins was pleased with her work in the Administrative Center and the second was that I knew he did not want to lose any employee in any capacity as I believed he was interested in retaining his workforce. I asked her why she was asking me those questions and she responded that she wanted to know to assist her with her decisions and EEO.

On July 14, 2005, I contacted Atkins via telephone after arriving home from work. I explained the entire situation to him. Both of us agreed that her being moved to the Admin Center Supervisor position from her INC Secretary position has made Lee take this too far. We agreed that she is expressing herself through a warning sign to us and a cry for help. We agree that Lee needs to be evaluated as to her ability to continue to perform in her current position. Her depression has continued for over one year and she continues to cry openly among many of her staff on almost a daily basis.

Any further questions may be addressed to me directly at (415) 778-5892 or by contacting W.P. Atkins, INC at (415) 778-5999.


Sally Diaz
Acting Assistant Inspector in Charge
July 15, 2005

EXHIBIT 25

Display Employee



# ISIS
# Resource Management System (RMS)

Home Help

| Jobs | Employee | Training | Organization | Reports | Delegations |

Display Employee    Search Employee    Re-assign Direct Reports

Display Employee

## ACCOUNTABLE PROPERTY DISPLAY

Employee Name: MARILYN N LEE          Employee SSN/EIN: ***-**-**** / 01015045          Employee WRN: N/A

5 Records Found.

| Item | Item Number | Status | Date Expired |
|------|-------------|--------|--------------|
| ID CREDENTIAL OTHER | 1015045 | Assigned | |
| IMPAC CREDIT EXPENSE | 471609920000247 | Assigned | 02/28/2005 |
| INSPECTOR KEY | 26193 | Assigned | |
| J KEY | | Assigned | |
| VISA TRAVEL CARD | 448602950001801 9 | Assigned | 06/30/2007 |
| 1 | | | |

United States Postal Inspection Service

Resource Management System



Report Name: Employee Brief for LEE, MARILYN N as of 7/21/2005

Restricted Information

Division: SAN FRANCISCO (513)          Domicile / Facility: SAN FRANCISCO DHQ

## General

Name: LEE, MARILYN N

Sex: Female

Date of Birth: 05/31/1954

Veteran Preference: No Preference

Reserve Status: No

Entered USPS: 02/09/1980

Entered Inspection Service: 02/09/1980

Finance No.: 058526

Rate Schedule: E

Pay Level: 14          Pay Step: 00

Collateral Duty

Social Security Number: 3747

Retirement FICA Status: A--Converted from CSRS to FERS --Regular Employees

Inspector Appt. Computation Date:

Service Computation Date: 02/09/1980

SEP / Reinst Reason:

SEP / Reinst Date:

PPO Appointment Date:

Begin Date          End Date

## Address

Home Address: 951 BRADLEY DRIVE DALY CITY, CA 94015-3667

Mail Address: 951 BRADLEY DR DALY CITY, CA 94015-3667

Home Phone Number: (650) 755-1443



United States Postal Inspection Service

Resource Management System

Restricted Information

Report Name: Employee Brief for LEE, MARILYN N as of 7/21/2005

## Current Assignment

Job No.: M-33088

Assignment Name: SECRETARY

Qualified Assignment: ADMINISTRATIVE SUPPORT

Division: SAN FRANCISCO

Job Level: 14

Rate Schedule: E

Pay Level: 14        Pay Step: 00

Domicile / Facility: SAN FRANCISCO DHQ

Effective Date: 06/26/1993

Team No.:

## Office Address

Office Address: 390 MAIN ST FL 3 - EPC SAN FRANCISCO, CA 94105-2014

Individual Phone: (415) 778-5894

Fax: (415) 778-5822

General Office Phone: (415) 778-5800

24-Hour Phone: (415) 778-5900

Print Date: 07/21/05
Print Time: 11:12

United States Postal Inspection Service

Resource Management System

Restricted Information

Report Name: Employee Brief for LEE, MARILYN N as of 7/21/2005

## Prior Inspection Service Assignments

| Date | Job No. | Rate Schedule | Pay Level | Pay Step | Job Level | Assignment Name | Division | Domicile / Facility |
|------|---------|---------------|-----------|----------|-----------|-----------------|----------|---------------------|
| 04/04/1992 | M-18169 | E | 14 | 09 | 14 | SECY/STENO | ISOSG S SANFRAN CA | S SAN FRAN ISOSG(SBG1) CA |
| 06/11/1983 | M-18730 | E | 12 | 09 | 12 | OTHER ADMIN | ISOSG S SANFRAN CA | S SAN FRAN ISOSG(SBG1) CA |
| 06/11/1983 | M-18730 | E | 12 | 08 | 12 | OTHER ADMIN | ISOSG S SANFRAN CA | S SAN FRAN ISOSG(SBG1) CA |
| 06/11/1983 | M-18730 | E | 12 | 07 | 12 | OTHER ADMIN | ISOSG S SANFRAN CA | S SAN FRAN ISOSG(SBG1) CA |
| 06/11/1983 | M-18730 | E | 12 | 06 | 12 | OTHER ADMIN | ISOSG S SANFRAN CA | S SAN FRAN ISOSG(SBG1) CA |
| 06/11/1983 | M-18730 | E | 12 | 05 | 12 | OTHER ADMIN | ISOSG S SANFRAN CA | S SAN FRAN ISOSG(SBG1) CA |
| 06/11/1983 | M-18730 | E | 12 | 04 | 12 | OTHER ADMIN | ISOSG S SANFRAN CA | S SAN FRAN ISOSG(SBG1) CA |



United States Postal Inspection Service

Resource Management System

Report Name: Employee Brief for LEE, MARILYN N as of 7/21/2005

Restricted Information

## Specialized Experience

| Area of Experience | Skill Description | Start Date | End Date | State (Bar Admission) |
|---|---|---|---|---|

## Completed Degree Programs

| Degree Level | Major | Year Acquired | School |
|---|---|---|---|

## Scheduled Training Courses

| Course Number | Section Number | Start Date | End Date | CEU Hours | Course Hours | Location | Course Title |
|---|---|---|---|---|---|---|---|



United States Postal Inspection Service

Resource Management System

Restricted Information

Report Name: Employee Brief for LEE, MARILYN N as of 7/21/2005

## Completed Training Courses

| Course Number | Section Number | Start Date | End Date | CEU Hours | Course Hours | Sponsor | Course Title |
|---|---|---|---|---|---|---|---|
| 72212-01 | 70554 | 06/09/2005 | 06/09/2005 | 0.00 | 8 | CAREER DEVL DIV | I.E.M.P. Training |
| 12011-00 | 70554 | 06/01/2005 | 06/01/2005 | 0.00 | 1 | SAN FRANCISCO | USPIS/OIG Working Together |
| 12207-00 | 70554 | 05/23/2005 | 05/26/2005 | 0.00 | 24 | HQ OFFICE | Diversity Leadership Development Program Annual Training Seminar |
| 72202-02 | 70554 | 10/25/2004 | 10/28/2004 | 0.00 | 28 | CAREER DEVL DIV | STP Phase 2 - Team Leaders |
| Course27695 | 53342 | 09/28/2004 | 09/28/2004 | 0.00 | 1 | ST LOUIS | ediary Job Aid |
| E-2682 | 53342 | 07/12/2004 | 07/16/2004 | 0.00 | 40 | ST LOUIS | ANALYTICAL INVESTIGATIONS METHODS |
| E-2683 | 70554 | 07/12/2004 | 07/16/2004 | 0.00 | 40 | ST LOUIS | ANALYTICAL INVESTIGATIONS METHODS (AIM) |
| 12215-99 | 53342 | 06/16/2004 | 06/17/2004 | 0.00 | 12 | CAREER DEVL DIV | ISIIS Case Management TACS |
| Course27060 | E43624 | 03/23/2004 | 03/23/2004 | 0.00 | 8 | SAN FRANCISCO | Train-the-Trainer |
| E-21063 | E43624 | 10/23/2003 | 10/24/2003 | 0.00 | 16 | SAN FRANCISCO | RESOURCE MANAGEMENT SYSTEM TRAINING |
| E-24160 | E14643 | 09/19/2003 | 09/19/2003 | 0.00 | 4 | SAN FRANCISCO | VICTIM WITNESS ASSISTANCE PROGRAM TRAIN |
| E-20358 | E31764 | 07/15/2003 | 07/15/2003 | 4.00 | 4 | SAN FRANCISCO | PS FORM 991 TRAINING |
| E-3582 | E46831 | 07/01/2003 | 07/01/2003 | 3.00 | 6 | SAN FRANCISCO | AUTOTRACK TRAINING |
| E-7070 | E17692 | 05/29/2003 | 05/29/2003 | 0.00 | 1 | P & A SVC CTR | CURRENT EVENTS IN THE MIDDLE EAST |
| E-21533 | E39852 | 04/23/2003 | 04/23/2003 | 0.00 | 8 | SAN FRANCISCO | SECRETARIES, ADMIN ASSTS, SUP TRNG CONF |
| E-22490 | E22967 | 04/23/2003 | 04/23/2003 | 0.00 | 8 | SAN FRANCISCO | SUCCESS STRATEGIES PEAK PERFORMANCE |
| E-7860 | E33543 | 04/17/2003 | 04/17/2003 | 0.00 | 1 | INACTIVE DOM | DIVERSITY-PIONEERS OF AFRICA, WORLD VIS. |
| E-7832 | E16606 | 02/12/2003 | 02/12/2003 | 0.00 | 1 | SAN FRANCISCO | DIVERSITY PRESENTATON-MICHAEL HINGSON |



United States Postal Inspection Service

Resource Management System

Restricted Information

## Completed Training Courses

Report Name: Employee Brief for LEE, MARILYN N as of 7/21/2005

| Course Number | Section Number | Start Date | End Date | CEU Hours | Course Hours | Sponsor | Course Title |
|---|---|---|---|---|---|---|---|
| E-18572 | E53166 | 01/29/2003 | 01/29/2003 | 0.00 | 2 | SAN FRANCISCO | OATH OF HONOR |
| 10134 | 011804 | 09/25/2002 | 09/27/2002 | 0.00 | 0 | SAN FRANCISCO | PRE-RETIREMENT COUNSELING |
| E-23679 | E46442 | 09/23/2002 | 09/23/2002 | 0.00 | 2 | SAN FRANCISCO | TRIP MANAGER TRAVEL TRAINING |
| E-7830 | E17074 | 07/18/2002 | 07/18/2002 | 0.00 | 3 | SAN FRANCISCO | DIVERSITY PRESENTATION |
| E-9100 | E40970 | 07/11/2002 | 07/11/2002 | 0.00 | 2 | SAN FRANCISCO | EBUY NETWORKING TRAINING |
| 10411 | 011779 | 06/07/2002 | 07/22/2002 | 0.00 | 1 | HQ OFFICE | WORKPLACE VIOLENCE: FIRST LINE DEFENSE |
| 10400 | 011778 | 06/06/2002 | 07/22/2002 | 0.00 | 2 | HQ OFFICE | WITH INVOLVEMENT SECURITY IS EASY |
| 10410 | 011786 | 03/11/2002 | 05/30/2002 | 0.00 | 1 | HQ OFFICE | INFORMATION SECURITY AWARENESS |
| 10408 | 011782 | 03/11/2002 | 05/30/2002 | 0.00 | 1 | HQ OFFICE | THE ATTITUDE VIRUS |
| E-4305 | E35989 | 02/21/2002 | 02/21/2002 | 0.00 | 1 | SAN FRANCISCO | BLACK HISTORY PRESENTATION |
| 10379 | 012841 | 02/18/2002 | 06/10/2003 | 1.00 | 2 | HQ OFFICE | SEXUAL HARASSMENT PREVENTION |
| 10414 | 012840 | 02/18/2002 | 06/10/2003 | 0.00 | 1 | HQ OFFICE | STRESS MASTERY FOR THE AMERICAN WORKER |
| 10413 | 012839 | 01/12/2002 | 06/10/2003 | 0.00 | 1 | HQ OFFICE | BE S.A.F.E/PREVENTING VIOLENCE-WORKPLACE |
| E-21850 | E19853 | 08/18/2001 | 08/18/2001 | 0.00 | 16 | SAN FRANCISCO | SGMP RETREAT |
| 10407 | 010736 | 06/14/2001 | 06/14/2001 | 2.00 | 2 | HQ OFFICE | E-TRAVEL TRAINING |
| E-21992 | E36057 | 05/17/2001 | 05/17/2001 | 0.00 | 8 | SAN FRANCISCO | SOC GOVERNMENT MTG |
| E-21999 | E47654 | 03/16/2001 | 03/16/2001 | 0.00 | 8 | SAN FRANCISCO | SOCIETY OF GOVERNMENT PROFESSIONALS MEETING PROFESSION |
| 10402 | 010735 | 01/30/2001 | 01/30/2001 | 0.00 | 1 | SAN FRANCISCO | DISABILITY AWARENESS |
| E-22860 | E16136 | 01/17/2001 | 01/17/2001 | 0.00 | 8 | SAN FRANCISCO | TEAM BUILDING-DR. CLUE TREASURE HUNT |
| E-24957 | E32117 | 12/07/2000 | 12/07/2000 | 0.00 | 8 | SAN FRANCISCO | WORD AUTOMATION FEATURES |



United States Postal Inspection Service

Resource Management System

Restricted Information

## Completed Training Courses

Report Name: Employee Brief for LEE, MARILYN N as of 7/21/2005

| Course Number | Section Number | Start Date | End Date | CEU Hours | Course Hours | Sponsor | Course Title |
|---|---|---|---|---|---|---|---|
| 10049 | 009694 | 11/28/2000 | 11/28/2000 | 0.00 | 8 | SAN FRANCISCO | CPR-COMMUNITY-AMERICAN RED CROSS |
| 10399 | 009616 | 11/20/2000 | 11/20/2000 | 0.00 | 1 | SAN FRANCISCO | MICROSOFT ACCESS 97 |
| 10392 | 010342 | 07/18/2000 | 07/19/2000 | 0.00 | 1 | CAREER DEVL DIV | CONFIDENTIAL FUNDS PROGRAM TRAINING |
| 12222-00 | 009180 | 05/03/2000 | 05/03/2000 | 0.00 | 1 | SAN FRANCISCO | Bloodborne Pathogens |
| 10380 | 008787 | 05/03/2000 | 05/03/2000 | 1.00 | 0 | HQ OFFICE | BUILDING A BETTER WORKPLACE |
| E-755 | E26333 | 05/02/2000 | 05/03/2000 | 10.00 | 10 | SAN FRANCISCO | 2000 DIVISION CONFERENCE |
| 10383 | 009176 | 05/02/2000 | 05/02/2000 | 2.00 | 0 | HQ OFFICE | SEXUAL HARASSMENT AWARNESS & PREVENTION |
| E-2652 | E16240 | 04/28/2000 | 04/28/2000 | 0.00 | 8 | SAN FRANCISCO | AN AFFAIR TO REMEMBER FOR SECRETARIES |
| 10373 | 008613 | 03/09/2000 | 03/09/2000 | 7.00 | 1 | INFO TECHNOLOGY | INFORMATION TECHNOLOGY INFRASTRUCTURE |
| 10166 | 008110 | 12/15/1999 | 12/15/1999 | 1.00 | 1 | HQ OFFICE | ETHICS TRAINING |
| E-20377 | E24464 | 12/01/1999 | 12/01/1999 | 0.00 | 2 | SAN FRANCISCO | PSTN BROADCAST - IMPAC |
| E-18993 | E41255 | 05/20/1999 | 05/20/1999 | 0.00 | 8 | SAN FRANCISCO | OVERCOMING INFORMATION OVERLOAD |
| E-698 | E24429 | 05/05/1999 | 05/05/1999 | 8.50 | 16 | SAN FRANCISCO | 1999 DIVISION TRAINING CONFERENCE |
| 10366 | 007848 | 02/03/1999 | 02/03/1999 | 1.00 | 1 | SAN FRANCISCO | WE DELIVER |
| 10361 | 006092 | 11/03/1998 | 11/03/1998 | 2.00 | 2 | INFO TECHNOLOGY | TTT TRAINING & MIGRATION INSTRUCTION |
| 10357 | 006405 | 10/21/1998 | 10/21/1998 | 8.00 | 8 | SAN FRANCISCO | MS OUTLOOK '98 |
| 10346 | 006452 | 10/16/1998 | 10/16/1998 | 8.00 | 8 | SAN FRANCISCO | MS EXCEL 97 - INTRODUCTION |
| 10344 | 006432 | 09/24/1998 | 09/24/1998 | 8.00 | 8 | SAN FRANCISCO | MS WORD 97 - INTRODUCTION |
| E-9572 | E39732 | 06/04/1998 | 06/04/1998 | 0.00 | 2 | SAN FRANCISCO | ERGONOMICS COURSE |
| 10049 | 005436 | 06/01/1998 | 06/01/1998 | 0.00 | 8 | SAN FRANCISCO | CPR-COMMUNITY-AMERICAN RED CROSS |



United States Postal Inspection Service

Resource Management System

Restricted Information

## Completed Training Courses

Report Name: Employee Brief for LEE, MARILYN N as of 7/21/2005

| Course Number | Section Number | Start Date | End Date | CEU Hours | Course Hours | Sponsor | Course Title |
|---|---|---|---|---|---|---|---|
| E-3723 | E14869 | 04/28/1998 | 04/29/1998 | 13.00 | 16 | SAN FRANCISCO | BASIC AND INTERMEDIATE ACCESS |
| E-8294 | E15477 | 10/03/1997 | 10/06/1997 | 5.00 | 10 | SAN FRANCISCO | DLC - MS INTRO TO WINDOWS '95, VOL 1 & 2 |
| 10325 | 004661 | 05/05/1997 | 05/06/1997 | 0.50 | 0 | SAN FRANCISCO | STRATEGIC FOCUS-BUSINESS INDIC. & GOALS |
| 10326 | 004662 | 05/05/1997 | 05/06/1997 | 0.50 | 0 | SAN FRANCISCO | STRATEGIC FOCUS-CUSTOMER PERFECT |
| 10328 | 004664 | 05/05/1997 | 05/06/1997 | 0.50 | 0 | SAN FRANCISCO | STRATEGIC FOCUS-EVA |
| 10327 | 004663 | 05/05/1997 | 05/06/1997 | 0.50 | 0 | SAN FRANCISCO | STRATEGIC FOCUS-COMPETITION |
| 10330 | 004670 | 04/28/1997 | 04/28/1997 | 0.00 | 1 | CAREER DEVL DIV | PROPERTY/EVIDENCE HANDLING PROCEDURES |
| E-6161 | E30734 | 03/11/1997 | 03/11/1997 | 0.00 | 2 | SAN FRANCISCO | CONFIDENTIAL FUNDS PROGRAM |
| E-9528 | E13582 | 02/12/1997 | 02/12/1997 | 0.00 | 7 | SAN FRANCISCO | INSTRUCTOR |
| E-4918 | E17965 | 01/07/1997 | 01/07/1997 | 8.00 | 2 | SAN FRANCISCO | ENHANCED DEC TRAINING |
| E-24329 | E42877 | 06/25/1996 | 06/28/1996 | 0.00 | 5 | CAREER DEVL DIV | CASE MANAGEMENT |
| E-8360 | E33466 | 06/14/1996 | 06/14/1996 | 2.50 | 6 | SAN FRANCISCO | VOE - TRAIN THE TRAINER |
| E-8365 | E33694 | 04/19/1996 | 04/19/1996 | 2.50 | 6 | SAN FRANCISCO | DLC - POWERPOINT 4.0, ADVANCED |
| E-8479 | E30043 | 04/17/1996 | 04/17/1996 | 3.00 | 6 | SAN FRANCISCO | DLC - POWERPOINT 4.0, INTRODUCTION |
| 10270 | 002253 | 03/13/1996 | 03/14/1996 | 8.00 | 16 | SAN FRANCISCO | DLC - WINDOWS 3.1 INTRODUCTION |
| 10271 | 002366 | 01/25/1996 | 01/26/1996 | 16.00 | 16 | HQ OFFICE | INCREASING HUMAN EFFECTIVENESS |
| E-13283 | E48630 | 01/13/1996 | 01/13/1996 | 0.00 | 4 | SAN FRANCISCO | VALUING DIVERSITY |
| 10189 | 001514 | 12/13/1993 | 12/17/1993 | 36.00 | 36 | CAREER DEVL DIV | IMPAC TRAINING SESSION RECITAL |

United States Postal Inspection Service

Resource Management System

Restricted Information

Report Name: Employee Brief for LEE, MARILYN N as of 7/21/2005

## Completed Training Courses

| Course Number | Section Number | Start Date | End Date | CEU Hours | Course Hours | Sponsor | Course Title |
|---|---|---|---|---|---|---|---|
| E-6697 | E42748 | 11/30/1992 | 11/30/1992 | 0.00 | 8 | ISOSG S SANFRAN | CREATE NEWSLETTERS PEOPLE WILL READ |
| 10118 | 000821 | 08/14/1992 | 08/14/1992 | 8.00 | 8 | ISOSG S SANFRAN | POWERFUL COMMUNICATION SKILLS FOR WOMEN |
| E-22800 | E21084 | 08/13/1992 | 08/13/1992 | 0.00 | 8 | ISOSG S SANFRAN | TAKE CHARGE ASSISTANT |
| 10107 | 000345 | 09/06/1991 | 09/06/1991 | 0.00 | 8 | ISOSG S SANFRAN | DEC WORD PROCESSING INTRODUCTION |

United States Postal Inspection Service

Resource Management System

Restricted Information

Report Name: Employee Brief for LEE, MARILYN N as of 7/21/2005

## Reserved

This area was left blank intentionally

## Health Examination

| Examination Name | Issue Date | Rating Description | Date Rating Received | Exam Status | Date Completed |
|---|---|---|---|---|---|

## Accountable Property - Other

| Date Assigned | Item | Item Number | Status | Date Expired |
|---|---|---|---|---|
| 08/27/2004 | IMPAC CREDIT EXPENSE | 471609920000247 | Assigned | 2/28/2005 |
| 08/27/2004 | INSPECTOR KEY | 26193 | Assigned | |
| 08/27/2004 | J KEY | | Assigned | |
| 08/27/2004 | VISA TRAVEL CARD | 4486029500018019 | Assigned | |
| 02/07/2005 | ID CREDENTIAL OTHER | 1015045 | Assigned | 6/30/2007 |

## Accountable Property - Firearms

| Date Assigned | Serial Number | Make | Model | Type | Ownership |
|---|---|---|---|---|---|

# EXHIBIT 26

## Marilyn Lee's Accomplishments for FY2004

From October 1, 2003 to June 14, 2004, I served as the Secretary to the Inspector in Charge. These are my accomplishments for that assignment and time period:

Keep management apprised of important notices of deadlines, meetings, and events by recording them on their calendar, emails or phone calls.

Scheduled management's travel, lodging needs and log events on their calendar. Do cost comparison with airlines and hotels to provide managers with the best deals in comparison to government pricing. Do cost comparison of catering services and purchasing of products for events and mementos.

Ensured maintenance of the front office was done timely and routinely to provide a pleasant and suitable environment for managers and guests.

Scheduled conference rooms and events with Division and nonDivision employees.

Updated personnel changes in a timely fashion as the changes impacted telephone listings, distribution listings, and case management. Prepared organizational charts.

Prepared weekly bulletins as information to Division personnel which may include write ups of new personnel and retiring employees.

Prepared and recorded award certificates and checks. Created and prepared letters of commendation or recognition for InC signature.

As a member of the Division Conference Committee, worked on getting site hotel and negotiated with hotel for rate, number of rooms and catering expenses. Assisted in finding or contacting speakers for conference. Assisted in processing expense reimbursements for the speakers and audio personnel. Assisted in getting expenses recorded properly by individual attendees through eTravel by giving them step-by-step instructions. Tracked and reported expenses incurred for Division Conference.

Prepared EEO materials, job postings/announcements and sensitive documents in confidentiality.

Other duties included etravel Coordinator, RMS Coordinator, Division impac cardholder, and member of the Coffee Committee.

Recommended an applicant for Postal Inspector. Applicant was accepted and successfully finished CDD. Applicant is now an Inspector assigned to the San Francisco Division.

-2-

From June 15, 2004 to present, I am detailed as the Operations Coordinator for the Administrative Center. These are my accomplishments for this assignment and time period:

As one of the case management coordinators for the Division, I assisted in developing case management system to a level where case management is successfully implemented throughout the Division. Based on the number of arrests and IDs reported for the San Francisco Division, the ISIIS case management system is showing statistics favorable of the Division's success in meeting and exceeding goals.

Because the direct ISOTs do more case management entries for the Inspectors, the Admin Center employees have limited experience with case management entries except for closing the cases. The Admin Center employees however are able to get into case management and make modifications.

Six ISOTS at DHQ and one ISOT detailed at San Jose Domicile are assigned to me for supervision. Immediately upon my assignment as their supervisor, I discovered the Admin Center employees at DHQ more knowledgeable about their jobs than I am and can perform them without my supervision.

Once the Admin Center employees were given accesses to Division folders and introduced to new computer programs, they were able to accomplish more tasks. They were given new assignments and are also learning other employee's jobs as backup.

The Admin Center employees have access to my calendar to post absences. As only two employees from the Center can take leave at the same time, by checking my calendar, the other employees can plan their leave and phone/mail coverage assignments. One ISOT's job assignment was changed so that she covers the phones for most of the day. This decision was made so that other employees who have more skills and knowledge of essential operations could respond to more immediate requests, such as NCIC/NLETS inquiries, Budget, Iscoms, National Communications, etc.

I assisted in arranging NCIC/NLETS training for support personnel and requested the assistance of Los Angeles ISOT Sandra Flores to facilitate the training. Four DHQ Admin. Center employees have NCIC/NLETS query access and two employees and I have full NCIC/NLETS access. The San Jose ISOT has NCIC/NLETS query access. The Admin Center team is preparing to take the number of requests when the Division's Communications Center shuts down.

My goal during my detail with the Admin Center is to visit San Jose domicile and spend some time with ISOT Kelly Miller who reports to me. Due to time constraints, I have not fully grasped to learn all the assignments of the Admin Center such as ISNATs, ISPEMS, Budget, TACs, etc. I am going through the online course of Supervisory training and will be attending supervisory training at CDD. Basically, I discovered the

assignment as the Admin Center supervisor is to provide the appropriate skills, training, and knowledge to those Admin Center employees for continuing operations in the event of absences.

It is my understanding that I accepted this supervisory detail for promotional opportunity and will be switching with Barbara Mendes at the end of December 2004 as the Supervisor for the Direct Support until June 14, 2005.  Unless I apply for a desired higher level position and get the higher level position or request for a higher level detail, I am and will return to my official position as the secretary to the Inspector in Charge.

# EXHIBIT 27

Marilyn Lee – FY 2004 Yearend Evaluation
November 5, 2004

Marilyn served approximately half the year as my personal secretary, then volunteered to serve as the ISOC for the remainder of the FY.  This move was required because of significant personnel issues and conflicts in the admin center that needed to be addressed.  Marilyn took over that supervisory role and was able to turn the section around while increasing productivity and practically eliminating dissent.

Marilyn's strength is in her supervisory abilities.  I cannot understate this observation, because even though she was an excellent secretary, Marilyn has proved she can address significant problem areas and come up with equitable solutions.  The morale of the admin staff, their ability to work as a team, and their subsequent improvement in productivity are directly attributable to Marilyn's interpersonal and supervisory abilities.

Marilyn took over her supervisory duties at my personal request, and not because it was a position she desired.  Subsequently, Marilyn has proven herself to be indispensable to the organization in this role.  I have nothing but high praise for her contributions as secretary, but the additional responsibility and scope of her new assignment really pinpointed Marilyn's strengths.  I have no recommendations for Marilyn's improvement during FY 2005.  I will continue to recommend Marilyn for various training and educational courses in order to more firmly develop her leadership and management qualities while enabling her to become more and more competitive for more challenging assignments.

W. P. Atkins

W.P. Atkins
Inspector in Charge
San Francisco Division

# EXHIBIT 28

From:
Sent:    Diaz, Araceli S.
         Tuesday, July 13, 2004 12:45 PM
To:

Cc:
Subject:    MUST READ!! Team Leader meeting Notes

INC began discussing the info he had based upon the Resource Deployment team.
    Report from RDT is not back yet but he had conversations with Chief last week and shared the following:
    We will have 10 new students by end of FY which will bring the Division over complement by 8 to 10 bodies. Chief has increased our complement by that.
    FI team will be created (TL + 5 per my private meeting with Bethel after TL meeting)
    INC has asked for two teams in San Jose ( 1 EC and 1 miscellaneous) INC doesn't know outcome of that yet.
    Second TL in Sacramento (telephone interviews to be held tomorrow then he'll announce the new TL)
    Hawaii (TL + 8 including Guam)  (I thought he said 8; I may have been dreamin' at time; It's probably less) That's what my notes say.
    Fresno to receive an additional body
    Bakersfield to get additional body, making it 2 in Bakersfield, 3 in Fresno, plus 2 in Stockton.
    Already have 2 in Reno (INC said thanks to Hofheins for the work done in the past year; key to getting Brucklacher there)

INC wanted to thank everyone's work efforts which got us the additional resources. He discussed a National Com. out of Hawaii where Chris Siorus and Jason Crowe assisted in getting a fugitive apprehended (example how to do team work in problem areas like FI)


INC then discussed the National Leadership Meeting recently attended:

Everyone has to go through Mail Flow training by December 1st. There's a 5 day intensive course and 2 day modified refresher course. The 5 day will be held at a P & DC. They are looking for at least 4 volunteers otherwise people will be designated who have had OMC, Operational Audit and Developmental Audit backgrounds to become "train the trainers" for this Mail Flow training. This is due to BDS (biological detection systems being implemented at various P & DCs. The Chief wants to feel like should there be another "anthrax type alert" inspectors will have a working knowledge of how to termine where the piece of mail went in the system.

INC discussed Exceptional Funding for 2005:  Zero, Zero, Zero (no money) but we do have some money to spend in the next three months. Therefore, we need to get requests for items in excess of $3000 or more in to Sheilah now.  (I wonder if I can include getting a digital camera for each member and/or a VCR monitor for each for video review purposes? I'll have to inquire.)

Budget so far is already exceeded by 15% due to Crabb's team and the San Jose bomb case. SJ bomb task force members: Y. Dingui, B. Markwell, J. Woo, Barry Mew, T. Eto, M. Herzog lead by Thiede. Due to the complexity of this capital murder case, Thiede may be tapping on other resources and the INC said that case is top priority over any of our team priorities  ("supersedes" is the word INC used) so we need to comply with whatever Thiede may request.

New Credentials: Supposed to be out this month. Any new inspector after August 2003 needs to have a new photo taken and signature card completed. Linda Joe to coordinate.

Chief talked at great length about the OIG and the existing non-existent relationship. There are still certain issues in particular when it comes to "independence". Here in CA, the OIG's merits are based on 85% of their cases being worked jointly with us. INC said that is not happening. He said no team member is to work with any OIG agent in any case



1

# EXHIBIT 29



United States Postal Inspection Service

Resource Management System

Restricted Information

Report Name: Job Assignment

Requestor: USPSIEV/Bailey; Environment: HON

**Division:** SAN FRANCISCO (513)

**Job Number:** 2914

**Domicile:** SAN FRANCISCO DHQ

**Office Address:** 390 MAIN ST FL 3 - EPC

**City, State Zip:** SAN FRANCISCO, CA 94105

**Individual Office Phone**     Commercial: (415) 778-5961

**General Office Phone**     Commercial: (415) 778-5800     Fax: (415) 778-5822

                          24-Hour:     (415) 778-5900

**Job Level:** 14

**Qualified Assignment:** ADMINISTRATIVE SUPPORT

**Team Number:**

**Employee Type:** Support Staff

**Domicile Des:** SFC

**Activation Date:** 05/01/1993

**Last Revision Date:** 02/28/2004

**Assignment Name:** INSPECTION SERVICE OPERATIONS COORD

**Job Description**
LEADS AND PARTICIPATES IN THE CONDUCT OF A VARIETY OF ADMINISTRATIVE AND CLERICAL FUNCTIONS AND PROCESSES IN SUPPORT OF THE INVESTIGATIVE AND OPERATIONAL ACTIVITIES, PLANS, AND PROGRAMS OF AN INSPECTION SERVICE ORGANIZATIONAL UNIT. SUPERVISED BY: ADMINISTRATIVE SPECIALIST.

**Supervisor:** Yes

**Administrative Area:** OPERATIONS SUPPORT

**Incumbent SSN (Last Four):** 2666

**Name:** GRAHAM, KAYCEE E

**Effective Date:** 7/10/2004  12:00:00

EXHIBIT 30

```
USPS FIN   10-2028                              INCENTIVE AWARDS REPORTING
MINNEAPOLIS ISC                              HEADQUARTERS DETAIL - NON BARGAINING
REPORT: AAG455P4                                    FOR: AP 02, FY 2006
B/A: 66  INSPEC FIELD DIVISION
```

| CAT | DESCRIPTION | EMPLOYEE NAME | PAY AMOUNT | FINANCE | POST OFFICE NAME |
|-----|-------------|---------------|-----------:|---------|------------------|
| 33 | SPOT NON-CASH | PATRICK W DORN | | | |
| 33 | SPOT NON-CASH | ANTHONY M WICK | 198.80 | 05-8526 | |
| 33 | SPOT NON-CASH | ANTHONY M WICK | 500.00 | 05-8526 | |
| 33 | SPOT NON-CASH | CHRISTOPHER J MCCOLLOW | 265.09 | 05-8526 | |
| 33 | SPOT NON-CASH | CHRISTOPHER J MCCOLLOW | 500.00 | 05-8526 | |
| 33 | SPOT NON-CASH | STEVEN V LAMP | 265.09 | 05-8526 | |
| 33 | SPOT NON-CASH | STEVEN V LAMP | 500.00 | 05-8526 | |
| 33 | SPOT NON-CASH | PATRICIA G FORD SMITH | 265.09 | 05-8526 | |
| 33 | SPOT NON-CASH | PATRICIA G FORD SMITH | 500.00 | 05-8526 | |
| 33 | SPOT NON-CASH | JUDE B DENSLEY | 198.80 | 05-8526 | |
| 33 | SPOT NON-CASH | JUDE B DENSLEY | 500.00 | 05-8526 | |
| 33 | SPOT NON-CASH | JUDY A MC DERMOTT | 265.09 | 05-8526 | |
| 33 | SPOT NON-CASH | JUDY A MC DERMOTT | 500.00 | 05-8526 | |
| 33 | SPOT NON-CASH | KATHRYN M DERKEY | 198.80 | 05-8526 | |
| 33 | SPOT NON-CASH | KATHRYN M DERNEY | 500.00 | 05-8526 | |
| 33 | SPOT NON-CASH | JIM  WOO JR | 198.80 | 05-8526 | |
| 33 | SPOT NON-CASH | JIM  WOO JR | 500.00 | 05-8526 | |
| 33 | SPOT NON-CASH | FRANK L DUCAR | 198.80 | 05-8526 | |
| 33 | SPOT NON-CASH | FRANK L DUCAR | 500.00 | 05-8526 | |
| 33 | SPOT NON-CASH | JOHN E HUMMEL | 198.80 | 05-8526 | |
| 33 | SPOT NON-CASH | JOHN E HUMMEL | 500.00 | 05-8526 | |
| 33 | SPOT NON-CASH | LINDA M RUSSO | 198.80 | 05-8526 | |
| 33 | SPOT NON-CASH | LINDA M RUSSO | 500.00 | 05-8526 | |
| 33 | SPOT NON-CASH | CATHY P NGUYEN | 198.80 | 05-8526 | |
| 33 | SPOT NON-CASH | CATHY P NGUYEN | 500.00 | 05-8526 | |
| 33 | SPOT NON-CASH | QUAN P HOWARD | 198.80 | 05-8526 | |
| 33 | SPOT NON-CASH | QUAN P HOWARD | 500.00 | 05-8526 | |
| | | | 198.80 | 05-8526 | |

```
              CATEGORY 33
A/P TOTAL                      40        14,440.03
YTD TOTAL                      40        14,440.03

        EAS REC
A/P TOTAL                      43        18,440.03
YTD TOTAL                      51        29,440.03


BA CODE 66   A/P TOTAL         65        63,440.03
             YTD TOTAL         73        74,440.03
```

```
USPS FIN   10-2028                              INCENTIVE AWARDS REPORTING
MINNEAPOLIS ISC                              HEADQUARTERS DETAIL - NON BARGAINING
REPORT: AAG455P4                                    FOR: AP 03, FY 2006
B/A: 66  INSPEC FIELD DIVISION
```

| CAT | DESCRIPTION | EMPLOYEE NAME | PAY AMOUNT | FINANCE | POST OFFICE NAME |
|-----|-------------|---------------|-----------:|---------|------------------|
| 31 | SPOT CASH | DAVID A ABE | 1,000.00 | 05-8526 | SAN FRANCISCO |
| 31 | SPOT CASH | DAVID V BUTLER | 1,000.00 | 05-8526 | SAN FRANCISCO |
| 31 | SPOT CASH | JUDITH R SMITH | 250.00 | 05-8526 | SAN FRANCISCO |
| 31 | SPOT CASH | ANIFA S CABAND | 500.00 | 05-8526 | SAN FRANCISCO |
| 31 | SPOT CASH | DONAE R JONES | 1,000.00 | 05-8526 | SAN FRANCISCO |
| 31 | SPOT CASH | STEVEN G SCHILD | 1,000.00 | 05-8526 | SAN FRANCISCO |
| 31 | SPOT CASH | KAYCEE E GRAHAM | 1,000.00 | 05-8526 | SAN FRANCISCO |
| 31 | SPOT CASH | KELLY R MILLER | 250.00 | 05-8526 | SAN FRANCISCO |
| 31 | SPOT CASH | SOCORRO G FRIAS | 250.00 | 05-8526 | SAN FRANCISCO |
| 33 | SPOT | | | | |

# EXHIBIT 31



United States Postal Inspection Service

Resource Management System

Restricted Information

Report Name: Job Assignment

Requestor: USPISIEV/Bailey; Environment: HOM

**Division:** SAN FRANCISCO (513)

**Job Number:** 2914

**Domicile:** SAN FRANCISCO DHQ

**Office Address:** 390 MAIN ST FL 3 - EPC

**City, State Zip:** SAN FRANCISCO, CA 94105

**Individual Office Phone**    Commercial: (415) 778-5983

**General Office Phone**    Commercial: (415) 778-5800    Fax: (415) 778-5822

24-Hour:    (415) 778-5900

**Job Level:** 14

**Qualified Assignment:** ADMINISTRATIVE SUPPORT

**Team Number:**

**Employee Type:** Support Staff

**Domicile Des:** SFC

**Activation Date:** 05/01/1993

**Last Revision Date:** 02/28/2004

**Assignment Name:** IS OPER COORD

**Job Description**

LEADS AND PARTICIPATES IN THE CONDUCT OF A VARIETY OF ADMINISTRATIVE AND CLERICAL FUNCTIONS AND PROCESSES IN SUPPORT OF THE INVESTIGATIVE AND OPERATIONAL ACTIVITIES, PLANS, AND PROGRAMS OF AN INSPECTION SERVICE ORGANIZATIONAL UNIT. SUPERVISED BY: ADMINISTRATIVE SPECIALIST.

**Supervisor:** Yes

**Administrative Area:** OPERATIONS SUPPORT

**Incumbent SSN (Last Four):** 3152

**Name:** MENDES, BARBARA L

**Effective Date:** 6/28/2003  12:00:00

# EXHIBIT 32

## San Francisco Division's Organizational Structure

### Managers Reporting to Acting INC William P. Atkins

- Robert Bethel, Assistant Inspector in Charge
- Sally Diaz, Acting Assistant Inspector in Charge
- Sheilah Castor, Administrative Specialist
- Michael Stephan, Acting Manager, Postal Police Division
- Kaycee Graham, Acting INC Secretary

### Team Leaders Reporting to AIC Robert Bethel

- Marius Greenspan, EC San Francisco
- Pat Dorn, EC Oakland
- Frank Ducar, EC Fresno
- Patricia Ford-Smith (Acting), Sacramento Misc.
- John Hummel, EC/PMN Sacramento
- Jim Thiede, EC San Jose
- Kat Derwey (Acting), DMI San Francisco
- Terry Eto, San Jose Bomb Investigation Task Force

### Team Leaders Reporting to Acting AIC Sally Diaz

- Dave Guerra (Acting), FWC
- Regina King (Acting), IC
- Keith Silva (Acting), PMN
- Jeff Kovacs, Security/ECA
- Beatrice Moore, Fraud
- Adam Behnen, Hawaii Misc.

"S"

Drive

8/8/05

## San Francisco Division's Organizational Structure

### Administrative Support Structure

**William P. Atkins, Inspector in Charge**
- Sheilah N. Castor, Administrative Specialist
  - Linda Ng, Acting ISOC – Admin Center
  - Barbara Mendes, ISOC – Direct Support

### Postal Police Structure

**William P. Atkins, Inspector in Charge**
- Robert Bethel, Assistant Inspector in Charge
  - Michael Stephan, Acting MPPD
    - David Butler, Oakland P&DC PPOs
    - Louis Altamirano, Captain, San Francisco P&DC PPOs

8/8/05

"S" Drive

EXHIBIT 33



United States Postal Inspection Service

Resource Management System

Restricted Information

Report Name: Job Assignment

Requestor: USPISIEV/Bailey; Environment: HOMI

**Division:** SAN FRANCISCO (513)

**Job Number:** 2914

**Domicile:** SAN FRANCISCO DHQ

**Office Address:** 390 MAIN ST FL 3 - EPC

**City, State Zip:** SAN FRANCISCO, CA 94105

**Individual Office Phone**

General Office Phone

 Commercial: (415) 778-5800

  24-Hour: (415) 778-5900

**Employee Type:** Support Staff

**Domicile Des:** SFC

Fax: (415) 778-5822

**Activation Date:** 05/01/1993

**Last Revision Date:** 02/28/2004

**Job Level:** 14

**Qualified Assignment:** ADMINISTRATIVE SUPPORT

**Team Number:**

**Assignment Name:** IS OPER COORD

**Commercial:**

Job Description
LEADS AND PARTICIPATES IN THE CONDUCT OF A VARIETY OF ADMINISTRATIVE ANDCLERICAL FUNCTIONS AND PROCESSES IN SUPPORT OF THE
INVESTIGATIVE ANDOPERATIONAL ACTIVITIES, PLANS, AND PROGRAMS OF AN INSPECTION SERVICEORGANIZATIONAL UNIT. SUPERVISED BY:
ADMINISTRATIVE SPECIALIST.

**Supervisor:** Yes

**Administrative Area:** OPERATIONS SUPPORT

**Incumbent SSN (Last Four):** 5354

**Name:** CABANO, ANITA S

**Effective Date:** 6/28/2003  12:00:00

EXHIBIT 34



United States Postal Inspection Service

Resource Management System

Restricted Information

Report Name: Job Assignment

Requestor: USPS\SIEV\Bailey, Environment: HOME

Division: SAN FRANCISCO (513)

Job Number: 7518

Domicile: SAN FRANCISCO DHQ

Office Address: 390 MAIN ST FL 3 - EPC

City, State Zip: SAN FRANCISCO, CA 94105

Individual Office Phone    Commercial: (415) 778-5694

General Office Phone       Commercial: (415) 778-5800

                           24-Hour:    (415) 778-5900

                           Fax: (415) 778-5822

Job Level: 14

Qualified Assignment: ADMINISTRATIVE SUPPORT

Team Number:

Employee Type: Support Staff

Domicile Des: SFC

Activation Date: 05/01/1993

Last Revision Date: 02/28/2004

Assignment Name: SECRETARY

Job Description
SERVES AS THE PRINCIPAL SECRETARIAL, CLERICAL, AND ADMINISTRATIVE SUPPORT TO AREA MANAGERS AND PCES EXECUTIVES REPORTING TO VIC
PRESIDENTS.SUPERVISED BY: INSPECTOR IN CHARGE

Supervisor: No

Administrative Area: SECRETARY

Incumbent SSN (Last Four): 3747

Name: LEE, MARILYN N

Effective Date: 6/26/1993  12:00:00

Display Employee



## ISIS
# Resource Management System (RMS)

Home Help

Jobs | Employee | Training | Organization | Reports | Delegations |

Display Employee    Search Employee    Re-assign Direct Reports

Update Skill Set    Display Accountable Property    Employee Brief

**DISPLAY EMPLOYEE**

Employee Name: LEE, MARILYN N

SSN: ***-**-****                                WRN:

EIN: 01015045

Date of Birth: 05/31/1954

Pay / Job Level: E-14 / E-14

Occupation Code: 0318-2042

Title: Secretary

Entered USPS Date: 02/09/1980

Entered USPIS Date: 02/09/1980

Service Comp. Date: 02/09/1980

Finance # / Duty Finance #: 05-8526 / 05-8526

Division: SAN FRANCISCO

Team:

Domicile/Facility: SAN FRANCISCO DHQ

Employment Status: CAREER EMPLOYEE

Home Address: 951 BRADLEY DRIVE

Mailing Address: 951 BRADLEY DR

City: DALY CITY

City: DALY CITY

State: CA   Zip Code:94015-3667

State: CA   Zip Code:94015-3667

Home Phone: (650) 755-1443

Work Phone: (415) 778-5894

Work Cell Phone:

Work Pager:

Emergency Contact: Manford Lee

Contact Phone: (415) 652-8192

**Separate Employee**

List of Job Assignments

List of Collateral Duties

List of Skills

List of Direct Reports

Self Nominations for Detail Assignments

List Courses Taken/Scheduled

List Active Directory Information

Page 1 of 1



United States Postal Inspection Service

Resource Management System

Restricted Information

Report Name: Employee Brief for LEE, MARILYN N as of 7/21/2005

## Current Assignment

Job No.: M-33088

Assignment Name: SECRETARY

Qualified Assignment: ADMINISTRATIVE SUPPORT

Division: SAN FRANCISCO

Job Level: 14                              Effective Date: 06/26/1993

Rate Schedule: E                          Team No.:

Pay Level: 14          Pay Step: 00

Domicile / Facility: SAN FRANCISCO DHQ

## Office Address

Office Address: 390 MAIN ST FL 3 - EPC SAN FRANCISCO, CA 94105-2014

Individual Phone: (415) 778-5894          General Office Phone: (415) 778-5800

Fax: (415) 778-5822                        24-Hour Phone: (415) 778-5900

United States Postal Inspection Service

Resource Management System

Restricted Information

Report Name: Employee Brief for LEE, MARILYN N as of 7/21/2005

## Prior Inspection Service Assignments

| Date | Job No. | Rate Schedule | Pay Level | Pay Step | Job Level | Assignment Name | Division | Domicile / Facility |
|------|---------|---------------|-----------|----------|-----------|-----------------|----------|---------------------|
| 04/04/1992 | M-18169 | E | 14 | 09 | 14 | SECY/STENO | ISOSG S SANFRAN CA | S SAN FRAN ISOSG(SBG1) |
| 06/11/1983 | M-18730 | E | 12 | 09 | 12 | OTHER ADMIN | ISOSG S SANFRAN CA | S SAN FRAN ISOSG(SBG1) |
| 06/11/1983 | M-18730 | E | 12 | 08 | 12 | OTHER ADMIN | ISOSG S SANFRAN CA | S SAN FRAN ISOSG(SBG1) |
| 06/11/1983 | M-18730 | E | 12 | 07 | 12 | OTHER ADMIN | ISOSG S SANFRAN CA | S SAN FRAN ISOSG(SBG1) |
| 06/11/1983 | M-18730 | E | 12 | 06 | 12 | OTHER ADMIN | ISOSG S SANFRAN CA | S SAN FRAN ISOSG(SBG1) |
| 06/11/1983 | M-18730 | E | 12 | 05 | 12 | OTHER ADMIN | ISOSG S SANFRAN CA | S SAN FRAN ISOSG(SBG1) |
| 06/11/1983 | M-18730 | E | 12 | 04 | 12 | OTHER ADMIN | ISOSG S SANFRAN CA | S SAN FRAN ISOSG(SBG1) |



United States Postal Inspection Service

Resource Management System

Restricted Information

Report Name: Employee Brief for LEE, MARILYN N as of 7/21/2005

Division: SAN FRANCISCO (513)    Domicile / Facility: SAN FRANCISCO DHQ

## General

Name: LEE, MARILYN N

Sex: Female

Date of Birth: 05/31/1954

Veteran Preference: No Preference

Reserve Status: No

Entered USPS: 02/09/1980

Entered Inspection Service: 02/09/1980

Finance No.: 058526

Rate Schedule: E

Pay Level: 14        Pay Step: 00

Collateral Duty

Social Security Number: 3747

Retirement FICA Status: A-Converted from CSRS to FERS –Regular Employees

Inspector Appt. Computation Date:

Service Computation Date: 02/09/1980

SEP / Reinst Date:

SEP / Reinst Reason:

PPO Appointment Date:

Begin Date        End Date

## Address

Home Address: 951 BRADLEY DRIVE DALY CITY, CA 94015-3667

Mail Address: 951 BRADLEY DR DALY CITY, CA 94015-3667

Home Phone Number: (650) 755-1443



United States Postal Inspection Service

Resource Management System

Restricted Information

Report Name: Employee Brief for LEE, MARILYN N as of 7/21/2005

Division: SAN FRANCISCO (513)        Domicile / Facility: SAN FRANCISCO DHQ

## General

Name: LEE, MARILYN N

Sex: Female

Date of Birth: 05/31/1954

Veteran Preference: No Preference

Reserve Status: No

Entered USPS: 02/09/1980

Entered Inspection Service: 02/09/1980

Finance No.: 058526

Rate Schedule: E

Pay Level: 14        Pay Step: 00

Collateral Duty

Social Security Number: 3747

Retirement FICA Status: A-Converted from CSRS to FERS –Regular Employees

Inspector Appt. Computation Date:

Service Computation Date: 02/09/1980

SEP / Reinst Reason:

SEP / Reinst Date:

PPO Appointment Date:

Begin Date        End Date

## Address

Home Address: 951 BRADLEY DRIVE DALY CITY, CA 94015-3667

Mail Address: 951 BRADLEY DR DALY CITY, CA 94015-3667

Home Phone Number: (650) 755-1443



United States Postal Inspection Service

Resource Management System

Restricted Information

Report Name: Employee Brief for LEE, MARILYN N as of 7/21/2005

## Specialized Experience

| Area of Experience | Skill Description | Start Date | End Date | State (Bar Admission) |
|---|---|---|---|---|

## Completed Degree Programs

| Degree Level | Major | Year Acquired | School |
|---|---|---|---|

## Scheduled Training Courses

| Course Number | Section Number | Start Date | End Date | CEU Hours | Course Hours | Location | Course Title |
|---|---|---|---|---|---|---|---|



United States Postal Inspection Service

Resource Management System

Restricted Information

## Reserved

This area was left blank intentionally

## Health Examination

| Examination Name | Issue Date | Rating Description | Date Rating Received | Exam Status | Date Completed |
|---|---|---|---|---|---|

## Accountable Property - Other

| Date Assigned | Item | Item Number | Status | Date Expired |
|---|---|---|---|---|
| 08/27/2004 | IMPAC CREDIT EXPENSE | 4716092000000247 | Assigned | |
| 08/27/2004 | INSPECTOR KEY | 26193 | Assigned | |
| 08/27/2004 | J KEY | | Assigned | |
| 08/27/2004 | VISA TRAVEL CARD | 4486029500018019 | Assigned | 6/30/2007 |
| 02/07/2005 | ID CREDENTIAL OTHER | 1015045 | Assigned | 2/28/2005 |

## Accountable Property - Firearms

| Date Assigned | Serial Number | Make | Model | Type | Ownership |
|---|---|---|---|---|---|



# ISIS
## Resource Management System (RMS)

Home Help

Jobs | Employee | Training | Organization | Reports | Delegations |

Display Employee    Search Employee    Re-assign Direct Reports

Display Employee

ACCOUNTABLE PROPERTY DISPLAY

Employee Name: MARILYN N LEE        Employee SSN/EIN: ***-**-**** / 01015045        Employee WRN: N/A

5Records Found.

| Item | Item Number | Status | Date Expired |
|------|-------------|--------|--------------|
| ID CREDENTIAL OTHER | 1015045 | Assigned | |
| IMPAC CREDIT EXPENSE | 471609920000247 | Assigned | 02/28/2005 |
| INSPECTOR KEY | 26193 | Assigned | |
| J KEY | | Assigned | |
| VISA TRAVEL CARD | 4486029500018019 | Assigned | 06/30/2007 |
| 1 | | | |

Display Employee

| Course | Code | Dates | Hours | Status | Action |
|---|---|---|---|---|---|
| ANALYTICAL INVESTIGATIONS METHODS | E-2682 | 07/12/2004 07/16/2004 0 | 40.00 | Completed | View |
| ANALYTICAL INVESTIGATIONS METHODS (AIM) | E-2683 | 07/12/2004 07/16/2004 0 | 40.00 | Completed | View |
| ISITS Case Management Train-the-Trainer | 12215-99 | 06/16/2004 06/17/2004 0 | 12.00 | Completed | View |
| TACS | Course27060 | 03/23/2004 03/23/2004 0 | 8.00 | Completed | View |
| RESOURCE MANAGEMENT SYSTEM TRAINING | E-21063 | 10/23/2003 10/24/2003 0 | 16.00 | Completed | View |
| VICTIM WITNESS ASSISTANCE PROGRAM TRAIN. | E-24160 | 09/19/2003 09/19/2003 0 | 4.00 | Completed | View |
| PS FORM 991 TRAINING | E-20358 | 07/15/2003 07/15/2003 4.00 | 4.00 | Completed | View |
| AUTOTRACK TRAINING | E-3582 | 07/01/2003 07/01/2003 3.00 | 6.00 | Completed | View |
| BE S.A.F.E/PREVENTING VIOLENCE-WORKPLACE | 10413 | 01/12/2003 06/10/2003 0 | 2.00 | Completed | View |
| SEXUAL HARASSMENT PREVENTION | 10379 | 02/18/2002 06/10/2003 1.00 | 1.00 | Completed | View |
| STRESS MASTERY FOR THE AMERICAN WORKER | 10414 | 05/29/2003 05/29/2003 0 | 1.00 | Completed | View |
| CURRENT EVENTS IN THE MIDDLE EAST | E-7070 | 05/29/2003 05/29/2003 0 | 1.00 | Completed | View |
| SECRETARIES, ADMIN ASSTS, SUP TRNG CONF | E-21533 | 04/23/2003 04/23/2003 0 | 8.00 | Completed | View |
| SUCCESS STRATEGIES PEAK PERFORMANCE | E-22490 | 04/23/2003 04/23/2003 0 | 8.00 | Completed | View |
| DIVERSITY-PIONEERS OF AFRICA, WORLD VIS. | E-7850 | 04/17/2003 04/17/2003 0 | 1.00 | Completed | View |
| DIVERSITY PRESENTATON-MICHAEL HINGSON | E-7832 | 02/12/2003 02/12/2003 0 | 1.00 | Completed | View |
| OATH OF HONOR | E-18572 | 01/29/2003 01/29/2003 0 | 2.00 | Completed | View |
| PRE-RETIREMENT COUNSELING | 10134 | 09/25/2002 09/27/2002 0 | 2.00 | Completed | View |
| TRIP MANAGER TRAVEL TRAINING | E-23679 | 09/23/2002 09/23/2002 0 | 0.30 | Completed | View |
| WITH INVOLVEMENT SECURITY IS EASY | 10400 | 06/06/2002 07/22/2002 0 | 2.00 | Completed | View |
| WORKPLACE VIOLENCE: FIRST LINE DEFENSE | 10411 | 07/22/2002 07/22/2002 0 | 1.00 | Completed | View |
| DIVERSITY PRESENTATION | E-7830 | 07/18/2002 07/18/2002 0 | 3.00 | Completed | View |
| EBUY NETMEETING TRAINING | E-9100 | 07/11/2002 07/11/2002 0 | 2.00 | Completed | View |
| INFORMATION SECURITY AWARENESS | 10410 | 03/11/2002 05/30/2002 0 | 1.00 | Completed | View |
| THE ATTITUDE VIRUS | 10408 | 03/11/2002 05/30/2002 0 | 1.00 | Completed | View |
| BLACK HISTORY PRESENTATION | E-4305 | 02/21/2002 02/21/2002 0 | 1.00 | Completed | View |
| SGMP RETREAT | E-21850 | 08/18/2001 08/18/2001 0 | 16.00 | Completed | View |
| E-TRAVEL TRAINING | 10407 | 06/14/2001 06/14/2001 2.00 | 2.00 | Completed | View |
| SOC GOVERNMENT MTG PROFESSIONALS | E-21992 | 05/17/2001 05/17/2001 0 | 8.00 | Completed | View |
| DISABILITY AWARENESS | 10402 | 01/30/2001 03/30/2001 0 | 1.00 | Completed | View |
| SOCIETY OF GOVERNMENT MEETING PROFESSION | E-21999 | 03/16/2001 03/16/2001 0 | 8.00 | Completed | View |
| TEAM BUILDING-DR. CLUE TREASURE HUNT | E-22860 | 01/17/2001 01/17/2001 0 | 8.00 | Completed | View |
| WORD AUTOMATION FEATURES | E-24957 | 12/07/2000 12/07/2000 0 | 8.00 | Completed | View |
| CPR-COMMUNITY-AMERICAN RED CROSS | 10049 | 11/28/2000 11/28/2000 0 | 8.00 | Completed | View |
| MICROSOFT ACCESS 97 | 10399 | 11/20/2000 11/20/2000 0 | 1.00 | Completed | View |
| CONFIDENTIAL FUNDS PROGRAM TRAINING | 10392 | 07/18/2000 07/19/2000 0 | 1.00 | Completed | View |
| 2000 DIVISION CONFERENCE | E-755 | 05/02/2000 05/03/2000 10.00 | 10.00 | Completed | View |

http://icmweb01/mis/Employee/displayEmployee.aspx?EMPID=21728&ccRootID=2&ccNodeID=7

Display Employee

| Title | ID | Dates | Num | Status | |
|---|---|---|---|---|---|
| Bloodborne Pathogens | 12222-00 | 05/03/2000 05/03/2000 05/03/2000 0 | 1.00 | Completed | View |
| BUILDING A BETTER WORKPLACE | 10380 | 05/03/2000 05/03/2000 05/03/2000 0 | 0.10 | Completed | View |
| SEXUAL HARASSMENT AWARENESS & PREVENTION | 10383 | 05/02/2000 05/02/2000 05/02/2000 2.00 | 0.40 | Completed | View |
| AN AFFAIR TO REMEMBER FOR SECRETARIES | E-2652 | 04/28/2000 04/28/2000 0 | 8.00 | Completed | View |
| INFORMATION TECHNOLOGY INFRASTRUCTURE | 10373 | 03/09/2000 03/09/2000 7.00 | 7.00 | Completed | View |
| ETHICS TRAINING | 10166 | 12/15/1999 12/15/1999 1.00 | 1.00 | Completed | View |
| PSTN BROADCAST - IMPAC | E-20377 | 12/01/1999 12/01/1999 0 | 2.00 | Completed | View |
| OVERCOMING INFORMATION OVERLOAD | E-19993 | 05/20/1999 05/20/1999 0 | 8.00 | Completed | View |
| 1999 DIVISION TRAINING CONFERENCE | E-698 | 05/05/1999 05/05/1999 8.50 | 16.00 | Completed | View |
| WE DELIVER | 10366 | 02/03/1999 02/03/1999 1.00 | 1.00 | Completed | View |
| TTT TRAINING & MIGRATION INSTRUCTION | 10361 | 11/03/1998 11/03/1998 2.00 | 2.00 | Completed | View |
| MS OUTLOOK '98 | 10357 | 10/21/1998 10/21/1998 8.00 | 8.00 | Completed | View |
| MS EXCEL 97 - INTRODUCTION | 10346 | 10/16/1998 10/16/1998 8.00 | 8.00 | Completed | View |
| MS WORD 97 - INTRODUCTION | 10344 | 09/24/1998 09/24/1998 8.00 | 8.00 | Completed | View |
| ERGONOMICS COURSE | E-9572 | 06/04/1998 06/04/1998 0 | 2.00 | Completed | View |
| CPR-COMMUNITY-AMERICAN RED CROSS | 10049 | 06/01/1998 06/01/1998 0 | 8.00 | Completed | View |
| BASIC AND INTERMEDIATE ACCESS | E-3723 | 04/28/1998 04/29/1998 13.00 | 16.00 | Completed | View |
| DLC - MS INTRO TO WINDOWS '95, VOL 1 & 2 | E-8294 | 10/03/1997 10/06/1997 5.00 | 10.00 | Completed | View |
| STRATEGIC FOCUS-BUSINESS INDIC. & GOALS | 10325 | 05/05/1997 05/06/1997 0.50 | 0.10 | Completed | View |
| STRATEGIC FOCUS-CUSTOMER PERFECT | 10326 | 05/05/1997 05/06/1997 0.50 | 0.10 | Completed | View |
| STRATEGIC FOCUS-EVA | 10328 | 05/05/1997 05/06/1997 0.10 | 0.10 | Completed | View |
| STRATEGIC FOCUS-MARKETS/COMPETITION | 10327 | 05/05/1997 05/06/1997 0.50 | 0.10 | Completed | View |
| PROPERTY/EVIDENCE HANDLING PROCEDURES | 10330 | 04/28/1997 04/28/1997 0 | 1.00 | Completed | View |
| CONFIDENTIAL FUNDS PROGRAM INSTRUCTOR | E-6161 | 03/11/1997 03/11/1997 0 | 2.00 | Completed | View |
| ENHANCED DEC TRAINING | E-9528 | 02/12/1997 02/12/1997 0 | 7.00 | Completed | View |
| CASE MANAGEMENT | E-4918 | 01/07/1997 01/07/1997 8.00 | 2.00 | Completed | View |
| VOE - TRAIN THE TRAINER | E-24329 | 06/25/1996 06/28/1996 0 | 5.00 | Completed | View |
| DLC - POWERPOINT 4.0, ADVANCED | E-8360 | 06/14/1996 06/14/1996 2.50 | 6.00 | Completed | View |
| DLC - POWERPOINT 4.0, INTRODUCTION | E-8365 | 04/19/1996 04/19/1996 2.50 | 6.00 | Completed | View |
| DLC - WINDOWS 3.1 INTRODUCTION | E-8479 | 04/17/1996 04/17/1996 3.00 | 6.00 | Completed | View |
| INCREASING HUMAN EFFECTIVENESS | 10270 | 03/13/1996 03/14/1996 8.00 | 16.00 | Completed | View |
| VALUING DIVERSITY | 10271 | 01/25/1996 01/26/1996 16.00 | 16.00 | Completed | View |
| IMPAC TRAINING SESSION | E-13283 | 01/13/1996 01/13/1996 0 | 4.00 | Completed | View |
| RECITAL | 10189 | 12/13/1993 12/17/1993 36.00 | 36.00 | Completed | View |
| CREATE NEWSLETTERS PEOPLE WILL READ | E-6697 | 11/30/1992 11/30/1992 0 | 8.00 | Completed | View |
| POWERFUL COMMUNICATION SKILLS FOR WOMEN | 10118 | 08/14/1992 08/14/1992 8.00 | 8.00 | Completed | View |
| TAKE CHARGE ASSISTANT | E-22800 | 08/13/1992 08/13/1992 0 | 8.00 | Completed | View |

EXHIBIT 35

McDermott, Judy A

From:               Castor, Sheilah N
Sent:               Friday, September 23, 2005 5:45 PM
To:                 San Francisco Division Distribution List
Cc:                 Post, Marian K
Subject:            Administrative Staff Meeting

Attachments:        Admin Supp Org Chart SF Div 10-2005.ppt


A meeting was held with DHQ administrative support staff on 9/22/2005.  The following were agenda items during the meeting:

Staff Changes: Barbara Mendes to Admin Center Supervisor – Supervises Admin Center, mailroom and reception desk personnel
          Will keep investigative expense and capital property projects

          Kaycee Graham to Admin Services Supervisor – Supervises team direct support and domicile support personnel
          NCIC and RMS support and oversight
          Will keep Voyager, capital procurement and exceptional funding projects

          Anita Cabano to INC Secretary
                  Provide admin support to INC and AICs
                  Manage conference center space and scheduling
                  Admin projects as assigned by Admin Specialist

Fiscal Year End: Work accomplishments for Pay for Performance are due October 21, 2005 to support supervisors.  Per INC Atkins, input from team leaders and domicile coordinators relating to technicians supporting teams should be forwarded to Barbara Mendes by October 14.

Fiscal Year Start: Objectives for FY2006 – a general outline will be developed for ISOT positions and objectives will be developed specific to each job.
          Division goals will be compiled based on an "index" of tasks vs. being based solely on arrest/ID stats
          FCD will take on a larger role in FY2006 and teams will be encouraged to use all their support staff to assist in its use
          Online mail theft complaints are being uploaded directly into FCD; unless FCD is reviewed regularly the online theft complaints (OTC) won't be apparent

Staffing: 15% cut in staffing nationwide; division has proposed additional Investigative Analyst positions; unknown whether we will get Victim Witness Coordinator position
          We may lose ISOT positions, will handle through attrition

Work Schedules:
          FLSA nonexempt personnel have to have set work schedules – this is a law, not just a policy
          Deviations from work schedules have to be documented and approved by supervisor
          Changes of schedule are allowed with supervisor approval based on operational need
          At DHQ, tardiness resulting in arrivals after 8:30 AM must be charged to unscheduled annual, cannot be "made up" and can be grounds for adverse action

          Overtime entries need to be initialed by supervisor, with annotation of what OT was for

          All DHQ nonexempt timesheets are to be kept in timesheet book
          Review of others' timesheets not allowed unless by supervisor or timekeeper
                  If timekeeper has a concern, take it to supervisor ONLY

Communication and Interpersonal Relationships:
          Minding own grocery basket – stay out of other's business, don't get involved in situations or issues that don't concern you personally

          Respecting the chain of command – problems, questions and concerns go to manager or supervisor

Affidavit 4
Page 91 of 143